IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INOVIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-459 (GMS) |
| | ) | |
| DISTANCE DIGITAL CO., LLC and | ) | |
| CLASSIFIED INFORMATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF INOVIS' ANSWERING BRIEF IN OPPOSITION TO
CLASSIFIED INFORMATION'S MOTION TO DISMISS COUNT I OF THE
FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION,
AND COUNTS II AND III IN FAVOR OF PLAINTIFF'S FIRST-FILED ACTION
<u>IN THE NORTHERN DISTRICT OF GEORGIA</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
*Attorneys for Plaintiff Inovis, Inc.*

OF COUNSEL:

David J. Wolfsohn
Lynn B. Morreale
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

October 9, 2007

# TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ...................................................................1

II.   STATEMENT OF FACTS ......................................................................1

III.  ARGUMENT .........................................................................................4

    A.    Classified's Covenant Not to Sue Did Not Divest the Court of Jurisdiction Over Count I of Inovis' Amended Complaint.............................................................................4

        1.   Plaintiff Should Be Granted Leave to Conduct Limited Discovery Relating to Subject Matter Jurisdiction...............................................................4

        2.   Even if Classified's Proposed Covenant not to Sue Is Legitimate, It Does not Divest the Court of Subject Matter Jurisdiction Over Count I Because It Fails to Include Inovis' Customers ..................................6

    B.    Classified's Motion to Dismiss Counts II and III of Inovis' First Amended Complaint Is Moot ........................................10

IV.   CONCLUSION....................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Adkins v. Rumsfeld*,
   450 F. Supp. 2d 440 (D. Del. 2006) ...................................................................6

*Arachnid, Inc. v. Merit Indus., Inc.*,
   939 F.2d 1574 (Fed. Cir. 1991) ........................................................................6

*BIS Advanced Software Sys., Ltd. v. Red Bend Software, Inc.*,
   No. 04-11960, 2006 U.S. Dist. LEXIS 12223 (D. Mass. Mar. 22, 2006) ...............7

*Cognex Corp. v. VCode Holdings, Inc.*,
   No. 06-1040, 2006 U.S. Dist. LEXIS 81242, at *15 (D. Minn. Sept. 13, 2006) ...........10

*Dow Chem. Co. v. Exxon Chem. Patents, Inc.*,
   No. 94-572-SLR, 1996 U.S. Dist. LEXIS 14741 (D. Del. Sept. 20, 1996) ...............8

*Ensign-Bickford Co. v. ICI Explosives USA Inc.*,
   817 F. Supp. 1018 (D. Conn. 1993) ...................................................................6

*FilmTec Corp. v. Allied-Signal, Inc.*,
   939 F.2d 1568 (Fed. Cir. 1991) ........................................................................6

*Financial Fusion, Inc. v. Ablaise, Ltd.*,
   No. C-06-2451 PVT, 2006 U.S. Dist. LEXIS 73574 (N.D. Cal. Sept. 27, 2006) ...........10

*Imatec, Ltd. v. Apple Computer, Inc.*,
   81 F. Supp. 2d 471 (S.D.N.Y. 2000) ...................................................................5

*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001) ........................................................................9

*Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*,
   No. 96-101-SLR, 1997 U.S. Dist. LEXIS 21016, 1997 WL 811563 (D. Del. Dec. 23,
   1997) ...........................................................................................................10

*MedImmune, Inc. v. Genentech, Inc.*,
   127 S. Ct. 764 (2007) ................................................................................ 10-11

*MetroPSC Commc'n, Inc. v. Leap Wireless Int'l, Inc.*,
   No. 3:06-CV-1399-D, 2007 U.S. Dist. LEXIS 4981 (N.D. Tex. Jan. 23, 2007) ...........8

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*,
   441 F.3d 936 (Fed. Cir. 2006) .................................................................... 10-11

iii.

*Saudi v. Acomarit Maritimes Servs., S.A.*,
    245 F. Supp. 2d 662 (E.D. Pa. 2003) ...................................................................11

*Synopsys, Inc. v. Ricoh Co.*,
    343 F. Supp. 2d 883 (N.D. Cal. 2003) ...................................................................8

*WS Packaging Group, Inc., v. Global Commerce Group*,
    No. 06-C-674, 2007 U.S. Dist. LEXIS 34880 (E.D. Wisc. May 10, 2007)..........................7-8

## STATUTES

DEL. CODE ANN. tit. 6, § 2-312(3) ...........................................................................9, 11

Rule 41(a)(1) ......................................................................................................2, 11

UCC .....................................................................................................................8

*Wis. Stat.* § 402.312(3)..........................................................................................8-9

## I.    SUMMARY OF ARGUMENT

Defendant Classified Information, Inc. ("Classified") argues that Count I of the complaint, which seeks a declaratory judgment of noninfringement, should be dismissed for lack of subject matter jurisdiction because Classified has offered Inovis USA, Inc. ("Inovis") a covenant not to sue.  There is reason to doubt, however, that Classified owns the patent in suit -- Classified represented to Inovis before filing this motion that the patent had already been conveyed to co-defendant Distance Digital Co., LLC ("Distance Digital"), and has made contradictory representations since then.  Because of Classified's contradictory representations about its patent rights, and because the dealings between Classified and Distance Digital are suspicious, Inovis needs discovery to determine who owns the patent and whether or not Classified is authorized to enter into a covenant not to sue.  Moreover, the proposed covenant does not cover Inovis' customers.  Because Classified has threatened Inovis' customers, it is well-established that, to eliminate the controversy between Inovis and Classified, Classified must agree not to sue Classified's customers.

In its motion, Classified also requests that Counts II and III be dismissed because similar allegations were made in a lawsuit filed by Inovis against Classified in the United States District Court for the District of Georgia ("the Georgia Suit").  That suit, however, has been dismissed, so there is no basis for dismissing Counts II or III.

## II.    STATEMENT OF FACTS

Classified is a competitor of Inovis and is in the business of selling e-business encryption software. (*See* D.I. 12 at ¶¶ 9-11; Ex. 1, Templar Software Products at http://www.templarsoftware.com/products.asp ("Classified Information, Inc is the developer and distributor of Templar 5, the latest, Java-based version of the industry-leading e-business encryption software, Templar.")).  This lawsuit arises out of Classified's written campaign of

threats against Inovis' customers, falsely accusing them of infringement of U.S. Patent No.

5,812,669 ("the 669 patent") by virtue of their use of Inovis' BizManager product.  (D.I. 12 at ¶¶

18-22, 35-36 and Exhibit B).  An example of one such letter accusing an Inovis customer of

infringing the 669 Patent is attached to the Amended Complaint at Exhibit B.  (*Id.* at Exhibit B).

As alleged in the Amended Complaint, Classified has sent at least three such letters to Inovis'

customers.  (*Id.* at ¶ 18).  As attested to in the attached Declaration of Kenneth Williams, Inovis'

Chief Financial Officer and Senior Vice President, Inovis is subject to indemnification

agreements with its customers and in fact indemnifies its customers for patent infringement

claims against the customers attributable to the customers' use of Inovis' products.  (Decl. of

Kenneth Williams, Ex. 2 at ¶¶ 3, 4).

       On February 20, 2007, Inovis filed a Complaint against Classified in the United

States District Court for the Northern District of Georgia ("the Georgia Suit") asserting one

claim under the Lanham Act and one for tortious interference with business relationships under

state law.  (D.I. 15 at Tab 1).  Classified filed a motion to dismiss for lack of personal

jurisdiction in Georgia (Ex. 3) but, before that motion was decided by the court, Inovis dismissed

the lawsuit pursuant to Rule 41(a)(1).  (Ex. 4).

       On July 12, 2007, while the Georgia Suit was still pending, Christian Putnam,

who purports to be the president of Classified, sent an email to one of Inovis' counsel in which

he claimed that he had no right, title or interest in the 669 patent because he had "sold" it:

> I've sold the patent (US 5,812,669) to a third party company that is
> well known for buying patents.  I've assigned 100% of the title and
> have no influence of the direction they may take to sell or license
> the patent.  Classified, myself or any affiliate is [sic] no longer able
> [to] license the patent.

(Ex. 5).   The email, which repeatedly employed the past tense, was unequivocal that Classified

no longer had any interest in the 669 patent.  This position was later reiterated by Classified's

outside counsel in the Georgia Suit, when, on July 19, 2007, he forwarded to Inovis' counsel a purported "Assignment of Patent Rights" from Classified to a supposed limited liability company called "Distance Digital Co., L.L.C." (Ex. 6; D.I. 12 at Exhibit C). The Assignment of Patent Rights lists the "Assignor" as "Christian Putnam," and purports to contain a notary public's stamp. (Id.). The Assignment of Patent Rights is dated the same day as Mr. Putnam's email to Inovis' counsel—July 12, 2007. (Id.; Ex. 5). It states that it "does hereby sell, assign, transfer, and convey unto Distance Digital Co., L.L.C. . . . all right, title, and interest" in, among other things, the 669 Patent. (Ex. 6; D.I. 12 at Exhibit C). The address for Distance Digital is that of its agent for service of process in Wilmington, and no trace of the entity can be found in any public filings or in Internet searches. (Ex. 7).

On July 23, 2007, Inovis filed suit in this Court against both Classified and Distance Digital.[1] (D.I. 1). Inovis' Delaware Complaint includes one count of declaratory judgment of non-infringement, invalidity, and/or unenforceability of the 669 patent, one count of unfair competition under the Lanham Act and one count of tortious interference with business relationships. (D.I. 12).

Before either Classified or Distance Digital had answered Inovis' Delaware Complaint, on August 22, 2007, Classified's counsel sent Inovis' counsel a proposed, unsigned covenant not to sue. (D.I. 15 at Tab 3). While Mr. Putnam's July 12 email stated unequivocally that Classified no longer owned any interest in the 669 Patent, and although the purported Assignment of Patent Rights was to the same effect, now Classified had turned 180 degrees: the proposed covenant not to sue states: "WHEREAS, Classified Information Inc. [sic] . . . owns all right, title and interest in and to United States Patent No. 5,812,669 . . . " (D.I. 15 at Tabs 3, 6).

---

[1]     Inovis filed its First Amended Complaint on August 17, 2007. (D.I. 12).

Obviously, Mr. Putnam's inconsistent representations regarding the 669 Patent cannot be taken at face value.

In response to the Amended Complaint, Classified filed the instant motion. Attached to that motion,  is a letter from one Cathy Regan, whose title is not stated, but whom the letter describes as Distance Digital's "Authorized Person."  (D.I. 15 at Tab 2).  The letter is dated September 4, three days before Classified filed its motion and after defendants had requested two extensions to respond to the amended complaint.  (*Id.*; D.I. 8, 11, 13-14 ).  Ms. Regan's letter is written on stationery that uses as the company's address that of its Delaware agent for service of process, 2711 Centerville Rd., Suite 400 in Wilmington.  (D.I. 15 at Tab 2; Ex. 7).  The September 4 letter refers to something called a "Patent Purchase Agreement," but that agreement, if it ever existed, is not attached to the letter or to the moving papers of Classified.  According to Ms. Regan's letter, the "Patent Purchase Agreement" is "terminated" and Distance Digital "has no rights under the Assignment of Patent Rights."  (D.I. 15 at Tab 2). Classified states that Distance Digital advised Classified that it had decided to terminate the purported assignment after Inovis filed the Delaware complaint.  (D.I. 15 at 3).  Yet the letter from Distance Digital to Classified "officially" terminating the purported assignment was dated September 4, 2007, ***after*** Classified had first offered Inovis the proposed covenant not to sue. (Compare D.I. 15 at Tab 2 to Tab 3).

## III.    ARGUMENT

### A.    Classified's Covenant Not to Sue Did Not Divest the Court of Jurisdiction Over Count I of Inovis' Amended Complaint

#### 1.    Plaintiff Should Be Granted Leave to Conduct Limited Discovery Relating to Subject Matter Jurisdiction

Classified's purported president, Mr. Putnam, has made conflicting representations regarding who owns the 669 Patent and therefore who may have the authority to

execute a covenant not to sue.  As noted, on July 12, 2007, Mr. Putnam sent Inovis an email

stating that he had "sold the patent" and that he and Classified were "no longer able to license the

patent."  (Ex. 5).  Then defense counsel in the Georgia Suit sent plaintiff's counsel a purported

assignment, which contains language considered effective in conveying an interest in intellectual

property.   (Ex. 6; D.I. 12 at Ex. C).  Yet the proposed covenant not to sue attached to

Classified's motion to dismiss claims that "Classified Information Inc. (Classified) owns all

right, title and interest in and to United States Patent No. 5,812,669."  (D.I. 15 at Tabs 3, 6).  At

least one of these representations must be false.

        Classified's brief attempts to reconcile these puzzling events by referencing the

strange September 4 letter signed by "Its Authorized Person," but this letter raises more

questions than it answers.  The letter refers to a certain "Patent Purchase Agreement with an

Effective Date July 11, 2007," yet that document has never been produced.  (D.I. 15 at Tab 2).

Ms. Regan's letter further states that the "Patent Purchase Agreement" is "terminated," but it is

not clear what effect, if any, such a "termination" might have on the conveyance language

contained in the "Assignment of Patent Rights, i.e., "Classified . . . does hereby sell, assign,

transfer, and convey unto Distance Digital . . ."  *Cf. Imatec, Ltd. v. Apple Computer, Inc.*, 81 F.

Supp. 2d 471, 481 (S.D.N.Y. 2000) (words of conveyance such as "I hereby assign" effectuate

conveyance) (citing *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991)

(where contract grants rights in any future inventions to assignee, "ordinarily, no further act

would be required once an invention came into being" because "the transfer of title would occur

by operation of law"); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir.

1991) (distinguishing between present assignment of expectant interest in future invention and

mere promise to assign rights in future invention)).  Ms. Regan's letter also states that Distance

Digital "never received an executed original of the [Patent Purchase Agreement], an executed original of the Assignment of Patent Rights, or any Deliverables under the PPA," but it is again not clear why those things, if true, would make false Mr. Putnam's claim on July 12 that all "right, title and interest" to the 669 patent had already been conveyed. Given Mr. Putnam's inconsistent representations, the curious letter from Distance Digital's "Authorized Person" using the address of its agent for service, the timing of the letter, and the shadowy relationship between Classified and Distance Digital, the facts underlying Classified's motion are uncertain at best. Under such circumstances, limited discovery relating to subject matter jurisdiction is appropriate. *See Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 447 (D. Del. 2006) (granting plaintiff leave to conduct limited discovery related to issues raised by defendant in motion to dismiss for lack of subject-matter jurisdiction); *Ensign-Bickford Co. v. ICI Explosives USA Inc.*, 817 F. Supp. 1018, 1021 (D. Conn. 1993) (parties permitted to conduct discovery on jurisdictional matters after defendant filed motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction).

> **2.    Even if Classified's Proposed Covenant Not to Sue Is Legitimate, It Does not Divest the Court of Subject Matter Jurisdiction Over Count I Because It Fails to Include Inovis' Customers**

Aside from the uncertainty about who owns which interests in the 669 patent and who might have the authority to enter into a covenant not to sue, the proposed covenant not to sue does not divest the Court of subject matter jurisdiction over Count I because it expressly exempts Inovis' customers, providing that it does "not extend to any third parties, including any

third parties acting in concert with Inovis or using products or services provided by Inovis."[2]

(D.I. 15 at Tab 6 at ¶ 5).  Of course, this lawsuit arose out of Classified's threats against Inovis'

customers.  (D.I 12 at ¶¶ 18-22, 35-36 and Exhibit B).  Where a patentee has asserted that a

customer of a declaratory judgment plaintiff has infringed the patentee's patent, a covenant not

to sue does not divest the court of subject matter jurisdiction unless it expressly covers the

plaintiff's customers.  *WS Packaging Group, Inc., v. Global Commerce Group*, No. 06-C-674,

2007 U.S. Dist. LEXIS 34880, at *11-12 (E.D. Wisc. May 10, 2007) (waiver of suit did not

relieve court of subject matter jurisdiction where it did not apply to customers without express

indemnification contracts but who, under the UCC and state law, could hold declaratory

judgment plaintiff liable); *BIS Advanced Software Sys., Ltd. v. Red Bend Software, Inc.*, No. 04-

11960, 2006 U.S. Dist. LEXIS 12223 (D. Mass. Mar. 22, 2006) (where patentee's promise not to

sue extended only to defendant and patentee had "throughout the litigation shown a desire to sue

defendant's customers for infringement as well," actual case or controversy remained over

defendant's counterclaim for invalidity); *Synopsys, Inc. v. Ricoh Co.*, 343 F. Supp. 2d 883, 888-

89 (N.D. Cal. 2003) (case or controversy remained over plaintiff's declaratory judgment claims

despite agreement not to sue plaintiff for infringement where patentee had previously sued

plaintiff's customers); *see also MetroPSC Commc'n, Inc. v. Leap Wireless Int'l, Inc.*, No. 3:06-

CV-1399-D, 2007 U.S. Dist. LEXIS 4981, at *9-12 (N.D. Tex. Jan. 23, 2007) (covenant not to

sue alone did not divest court of jurisdiction where covenant did not insulate the declaratory

judgment plaintiff from suits arising out of possible infringement of the patent by an agent,

---

[2]     Plaintiff's counsel pointed out this fact to defense counsel after receipt of this motion, and defense counsel agreed to provide Inovis with a covenant that would include Inovis customers.  After plaintiff's counsel provided proposed language to defense counsel, however, defense counsel abruptly terminated the discussions, and refused to give any reason why.

dealer, customer, or indemnitee, but ultimately finding no reasonable apprehension of suit because the plaintiff had not demonstrated that the patentee had threatened plaintiff or any other entity such as plaintiff's customers); *Dow Chem. Co. v. Exxon Chem. Patents, Inc.*, No. 94-572-SLR, 1996 U.S. Dist. LEXIS 14741, at *9 (D. Del. Sept. 20, 1996) (statement of nonliability sufficient to protect plaintiff against any reasonable apprehension of suit where patentee asserted that the statement covered any party indemnified by plaintiff).

For example, in *WS Packaging Group, Inc., v. Global Commerce Group*, the court rejected the patentee's waiver of the right to sue even though the waiver expressly applied to customers who plaintiff had contracted with to indemnify from suit by the patentee because the waiver did not include plaintiff's customers without indemnity agreements. *WS Packaging Group*, 2007 U.S. Dist. LEXIS 34880, at *11-12. The patentee had bragged about threatening customers of allegedly infringing vendors or manufacturers. *Id.* at *11. The court also noted that "[b]y virtue of Wisconsin's adoption of the UCC, [plaintiff's] customer without an indemnification contract could nevertheless hold [plaintiff] liable for infringement if [the patentee] decided to bring suit against that customer." *Id.* at *11-12 (citing *Wis. Stat.* § 402.312(3)).[3] The Delaware Code contains an identical provision. DEL. CODE ANN. tit. 6, § 2-312(3).[4] In addition, Inovis is subject to indemnification agreements with its customers. (Williams Decl., Ex. 2 at ¶¶ 3, 4.)

---

[3]     "Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any 3rd person by way of infringement or the like. . . ." Wis. Stat. § 402.312(3).

[4]     "Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications." DEL. CODE ANN. tit. 6, § 2-312(3).

Classified's covenant not to sue specifically excludes Inovis' customers and states that it "does not extend to any third parties, including any third parties acting in concert with Inovis or using products or services provided by Inovis."  (D.I. 15 at Tab 6 at ¶ 5).  Moreover, Classified has specifically threatened that Inovis' customers infringe the 669 patent by using Inovis' BizManager products.  (D.I 12 at ¶¶ 18, 35 and Exhibit B).  Because Classified's proposed covenant not to sue does not include Inovis' customers using Inovis' products, it does not divest this Court of its subject matter jurisdiction over Inovis' declaratory judgment claim.

Classified's cited authorities are not to the contrary.  *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc*., 248 F.3d 1333, 1341-42 (Fed. Cir. 2001) applied the pre-*MedImmune* standard in holding that there was no subject matter jurisdiction over a declaratory judgment count because "[a] suit filed against a different party, even if [plaintiff] could potentially be required to indemnify that party, is not a suit that [plaintiff] itself faces."  Under *MedImmune*'s "all the circumstances" test, the issue here is no longer whether Inovis has a reasonable apprehension of suit against itself, but rather whether Classified's threats against Inovis' customers and Inovis' duty to indemnify them creates a substantial controversy.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007).

*Matsushita Battery Indus. Co.  v. Energy Conversion Devices, Inc*., No. 96-101-SLR, 1997 U.S. Dist. LEXIS 21016, 1997 WL 811563 (D. Del. Dec. 23, 1997), supports Inovis' position and undermines Classified's.  In *Matsushita*, the declaratory-judgment plaintiff argued that the patentee's covenant was deficient because it did not protect parties that may have been indemnified by the plaintiff.  *Matsushita*, 1997 U.S. Dist. LEXIS 21016, at *13.  In response, the patentee asserted in its brief that the patentee "expressly releases any of [plaintiff's] indemnities from liability for any infringement . . . ."  *Id.* at *15.  The court stated that, "[t]aking [the

patentee] at its word, the covenant of nonliability releases [plaintiff], and any of its indemnitees, from any claims of infringement . . . ." *Id.* at *19.  Given the release of the indemnitees, the court held it lacked subject matter jurisdiction over the action. *Id.* at *21.  The clear negative implication of that holding, therefore, is that, but for such a release, there would have been subject matter jurisdiction over a declaratory judgment claim.  Classified's remaining authorities are all irrelevant, since none involves situations where the patentee threatened the declaratory judgment plaintiff's customers and then executed a covenant not to sue that excluded those customers.[5]

**B.      Classified's Motion to Dismiss Counts II and III of Inovis'
         First Amended Complaint Is Moot**

On October 5, 2007, Inovis filed a Notice of Dismissal of its action in Georgia pursuant to Federal Rule of Civil Procedure 41(a)(1).  (Ex. 4).  Therefore, there is no longer a

---

[5]      In *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 942-43 (Fed. Cir. 2006), a case not cited by Classified, the Federal Circuit held that the district court lacked subject matter jurisdiction over a declaratory judgment claim where the covenant not to sue did not apply to the plaintiff's customers.  In *Microchip*, however, the court noted that the declaratory-judgment plaintiff had not "established a legal relationship between it and a customer that had a legal interest adverse to [the patentee], such as the existence of an indemnity agreement between [plaintiff] and its customer." *Id.* at 943.  Accordingly, *Microchip* teaches that where a customer is threatened with patent litigation and the vendor has agreed to indemnify that client for infringement, the pre-*MedImmune* standard of "reasonable apprehension of suit" is satisfied.  *See Cognex Corp. v. VCode Holdings, Inc.*, No. 06-1040 (JNE-JJG), 2006 U.S. Dist. LEXIS 81242, at *15 (D. Minn. Sept. 13, 2006); *see also Financial Fusion, Inc. v. Ablaise, Ltd.*, No. C-06-2451 PVT, 2006 U.S. Dist. LEXIS 73574, at *8-9 (N.D. Cal. Sept. 27, 2006).  Here, as noted, Inovis has both express indemnification agreements with its customers, and Delaware law provides for such a "legal relationship between it and a customer."  *See* DEL. CODE ANN. tit. 6, § 2-312(3) and Williams Decl., Ex. 2 at ¶¶ 3-4.  In any event, *Microchip* applied the pre-*MedImmune* standard of "reasonable apprehension of suit," which is no longer the law.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007).

11.

"first-filed" action in the Northern District of Georgia and Classified's motion to dismiss counts II and III is moot.[6]

## IV.    CONCLUSION

For the reasons stated above, Inovis should be permitted to engage in limited discovery related to subject matter jurisdiction and Classified's Motion to Dismiss should be denied.

---

[6] Additionally, the first-filed rule does not apply when personal jurisdiction has not been established in the first forum. *See Saudi v. Acomarit Maritimes Servs., S.A.*, 245 F. Supp. 2d 662, 667 n.3 (E.D. Pa. 2003) "(The [first-filed] rule does not apply in the sntant case because personal jurisdiction has not been established in the Southern District of Texas, where Plaintiff first filed his action, or in any other district."). At the time Inovis dismissed the action in Georgia, Classified was contesting personal jurisdiction in Georgia. (See Ex. 3).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Plaintiff Inovis, Inc.*

OF COUNSEL:

David J. Wolfsohn
Lynn B. Morreale
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

October 9, 2007
1257638

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on October 9, 2007, I electronically filed

the foregoing with the Clerk of the Court using CM/ECF which will send notification of such

filing to the following:

> Steven J. Balick
> John G. Day
> Tiffany Geyer Lydon
> ASHBY & GEDDES
>
> Arthur G. Connolly, III
> CONNOLLY BOVE LODGE & HUTZ LLP

and that copies were caused to be served upon the following individuals in the manner indicated:

### <u>ELECTRONIC MAIL</u>

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899

Arthur G. Connolly, III
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899

*/s/ Julia Heaney (#3052)*
Julia Heaney (#3052)
jheaney@mnat.com

# EXHIBIT 1



# Templar Software | t5 demo   testimonial   e-newsletter   company information

▶ products   • education   • support   • customers   • news   • sales

how does T5 work? | transmission types | T5 desktop | T5 enterprise | industry stack-up | AS2 compliant | AS1 certified

## Classified Information Products

Classified Information, Inc is the developer and distributor of Templar 5, the latest, Java-based version of the industry-leading e-business encryption software, Templar.

Templar 5 comes in two different versions:



- T5 Desktop
- T5 Enterprise

## Features

📄 **Download the Product Data Sheet**

Both the Enterprise and Desktop version of Templar 5 provide a number of great features that may include:

- **Trading Partner Management**—T5 tracks all aspects of your trading community's information. T5 handles every aspect of data transport for anyone to whom you need to move data securely and efficiently.

- **Trading Partner Agreements**—With the ability to mandate security standards for each of those you trade data with, you can ensure that you are trading the data the way you want to or the way you are being requested to. T5 utilizes every major Algorithm, MIME, Signature and Receipt. Use these in any combination you choose with your Trading Partner.

- **Certificate Management**—T5 has the ability to create PKI self signed certificates as well as requests for Verisign and Entrust sign-certificates (T5 verifies with the CA for transactions that have these certificates) -- as many as you need to organize your business and guarantee identity.

- **Send and Receive Tracking**—T5 provides you the ability to see every aspect of the transmission from original file, to the archive file, the Encrypted data, and the data wrapped in a MIME of your choosing...all within the GUI.

- **Ad-Hoc Trading**—With Ad-Hoc trading, you can send ANY flat file exactly as it appeared before it left. Ad-hoc allows you to send any data type to anyone utilizing x.12 headers (never seen by you) for correct routing.

- **Automatic Data Pickup**—T5 is an out of the box automation tool. T5 has the ability to pickup a file from anywhere on your network and place incoming data anywhere on your network -- all automatically and without writing scripts.

- **Logging**—T5 tracks every movement in the system right down to the protocol transmission logs to prove your data has arrived. T5 hosts a suite of logging features that puts you at the

helm of information. Never be lost again when a problem creeps up. You'll be the first to know when your mail system or FTP pipe goes down.

■ **Import and Export**—T5 hosts a variety of Algorithms and Signatures that most any product capable of creating a PKI 509 Certificate can trade with T5. T5 to T5 is seamless and the easiest to setup as your Trading Partner Profiles can be traded themselves. In a matter of 5 minutes you and another T5 partner can be moving data.

■ **Data Management**—T5 will work off a scheduler and your cleanup requirements to automatically perform a database cleanup and file structure cleanup of data. You pre-determine the time scales and percentages and T5 will either delete the data altogether or Archive it to a backup instance of T5.

■ **T5 Network Server Polling**—Any T5 server on the same Subnet of the client can automatically be discovered.

■ **Server Management**—If you have clients outside the Subnet, they can specify an IP to search each time they start their application and, if a T5 server is running, login.

■ **Parallel Tasking**—All T5 Transport protocols can be run in multiple instances to utilize the full resources of your machine.

■ **Define XML Definitions**—Your XML, Your Way! T5 holds true to the standards of ebXML and cXML however it also allows you to utilize your own standard. Create your XML documents, tell T5 where to look for key bits of info required for transmitting it and T5 will support your schema. T5 not only meets the standards, it surpasses them.

■ **User Experience Control**—Utilize the User Administration to keep internal security tight. T5 allows you to specify who can access the T5 server and what they can do.

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INOVIS USA, INC.,                          )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )        C.A. No. 07-459-GMS
                                           )
CLASSIFIED INFORMATION, INC. and           )        **JURY TRIAL DEMANDED**
DISTANCE DIGITAL LLC,                      )
                                           )
            Defendants.                    )

**DECLARATION OF KENNETH WILLIAMS**

I, Kenneth Williams, based on personal knowledge hereby declare:

1.      I am the Chief Financial Officer and Senior Vice President of Inovis USA, Inc.

("Inovis").

2.      Inovis markets and sells "BizManager," inclusive of BizLink, BizConnect,

Bizmanager400, and other products (collectively "Inovis Products").

3.      It is Inovis' practice to indemnify its customers for any patent infringement claim

against the customer attributable to the customer's use of Inovis Products.  For example, Inovis'

agreement with Aspen Pet Products includes an indemnification clause.

4.      Inovis has agreed to indemnify its customers against any claim for patent

infringement of U.S. Patent No. 5,812,669 attributable to the customer's use of Inovis Products.

I hereby declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on: _10/4/2007_                              _____
                                                      Kenneth Williams

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Inovis, Inc., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No.  1:07-CV-0424-CAP |
| | ) |
| Classified Information, Inc., | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant, a corporation, filed a Motion to Dismiss for Lack of Personal Jurisdiction in this case on May 4, 2007 that was prepared and served *pro se* on May 2, 2007 [docket # 7].  Since May 3, 2007, Defendant has been represented by counsel, who has prepared a supplemental memorandum of law in support of Defendant's motion to dismiss.  Local Rule 7.1 requires that memoranda of law accompany the motion to which they pertain.  In light of circumstances, as demonstrated by the briefs and declarations filed in support of Defendant's Motion to Set Aside Default [docket ## 8 and 11], good cause exists for the Court to accept for filing a supplemental brief.

1

Wherefore, Defendant respectfully requests that the Court accept for filing

"Defendant Classified Information, Inc.'s Supplemental Memorandum of Law in

Support of Its Motion to Dismiss for Lack of Personal Jurisdiction."

Respectfully submitted this 21st day of May, 2007.

FRIEND, HUDAK & HARRIS, LLP

_Steven W. Hardy_

STEVEN W. HARDY
Georgia Bar No. 325910
Three Ravinia Drive
Suite 1450
Atlanta, Georgia 30346-2117
Ph.:   (770) 399-9500
Fax:   (770)-395-0000

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Inovis, Inc.,                          )
                                       )
     Plaintiff,                       )
                                       )
v.                                     )    Case No.  1:07-CV-0424-CAP
                                       )
Classified Information, Inc.,          )
                                       )
     Defendant.                       )
_____)

## CERTIFICATE OF SERVICE

     This is to certify that I have this day served a true and correct copy of the foregoing *Defendant's Motion for Leave to File Supplemental Memorandum of Law in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction*, upon James H. Cox, Esq. and Catherine Salinas, Esq. using the CM/ECF filing system

     This 21st day of May, 2007.

FRIEND, HUDAK & HARRIS, LLP

_____*Steven W. Hardy*_____
STEVEN W. HARDY
Georgia Bar No. 325910
Three Ravinia Drive
Suite 1450
Atlanta, Georgia 30346-2117
Ph.:   (770) 399-9500
Fax:   (770)-395-0000

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Inovis, Inc., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 1:07-CV-0424-CAP** |
| ) | |
| Classified Information, Inc., ) | |
| ) | |
|     Defendant. ) | |

## DEFENDANT CLASSIFIED INFORMATION, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## l. INTRODUCTION

Plaintiff Inovis, Inc. ("Inovis") has brought claims in this Court against defendant Classified Information, Inc. ("CI") based upon cease and desist letters that CI sent to customers of Inovis in other States. No basis exists for subjecting CI to the exercise of jurisdiction in this State. CI is not based in Georgia and has only limited contacts with the State. Moreover, Inovis's claims do not arise from any contacts CI has with Georgia. The complaint should be dismissed for lack of jurisdiction over the person of CI.

1

## II. **STATEMENT OF FACTS**

Inovis is a Georgia corporation with its principal place of business in Georgia. Complaint ¶ 2. CI is a Delaware corporation with offices in California and Texas. Declaration of Christian Putnam in Support of Motion to Dismiss ¶¶ 4-5 (hereinafter, "Putnam Mot. to Dismiss Decl. ¶ __") Inovis markets a data exchange system called Bizmanager. Complaint ¶¶ 8-9. CI markets a product called Templar that competes with the Bizmanager system. Complaint ¶ 11.

Inovis's claims against CI are based upon "written threats" that CI sent to three customers of Inovis alleging that, by their use of the Bizmanager software, those customers infringed a patent held by CI. Complaint ¶ 14. Based upon CI having sent these letters to Inovis's customers, Inovis alleges that CI has violated Section 43 of the Lanham Act and has tortiously interfered with Inovis's business relations. Complaint ¶¶ 26-38. The Complaint contains no allegations about where these "written threats" were sent and, in particular, about whether any of these customers are located in Georgia or received the "threats" in Georgia. In fact, none of the letters was sent to an address in Georgia. Putnam Mot. to Dismiss Decl. ¶ 13.

CI does not maintain any offices or operations, manufacturing, production or distribution facilities in Georgia. CI does not own real estate or assets of any kind in Georgia. CI does not have employees or independent contractors in Georgia.

2

Putnam Mot. to Dismiss Decl. ¶ 8. CI has not directed advertisements or other promotional material, via print television, or any other media, at Georgia residents or locations. Putnam Mot. to Dismiss Decl. ¶ 6. No employees have visited Georgia for any business purpose in the past several years and CI has not initiated sales calls to companies located in Georgia. Putnam Mot. to Dismiss Decl. ¶ 7.

Since the beginning of 2005, CI has had one sale of $3,000.00 to a company located in Duluth, Georgia. Other than this customer, CI has no contacts, customers or agents in Georgia. Phone calls to this customer were limited to 1-2 phones calls in 2006-2007. Other than the invoice mailed to this customer on April 27, 2005 there has not been any correspondence, mail, facsimiles or other documents between CI and any persons or companies in Georgia. Putnam Mot. to Dismiss Decl. ¶ 9. CI does not derive substantial revenues or benefits from the State of Georgia. In 2006, CI's revenues from sales to the only CI customer located in Georgia were $3,000, only 0.625% of CI's total revenues of $479,680 in 2006. Putnam Mot. to Dismiss Decl. ¶ 10.

### III.  <u>ARGUMENT AND CITATION OF AUTHORITY</u>

The complaint in this case should be dismissed because the Court does not have personal jurisdiction over CI. The claims in the complaint are based upon letters sent and received outside of Georgia.  These facts fail to satisfy the requirements of the Georgia Long Arm Statute, as well as the requirements of due process under the constitution for the exercise of personal jurisdiction.  The Court should grant CI's motion to dismiss.

### A.    THE LONG ARM STATUTE DOES NOT PROVIDE A BASIS FOR ASSERTING PERSONAL JURISDICTION OVER CI.

Inovis alleges that CI is subject to the personal jurisdiction of this Court under the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.  Complaint ¶5. Inovis, as plaintiff, has the burden of establishing personal jurisdiction. *Consolidated Dev. Corp. v. Sherrit, Inc.*, 216 F.3d 1286, 1291 (11ᵗʰ Cir. 2000).  In order to exercise personal jurisdiction over a nonresident defendant in Georgia, the Court must determine: (1) whether the Long Arm Statute authorizes the exercise of personal jurisdiction over the nonresident, and (2) whether the exercise of personal jurisdiction violates the nonresident's rights under the Fourteenth Amendment. *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11ᵗʰ Cir. 1996) (applying state long arm statute to Lanham Act claims).  This Court should construe the Georgia

4

Long Arm Statute as would the Georgia Supreme Court. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

"In Georgia, [the] due process analysis is appropriate only after it is first established that the non-resident defendant committed one of the acts described in the Long-Arm Statute." *McDonnell v. Beatty & Assocs., Inc.*, 203 Ga. App. 807, 808, 418 S.E.2d 95, 95 (1992); *Innovative Clinical Consulting Services v. First National Bank of Ames, Iowa*, 279 Ga. 672, 620 S.E.2d 352 (2005).   In recent years, the federal courts in this district – citing  Georgia Supreme Court case law that held that the Long Arm Statute conferred jurisdiction to the maximum extent allowed by the due process clause of the constitution -- have generally ignored the requirements of the Georgia Long Arm Statute and moved directly to the due process analysis. *E.g., Horsley v. Feldt,* 128 F. Supp. 2d 1374, 1378 (N.D. Ga. 2000); *but see Jimmy Smith Racing Tires v. Ashleman*, C.A. No. 1:05-CV-0970-JEC, 2006 U.S. Dist. LEXIS 66964 (N.D. Ga. Sept. 19, 2006).  However, the Georgia Supreme Court, in *Innovative Clinical*, referred to this as an "erroneous interpretation" of the Long Arm Statute and held that "a non-resident 'must do certain acts' as delineated by the statute" before it could be subject to personal jurisdiction in Georgia  279 Ga. at 674 & n. 2.  Thus, the Court must first consider whether the exercise of jurisdiction over CI satisfies the Long Arm Statute.

The Long Arm Statute provides in relevant part that:

> A Court of this state may exercise personal jurisdiction over any non-resident ... as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1)    Transacts any business within this state;
>
> (2)    Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3)    Commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or service rendered in this state; . . . .

O.C.G.A. § 9-10-91. Personal jurisdiction does not exist over CI under any of these subsections of the Long Arm Statute.

Inovis's claims are predicated solely on CI's alleged tortious interference with business relations and violations of the Lanham Act based upon letters sent and received outside the state of Georgia. *See* Complaint ¶¶ 21-38. Those claims do not arise from the transaction of business in Georgia, the commission of a tortious act in Georgia, or the commission of a tortious injury in Georgia. Furthermore, even if the complaint could be interpreted to allege tortious injury in Georgia, CI does not engage in the type of persistent activity in Georgia to support the exercise of jurisdiction under subsection (3). The complaint should be

6

dismissed because Inovis cannot establish a basis for exercising jurisdiction under the Long Arm Statute.

1.   **Subsection (1) is inapplicable because Inovis's claims do not arise from the transaction of business in Georgia**.

Subsection (1) of the Long Arm Statute applies to parties who transact business in Georgia. The George Supreme Court in *Innovative Consulting* recently clarified that this section applies to any claims, whether in contract or tort. 279 Ga. at 675.    However, the plaintiff must still establish that its cause of action arises from the nonresident's activities in Georgia. *Aero Toy Store LLC v. Grieves*, 279 Ga. App. 515, 521, 631 S.E.2d 734 (2006). Thus, to exercise jurisdiction under subsection (1), Inovis must establish that its causes of action arise from CI's transaction of business within the State. Inovis has alleged no facts from which the Court can conclude that its claims arise from business transacted by CI in Georgia. Therefore, subsection (1) of the Long Arm Statute provides no basis for exercising jurisdiction over CI.

2.   **Subsection (2) Is Inapplicable Because CI Did Not Commit A Tortious Act Within The State Of Georgia**

Subsection (2) of the Long Arm Statute applies only if a non-resident defendant has committed a tortious act within the state. O.C.G.A § 9-10-91(2). This provision requires the physical presence of the defendant in Georgia at the

7

time of the tortious act. *White v. Roberts*, 216 Ga. App. 273, 275, 454 S.E.2d 584 (1995). In *White*, the plaintiff alleged that a doctor in Nebraska conspired to fraudulently induce her to purchase a lame horse by sending letters to her in Georgia assuring her that the horse was in good condition and that radiographs of the horse's feet revealed no significant findings. 216 Ga. App. At 273. The court held that subsection (2) was not applicable because the doctor was not in Georgia when the alleged fraud was committed. 216 Ga. App. 275.

Similarly, in *Worthy v. Eller*, 265 Ga. App. 487, 488, 594 S.E.2d 699 (2004), the court considered whether the trial court could exercise personal jurisdiction for purposes of an intentional infliction of emotional distress claim based upon telephone calls and a facsimile transmission made to Georgia from Alabama. The Court of Appeals held that the exercise of jurisdiction for purposes of this claim was governed by subsection (3), which provides for the exercise of jurisdiction if a defendant causes tortious injury within the state. *See also Howell v. Komori America Corp.*, 816 F.Supp. 1547, 1550 (N.D.Ga. 1993) (no jurisdiction over manufacturer for injuries sustained from allegedly defective press because any tortious act occurred in Japan where the press was designed and manufactured).

In this case, Inovis's claims are based on allegations that CI sent letters to three Inovis customers, but there is no allegation that CI was in Georgia at the time

8

it sent the letters. Since there is no allegation of a tortious act in Georgia, CI cannot be subjected to personal jurisdiction under subsection (2).

## 3.    CI Is Not Subject To Jurisdiction Under Subsection (3) Of The Long Arm Statute

Subsection (3) of the Long Arm Statute applies only if the defendant commits a tortious injury in Georgia *and* the defendant regularly solicits business or engages in a persistent course of conduct in Georgia. Inovis's claims are based upon "threats" in letters sent by CI to Inovis's customers, but Inovis does not allege that any of the customers were in Georgia when they received the letters. Thus, there is no injury in Georgia. *Compare Anderson v. Deas,* 279 Ga. App. 892, 632 S.E.2d 682 (2006) (injury from harassing phone calls made into Georgia occurs in Georgia). In the absence of an injury in the State of Georgia caused by CI's out-of-state activities, CI is not subject to jurisdiction under subsection (3) of the Long Arm Statute. *Howell,* 816 F.Supp. at 1550 (holding that the Long Arm Statute does not provide jurisdiction in Georgia where the injury occurred in Tennessee).

Even if Inovis could show injury in Georgia, it must also show that CI "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or service rendered in this state." *Anderson,* 279 Ga. App. at 893. The complaint is devoid

9

of any allegations that would support the exercise of jurisdiction under this standard. To the contrary, the evidence submitted by CI establishes that CI does not regularly solicit business or derive substantial revenue from goods or services used in Georgia.

Inovis has failed to allege facts sufficient to satisfy any subsection of the Georgia Long Arm Statute. Accordingly, this Court does not have personal jurisdiction over CI for purposes of Inovis's claims.

## B.   CI'S CONTACTS WITH GEORGIA DO NOT MEET CONSTITUTIONAL DUE PROCESS REQUIREMENTS AND THEREFORE THIS COURT CANNOT CONSTITUTIONALLY EXERCISE PERSONAL JURISDICTION OVER CI.

The Long Arm Statute does not provide a basis for jurisdiction over CI and therefore, the due process analysis need not even be addressed. *See Howell*, 816 F.Supp. at 1552 (stating that "*after* the [p]laintiff has established that one of the Long Arm statute's five subsections applies, a Court should look to the full scope of federal due process to determine if personal jurisdiction is proper") (emphasis in original). Nonetheless, a due process analysis demonstrates that the exercise of personal jurisdiction over CI by this Court would be unconstitutional.

Due process contemplates two types of personal jurisdiction: specific and general jurisdiction. *Railcar, Ltd. v. Southern Illinois Railcar Co.*, 42 F.Supp. 2d

10

1369, 1371 (N.D.Ga. 1999) (*citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1985)). CI is not subject to personal jurisdiction in this case under either analysis.

## 1.    The Court Lacks Specific Jurisdiction Over CI.

Specific jurisdiction arises when a foreign defendant's purposeful contacts with the forum state give rise to the claim. *Helicopteros*, 466 U.S. at 415. Due process requires that the non-resident defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

> In order to fulfill the minimum contacts requirement for specific jurisdiction, plaintiff must establish the existence of three factors: (1) plaintiff's cause of action must arise out of or relate to the non-resident defendant's contacts with the forum state; (2) the contacts with the state must show that the defendant purposefully availed itself of the privilege of conducting activities within the state, thereby invoking the benefits and protections of its laws; and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Datacom Warranty Corp. v. The Phone Connection of Kansas, Inc.*, C.A. No. 1:06-CV-01835-MHS, 2006 U.S. Dist. LEXIS 76622 (N.D. Ga. Oct. 20, 2006) (internal quotation omitted). Once it is established that a non-resident has minimum contacts, the plaintiff must also establish that the exercise of jurisdiction "would

comport with fair play and substantial justice." *Id.* (quoting *Burger King v Rudzewicz*, 471 U.S. 462, 476 (1985)).

The claims in this case arise out of contacts by CI with customers of Inovis outside the State of Georgia. Putnam Mot. to Dismiss Decl. ¶ 13. Since Inovis's claims do not arise out of any contact by CI with the State of Georgia, the threshold requirement for specific jurisdiction is not met.

The nature of the "threatening" letters at issue here also make it clear that the exercise of jurisdiction over CI in Georgia would not comport with principles of fair play and substantial justice. The Federal Circuit has held that cease and desist letters, alleging patent infringement and sent into the forum state, are not sufficient to support the exercise of personal jurisdiction over the sender. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.* 148 F.3d 1355 (Fed. Cir. 1998). The court explained:

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

Similarly, in *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003), the court held that cease and desist letters sent to the plaintiff and to the

plaintiff's customers within the forum state were not sufficient to confer jurisdiction personal jurisdiction over the defendant.

Here, the cease and desist letters at issue were not sent to the plaintiff and were not sent into the forum state. Under the principle announced in *Red Wing Shoe* and *Silent Drive*, those letters cannot be the basis for the exercise of jurisdiction over CI in Georgia.

2. **This Court Does Not Have General Jurisdiction Over CI Because CI Does Not Have Substantial Contacts with Georgia**.

General jurisdiction permits a court to exercise personal jurisdiction over a non-resident based on contacts with the forum that are not related to the claims at issue. *Railcar*, 42 F.Supp. at 1377. General jurisdiction arises only from "continuous and systematic" contacts between the nonresident defendant and the forum state. *Id.* (*citing Helicopteros*, 466 U.S. at 411). The Eleventh Circuit has held that a "nonresident corporation's contacts with the forum that are unrelated to the litigation must be substantial" to warrant the exercise of general jurisdiction. *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir.2000).

As a preliminary matter, this Court cannot exercise general jurisdiction over CI because the Georgia Long Arm Statute provides only for the exercise of specific jurisdiction, which means that the cause of action must arise from the defendant's activities within the State. *Pratt & Whitney Canada, Inc. v. Sanders*, 218 Ga. App.

13

1, 3, 460 S.E.2d 94 (1995); *Aero Toy Store LLC v. Grieves*, 279 Ga. App. 515, 521, 631 S.E.2d 734 (2006).  Even if the exercise of general jurisdiction were authorized in Georgia, CI does not have the kind of substantial contacts with Georgia that would authorize the Court to exercise jurisdiction over it based upon contacts unrelated to the causes of action against it.

In *Railcar*, 42 F.Supp. 2d 1369, 1380, the court found that, although the nonresident defendant had some contacts with Georgia, they were not sufficient to establish general jurisdiction.  The defendant's contacts with Georgia included having a Georgia customer, transporting goods in its railcars on railroads in Georgia, using Georgia maintenance facilities, and purchasing $500,000 in labor, materials and services from Georgia vendors during a three year period.  *Id.* at 1377-78.  The defendant also had employees who traveled to Georgia to meet with Georgia customers and had mail and phone contact with Georgia entities.  *Id.* at 1378.  The Court held that these contacts were limited and random and refused to assert general jurisdiction over the defendant.  *Id.* at 1378-79.

Even more so than the defendant in *Railcar*, CI has nowhere near the substantial level of contacts required to support the exercise of general jurisdiction in Georgia.  CI is a Delaware corporation with offices in Texas and California.  CI does not own any real estate or have offices or operations in Georgia.  CI is not registered to do business in Georgia.  Putnam Mot. to Dismiss Decl. ¶¶ 7-8.  The

14

only contacts CI does have with Georgia are random and insignificant. For example, in 2006, CI had only one Customer in Georgia. Putnam Mot. to Dismiss Decl. ¶ 8. CI 's total revenues from sales in the State of Georgia were only $3,000, less than 0.625% of CI's revenue for the year. Putnam Mot. to Dismiss Decl. ¶ 10. CI is not deriving substantial revenues from the state of Georgia or any significant benefits from its limited contacts with the State. These contacts do not rise to the "continuous and systematic" level necessary for the Court to exercise general jurisdiction.

## IV. __CONCLUSION__

CI 's has had no contacts with the State of Georgia that would subject it to jurisdiction under the Georgia Long Arm Statute. Under Georgia law, the analysis ends there. Even to the extent that the Court conducts a due process analysis, CI 's limited contacts with Georgia are unrelated to the claims asserted here and do not support the exercise of personal jurisdiction. CI therefore respectfully requests that it be dismissed from this action.

Respectfully submitted the 21st day of May, 2007.

FRIEND, HUDAK & HARRIS, LLP

_____*Steven W. Hardy*_____
STEVEN W. HARDY
Georgia Bar No. 325910
Three Ravinia Drive
Suite 1450
Atlanta, Georgia 30346-2117
Ph.:    (770) 399-9500
Fax:    (770)-395-0000

## **LR 7.1D CERTIFICATION**

I hereby certify that the foregoing DEFENDANT CLASSIFIED INFORMATION, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION was prepared in Times New Roman, 14-point font, in accordance with LR 5.IB.

*Steven W. Hardy*
STEVEN W. HARDY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Inovis, Inc.,                                )
                                             )
    Plaintiff,                      )
                                             )
v.                                           )    Case No.  1:07-CV-0424-CAP
                                             )
Classified Information, Inc.,                )
                                             )
    Defendant.                      )
_____)

## CERTIFICATE OF SERVICE

    This is to certify that I have this day served a true and correct copy of the foregoing *Defendant Classified Information, Inc.'s Supplemental Memorandum of Law in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction,* upon James H. Cox, Esq. and Catherine Salinas, Esq. using the CM/ECF filing system

    This 21st day of May, 2007.

                      FRIEND, HUDAK & HARRIS, LLP

                      *Steven W. Hardy*
                      STEVEN W. HARDY
                      Georgia Bar No. 325910
                      Three Ravinia Drive
                      Suite 1450
                      Atlanta, Georgia 30346-2117
                      Ph.:  (770) 399-9500
                      Fax:  (770)-395-0000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Inovis, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-0424-CAP |
| | ) | |
| Classified Information, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF CHRISTIAN PUTNAM
## IN SUPPORT OF MOTION TO DISMISS

1.     My name is Christian Putnam. I am over twenty-one years of age and

otherwise competent to give sworn testimony in this matter. The statements below

are based on personal knowledge.

2.     I am the President and sole Director for Classified Information, Inc.

("Classified") the defendant in this action. I have been employed by Classified and

in this position for approximately two years.

3.     As the President, I am fully apprised of the corporate structure of Classified,

as well as the business operations and financial position of Classified.

4.     Classified is a small company with a total of three employees, myself, and Matt Lechowicz and Andy Merrill. Mr. Lechowicz and Mr. Merrill staff the inside sales and support office in San Marcos, California.

5.     The entirety of the business records of Classified, including sales information, contracts, phone records and correspondence are all located at 3308 Stonebrook Drive, Richardson, Texas 75082. This office is my home office.

6.     Classified has not directed advertisements or other promotional material, via print television, or any other media, at Georgia residents or locations.

7.     No employees have visited Georgia for any business purpose in the past several years. We have not initiated sales calls to companies located in Georgia since I have been president. Our sales are primarily "inside sales" comprised of customers seeking to renew their maintenance contracts. These software maintenance contracts were purchased from a third party by Classified soon after Classified's incorporation. Since the incorporation of Classified, Classified has not conducted any business transactions within Georgia that resulted in a new customer or attempted to conduct such transactions.

7.    Classified is incorporated under the laws of the state of Delaware its

principal place of business is located in Richardson, Texas. Classified is not

registered to do business in Georgia.


8.    Classified does not maintain any offices or operations, manufacturing,

production or distribution facilities in Georgia. Classified does not own real estate

or assets of any kind in Georgia. Classified does not have employees or

independent contractors in Georgia.


9.    Classified had one sale of $3,000.00 to a company located in Duluth,

Georgia. Other than this customer, Classified has no contacts, customers or agents

in Georgia. Phones calls to this customer were limited to 1-2 phones calls in 2006-

2007. Other than the invoice mailed to this customer on April 27th, 2005 there has

not been any correspondence, mail, facsimiles or other documents between

Classified and any persons or companies in Georgia.


10.    Classified does not derive substantial revenues or benefits from the State of

Georgia. In 2006, Classified's revenues from sales to the only Classified customer

located in Georgia were $3,000 only 0.625% of Classified's total revenues of

$479,680 in 2006.

11.    Classified has not engaged in activities in Georgia which relate to issues of this lawsuit or otherwise. I certainly never expected to be sued in Georgia court.

12.    Classified owns U.S. patent No. 5,812,669 and has recorded all appropriate assignments at the U.S. Patent and Trademark office.

13.    The complaint in this action is based upon letters that counsel for Classified sent to three customers of Inovis. None of these letters was sent to an address in Georgia.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of May, 2007 at Richardson, Texas.

_Christian Putnam_
Christian Putnam

May 2, 2007

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Inovis, Inc. and Inovis USA, Inc., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) **Civil Action No.** 1:07-CV-0424-CAP |
| Classified Information, Inc., | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

### Notice of Dismissal of Plaintiffs Inovis, Inc. and Inovis USA, Inc.

Pursuant to Federal Rule of Civil Procedure 41(a)(1), plaintiffs Inovis, Inc. and Inovis USA, Inc. hereby file this voluntary notice of dismissal without prejudice of all claims against defendant Classified Information, Inc. ("Classified"). Classified has not yet served an answer or a motion for summary judgment. Pursuant to Local Rule 41.1, Inovis respectfully requests the clerk to enter an order of dismissal.

Respectfully submitted,

Dated:   October 5, 2007                    WOODCOCK WASHBURN LLP

                                             /s/ Lance D. Reich
                                             Lance D. Reich, Georgia Bar. No. 599698
                                             Andrea Bates, Georgia Bar. No. 041763
                                             2002 Summit Blvd.
                                             Suite 800
                                             Atlanta, GA 30319-6400
                                             Phone: 404.459.0050
                                             Fax: 404.459.5734
                                             *Counsel for Inovis, Inc. and Inovis USA, Inc.*

*Of Counsel:*

David J. Wolfsohn
Lynn B. Morreale
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA  19104
Phone: (215) 568-3100
Fax: (215) 568-3439

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Inovis, Inc. and Inovis USA, Inc., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:07-CV-0424-CAP |
| | ) |
| Classified Information, Inc., | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this 5th day of October, 2007, served the foregoing Notice of Dismissal using the CM/ECF filing system on the counsel of record:

> Steven W. Hardy
> Friend Hudak & Harris, LLP
> Three Ravinia Drive, Suite 1450
> Atlanta, GA 30346-2117
> Phone: 770-399-9500
> Fax: 770-395-0000

Dated: October 5, 2007

> /s/ Lance D. Reich
> Lance D. Reich (GA Bar. No. 599698)
> WOODCOCK WASHBURN LLP
> 2002 Summit Blvd., Suite 800
> Atlanta, GA 30319-6400
> Phone: 404.459.0050
> Fax: 404.459.5734
> *Counsel for Inovis, Inc. and Inovis USA, Inc.*

# EXHIBIT 5

From: Christian Putnam <christianputnam@sbcglobal.net>
To: Bates, Andrea (Woodcock Washburn)
Sent: Thu Jul 12 18:30:23 2007
Subject: patent

Adrea,

I've sold the patent (US 5,812,669) to a third party company that is well known for buying patents. I've assigned 100% of the title and have no influence of the direction they may take to sell or license the patent. Classified, myself or any affiliate is no longer able license the patent.

I don't know what strategic benefit this frivolous lawsuit will have for your client. I can send out letters to Invosis's customers stating I'm no longer pursuing licensing and have no intention to file patent infringement in exchange for dropping the suit.

Please let me know what you would like to do.

Yours truly,

Christian Putnam

# EXHIBIT 6

From: Steve Hardy [mailto:shardy@fh2.com]
Sent: Thursday, July 19, 2007 9:19 AM
To: Bates, Andrea (Woodcock Washburn)
Subject: Recent Assignment


Steven W. Hardy, Esq.
Friend, Hudak & Harris, LLP
Three Ravinia Drive, Suite 1450
Atlanta, Georgia 30346
(ph.) 770-399-9500, ext. 120
(fax) 770-395-0000
shardy@fh2.com

**NOTE: This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply e-mail and delete this message.

-----Original Message-----
From: scanner@fh2.com [mailto:scanner@fh2.com]
Sent: Thursday, July 19, 2007 9:30 AM
To: Steve Hardy
Subject: Scanned image from Friend, Hudak & Harris


DEVICE NAME: Friend, Hudak & Harris
DEVICE MODEL: SHARP AR-M455N
LOCATION: Atlanta

FILE FORMAT: PDF MMR(G4)
RESOLUTION: 300dpi x 300dpi

Attached file is scanned image in PDF format.
This file can be read by Adobe Acrobat Reader.
The reader can be downloaded from the following URL:

        http://www.adobe.com/

## ASSIGNMENT OF PATENT RIGHTS

For good and valuable consideration, the receipt of which is hereby acknowledged, Classified Information, Inc., a Delaware corporation, with an office at 3308 Stonebrook Drive, Richardson, TX 75082, (*"Assignor"*), does hereby sell, assign, transfer, and convey unto Distance Digital Co., L.L.C., a Delaware limited liability company, with an address at 2711 Centerville Rd, Ste 400, Wilmington, DE 19808 (*"Assignee"*), or its designees, all right, title, and interest that exist today and may exist in the future in and to any and all of the following (collectively, the *"Patent Rights"*):

(a)     the provisional patent applications, patent applications and patents listed in the table below (the *"Patents"*);

(b)     all patents and patent applications (i) to which any of the Patents directly or indirectly claims priority, (ii) for which any of the Patents directly or indirectly forms a basis for priority, and/or (iii) that were co-owned applications that directly or indirectly incorporate by reference the Patents;

(c)     all reissues, reexaminations, extensions, continuations, continuations in part, continuing prosecution applications, requests for continuing examinations, divisions, registrations of any item in any of the foregoing categories (a) and (b);

(d)     all foreign patents, patent applications, and counterparts relating to any item in any of the foregoing categories (a) through (c), including, without limitation, certificates of invention, utility models, industrial design protection, design patent protection, and other governmental grants or issuances;

(e)     all items in any of the foregoing in categories (b) through (d), whether or not expressly listed as Patents below and whether or not claims in any of the foregoing have been rejected, withdrawn, cancelled, or the like;

(f)     all inventions, invention disclosures, and discoveries described in any item in any of the foregoing categories (a) through (e) and all other rights arising out of such inventions, invention disclosures, and discoveries;

(g)     all rights to apply in any or all countries of the world for patents, certificates of invention, utility models, industrial design protections, design patent protections, or other governmental grants or issuances of any type related to any item in any of the foregoing categories (a) through (f), including, without limitation, under the Paris Convention for the Protection of Industrial Property, the International Patent Cooperation Treaty, or any other convention, treaty, agreement, or understanding;

(h)     all causes of action (whether known or unknown or whether currently pending, filed, or otherwise) and other enforcement rights under, or on account of, any of the Patents and/or any item in any of the foregoing categories (b) through (g), including, without limitation, all causes of action and other enforcement rights for

(i)   damages,
(ii)  injunctive relief, and
(iii) any other remedies of any kind

for past, current, and future infringement; and

(i)        all rights to collect royalties and other payments under or on account of any of the Patents and/or any item in any of the foregoing categories (b) through (h).

| Patent or Application No. | Country | Filing Date | Title of Patent and First Named Inventor |
|---|---|---|---|
| 5,812,669 | US | 7/19/1995 | Method and system for providing secure EDI over an open network<br><br>Lew Jenkins |

Assignor represents, warrants and covenants that:

(1)     Assignor has the full power and authority, and has obtained all third party consents, approvals and/or other authorizations required to enter into this Agreement and to carry out its obligations hereunder, including the assignment of the Patent Rights to Assignee; and

(2)     Assignor owns, and by this document assigns to Assignee, all right, title, and interest to the Patent Rights, including, without limitation, all right, title, and interest to sue for infringement of the Patent Rights. Assignor has obtained and properly recorded previously executed assignments for the Patent Rights as necessary to fully perfect its rights and title therein in accordance with governing law and regulations in each respective jurisdiction. The Patent Rights are free and clear of all liens, claims, mortgages, security interests or other encumbrances, and restrictions. There are no actions, suits, investigations, claims or proceedings threatened, pending or in progress relating in any way to the Patent Rights. There are no existing contracts, agreements, options, commitments, proposals, bids, offers, or rights with, to, or in any person to acquire any of the Patent Rights.

Assignor hereby authorizes the respective patent office or governmental agency in each jurisdiction to issue any and all patents, certificates of invention, utility models or other governmental grants or issuances that may be granted upon any of the Patent Rights in the name of Assignee, as the assignee to the entire interest therein.

Assignor will, at the reasonable request of Assignee and without demanding any further consideration therefore, do all things necessary, proper, or advisable, including without limitation, the execution, acknowledgment, and recordation of specific assignments, oaths, declarations, and other documents on a country-by-country basis, to assist Assignee in obtaining, perfecting, sustaining, and/or enforcing the Patent Rights. Such assistance will include providing, and obtaining from the respective inventors, prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, powers of attorney, specifications, declarations or other papers, and other assistance reasonably necessary for filing patent applications, complying with any duty of disclosure, and conducting prosecution, reexamination, reissue, interference or other priority proceedings, opposition proceedings, cancellation proceedings, public use proceedings, infringement or other court actions and the like with respect to the Patent Rights.

The terms and conditions of this Assignment of Patent Rights will inure to the benefit of Assignee, its successors, assigns, and other legal representatives and will be binding upon Assignor, its successors, assigns, and other legal representatives.

IN WITNESS WHEREOF this Assignment of Patent Rights is executed at ___*S.Cupun*___ on ___*July 12, 200 7*___.

Page 2

ASSIGNOR:

CHRISTIAN PUTNAM

By: _Christian Putnam_

Name: _Christian Putnam_

*(Signature MUST be notarized)*

STATE OF _Texas_ )
                                              ) ss.
COUNTY OF _Dallas_ )

On _July 12_, before me, _Philip Harrison_, Notary Public in and for said State, personally appeared _Christian Putnam_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

PHILIP L. HARRISON
My Commission Expires
March 12, 2011

**EXHIBIT 7**





## State of Delaware
### The Official Website for the First State

Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State & L

State Directory | Help | Search Delaware :       GO       Citizen Services | Business Services | V

**Department of State: Division of Corporations**

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions   View Search Results

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | 4334402 | Incorporation Date / Formation Date: | 04/13/2007 (mm/dd/yyyy) |
| Entity Name: | DISTANCE DIGITAL CO., L.L.C. | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | |
|---|---|
| Name: | **CORPORATION SERVICE COMPANY** |
| Address: | **2711 CENTERVILLE ROAD SUITE 400** |
| City: | **WILMINGTON**   County: **NEW CASTLE** |
| State: | **DE**   Postal Code: **19808** |
| Phone: | **(302)636-5401** |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ◯ Status  ◯ Status,Tax & History Information   [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov