IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INOVIS USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-459-GMS |
| | ) | |
| CLASSIFIED INFORMATION, INC. and | ) | |
| DISTANCE DIGITAL CO., LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF IN SUPPORT OF CLASSIFIED'S MOTION TO DISMISS

I.     UNDER "ALL THE CIRCUMSTANCES" OF THIS CASE, COUNT I OF THE
AMENDED COMPLAINT DOES NOT PRESENT A SUBSTANTIAL
CONTROVERSY, BETWEEN PARTIES HAVING ADVERSE LEGAL
INTERESTS, OF SUFFICIENT IMMEDIACY AND REALITY TO WARRANT
THE ISSUANCE OF A DECLARATORY JUDGMENT

In its Answering Brief (DI 19), plaintiff Inovis, Inc. ("Inovis") pays lip service to

*MedImmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764, 771 (2007), arguing that "[u]nder

*MedImmune's* "all the circumstances" test, the issue is … whether Classified's threats against

Inovis's customers and Inovis's duty to indemnify them creates a substantial controversy."  (DI

19 at 9)  That argument, however, circumscribes the *MedImmune* standard, which actually

requires much more.

To invoke this Court's declaratory judgment jurisdiction, Inovis must demonstrate that:

"the facts alleged, under all the circumstances, show there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 127 S. Ct. 764, 771 (2007)

(*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 61 S. Ct. 510 (1941)).

The facts alleged by Inovis in its First Amended Complaint are wafer-thin. Inovis alleged only that Classified was a competitor (DI 12 at ¶ 13), and that Classified "has made written threats against three of its customers, alleging that it owns the 669 Patent, has the right to enforce it, and that, by using BizManager, each customer of Inovis' has infringed the 669 Patent." (DI 12 at ¶ 18) The First Amended Complaint, like Inovis's original Complaint in this matter, did not allege that Inovis indemnified any of its customers for infringement.

The circumstances in this case, however, which are summarized below, are quite a bit more involved. In June 2006, Classified's intellectual property counsel sent letters to three Inovis customers, which stated in their entirety:

> We represent Classified Information, Inc. in various intellectual property matters. Among its intellectual property, Classified owns U.S. Patent No. 5,812,669 (the "'669 Patent") directed to techniques for providing secure electronic data over an open network such as the Internet. A copy of the '669 Patent is enclosed.
>
> Based on our review of [your] activities, we believe that [you are] infringing the '669 Patent. We believe that the infringing activities include, without limitation, [your] use of EDIINT AS2 with the Inovis BizManager product. For example, consider Claim 35 of the '669 Patent, which covers aspects of secure EDI communications taking place over open networks.
>
> Our preference is to resolve this matter through negotiation. We propose a meeting to discuss potential licensing of the '669 Patent. Please provide me, within two weeks, the contact information for the person with whom we can discuss this matter further.

(Exhibit B to DI 12 (First Amended Complaint)). In the sixteen months since those letters were sent, Classified has not contacted any other customers, has not taken any action against any of the three customers to which it sent the letters, and has extended the covenant not to sue it offered Inovis to include all three customers. (Tab A hereto)

Several months later, in February 2007, Inovis sued Classified in the Northern District of Georgia, alleging that Classified's letters to its customers constituted unfair competition and tortuous interference with business relationships. (Exhibit 1 to DI 15 (Motion to Dismiss).

2

Classified did not file a counterclaim alleging patent infringement against Inovis, and has never threatened to do so.

Several months after that, in July 2007, Inovis filed its complaint in this action, which was virtually a word-for-word copy of its Georgia complaint, with the addition of a declaratory judgment count seeking declarations of non-infringement, invalidity, and unenforceability of the '669 patent. In response, on August 22, 2007, Classified offered Inovis a covenant not to sue (Ex. 6 to DI 15), which Inovis rejected on August 31, 2007 without comment.

Classified sought, but did not receive, an explanation of the basis upon which Inovis contended that its covenant not to sue was insufficient, and thereafter filed its motion to dismiss. (DI 15) On September 11, 2007, after the motion had been filed, counsel for Inovis finally telephoned counsel for Classified to express two reasons for rejecting the covenant: (1) the covenant did not extend to Inovis's customers; and (2) the covenant did not adequately bind Classified's successors and assigns. The next day, after speaking with his client, counsel for Classified telephoned counsel for Classified and agreed to extend the scope of the covenant to include the three customers that had received letters from Classified, and to delete the language to which Inovis had objected concerning successors and assigns. On September 14, 2007, after conferring with his client, counsel for Inovis rejected Classified's proposed revisions to the covenant not to sue and proposed instead that Classified provide Inovis with a "paid-up" license to the '669 patent.

Finally, on October 9, 2007, when it filed its Answering Brief, Inovis for the first time claimed that it was subject to indemnification agreements with its customers. Inovis did not produce any such agreement, but instead provided an unsworn declaration of it Chief Financial Officer stating that "Inovis has agreed to indemnify its customers against any claim for patent

infringement of [the '669 Patent] attributable to the customer's use of Inovis products." (Ex. 2 to DI 19)

A.    Classified's Letters Do Not Create an Immediate Justiciable Controversy

Under the *MedImmune* standard, the Court is limited to "the facts alleged" by Inovis, and must also consider "all the circumstances" presented in the case, in determining whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Here, the only facts alleged by Inovis concerning Classified's conduct is that Classified sent "threatening"[1] letters to three customers in June 2006.

Too see how far the facts alleged by Inovis are from meeting the MedImmune standard, it is instructive to compare them to the cases that Inovis relies upon in its Answering Brief. In every case affirmatively cited in Inovis' Answering Brief (*see* pp. 7-9), the Court's extension of declaratory judgment jurisdiction was based upon significant additional facts that made the immediacy and reality of the controversy clear. In *WS Packaging Group, Inc. v. Global Commerce Group,* 2007 WL 1394154 (E.D. Wisc. 2007), for example, the defendant had "bragged in a trade magazine of its habit of threatening to sue (or actually suing) the customers of allegedly infringing vendors or manufacturers" and one of the defendant's officers had admitted that the defendant "routinely engaged in this very practice." 2007 WL 1394154 at *4. In *BIS Advanced SoftwareSys., Ltd v. Red Bend Software, Inc.,* 2006 WL 753246 (D. Mass. 2006), which involved a declaratory judgment counterclaim, the Court found that "plaintiff has throughout the litigation shown a desire to sue defendants customers for infringement as well."

---

[1]    Inovis's characterization of the letters as "threatening" is itself not a factual allegation, and Classified encourages the Court to consider the language of the letter itself (which was attached as Exhibit B to the First Amended Complaint and is reproduced above in its entirety), rather than relying upon Inovis's exaggerated characterization.

2006 WL 753246 at *1. In *Synopsis, Inc. v. Ricoh Co., Ltd.*, 343 F. Supp.2d 883 (N.D. Cal.

2003), the Court stated: "In this case, Defendant has initiated a suit against several of Plaintiffs

customers in the District of Delaware. Thus, there can be no doubt regarding Defendant's intent

to enforce its patents against such customers." 343 F. Supp.2d at 889. In *MetroPSC*

*Communications, Inc. v. Leap Wireless International, Inc.*, 2007 WL 188672 (N.D. Tex. 2007),

the Court referred to Leap's "litigious conduct" in connection with another of its patents. 2007

WL 188672 at *4. Finally, in *Dow Chemical Company v. Exxon Chemical Patents, Inc.*, 1995

WL 562289 (D. Del. 1995), there were a series of written and verbal threats by Exxon against

both Dow and its customers.

     Here, however, the circumstances are quite different. Classified has never threatened to

sue Inovis for infringement and has offered Inovis a covenant not to sue. Classified also has not

done anything to suggest it is interested in litigating the '669 patent against Inovis's customers,

and does not routinely engage in patent infringement litigation. Classified has not threatened any

Inovis customer, much less "made a habit" of doing so. And, although Classified sent letters

offering licenses to three Inovis customers sixteen months ago, to remove any perception that

these letters were intended as a threat, it has now extended its covenant not to sue to those same

customers. [2]

     We are not aware of a single case in which any Court has found the mere allegation that a

competitor had sent such letters to a handful of customers sufficient to establish a substantial

controversy of sufficient immediacy to warrant jurisdiction under the Declaratory Judgment Act,

---

[2]    The fact that Classified's letters stated a belief that the recipient was infringing the '669 patent likely would have been sufficient to demonstrate actual controversy under the now-rejected "reasonable apprehension" test. Under *MedImmune*, however, that fact alone does not create an actual controversy, and must be considered in the context of "all the circumstances" in this case. Since Classified has not threatened to sue any Inovis customer in the sixteen months since it sent the three letters, and has now

and the Federal Circuit has held that, depending upon the circumstances, a patentee may express the view that specific products are covered by its patent, and initiate or engage in licensing negotiations concerning those products, all without triggering declaratory judgment jurisdiction. In *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed. Cir. 1995), the patentee had contacted Phillips, stated that specific fasteners made by Phillips were covered by the patent, and invited Phillips to take a license. 57 F.3d at 1052. When Phillips expressed the view that the patent was invalid because of certain prior art, the patentee applied to have the patent reissued, with Phillips participating in the reissue procedure as a protester. The patentee then wrote to Phillips again, enclosing a copy of the reissued patent, renewing the offer of a license, and later requesting that Phillips provide sales and pricing information so it could determine a reasonable licensing proposal. *Id.* When Phillips at this point filed a declaratory judgment action, the court dismissed the suit, concluding that the patentee's activity "was not a threat of suit, and did not create a justiciable controversy." *Id.*

      B.      Inovis's Eleventh Hour Assertion of a Purported Duty to Indemnify its Customers Also Does Not Create a Justiciable Controversy

For the reasons set forth above, the First Amended Complaint does not establish an immediate substantial controversy between Inovis and Classified. Inovis's Answering Brief tacitly acknowledges this problem by raising—for the first time—that it is "subject to indemnification agreements with its customers" in an attempt to defeat Classified's covenant not to sue. (DI 19) This last-minute assertion is insufficient to create declaratory judgment jurisdiction, however, for three reasons.

First, Inovis did not allege that it was subject to any indemnification agreements in its original complaint of First Amended Complaint, and never raised the existence of any such

---

extended its covenant not to sue to include the three recipients of its letters, there can be no imminent

agreements during its discussions with Classified concerning the sufficiency of Classified's covenant not to sue. Inovis's eleventh-hour assertion in its Answering Brief that it is subject to indemnification agreements is simply too late, would prejudice Classified, and should not be considered.

Second, because Inovis did not produce any actual indemnification agreements, the Court is unable to determine whether the purported agreements are valid, the scope of any such agreements, the parties who are indemnified, or when the agreements were entered. The mere assertion that Inovis is subject to indemnification agreements with customers, without producing the agreements themselves, is "too speculative to provide a basis for jurisdiction under the declaratory Judgment Act." *Nestor v. HNC Software, Inc.,* C.A. No. 98-569L, slip op. at 7 (D.R.I. January 2001) (Tab B hereto). In *Nestor*, the plaintiff argued that the defendant's covenant not to sue was insufficient because, among other reasons, "the covenant does not extend to some of Nestor's customers and distributors, to whom Nestor owes a duty of indemnity." *Id.* The Court found that "the possibility that HNC might file suit in the future against a customer or distributor to whom HNC [sic] may owe a duty of indemnity is too speculative, and cannot provide a basis for opposing dismissal of the declaratory judgment claims." *Id. See also Microchip Technology Inc. v. Chamberlain* Group, 411 F.3d 936, 944 (Fed. Cir. 2006)("Moreover, Microchip has not produced any agreement indemnifying a customer against the patent-in-suit. Thus, Microchip has no legal rights to 'clear the air'").

Third, even if Inovis had produced the purported indemnification agreements, it still could not establish "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" as *MedImmune* requires under "all the circumstances" in this case. Any purported indemnification

---

justiciable controversy resulting from the letters.

agreement would be irrelevant to this Court's analysis because Classified has mooted any

potential threat to the three customers who received its June 2006 letter by including them in its

covenant not to sue, has not threatened any other Inovis customer, has not done anything at all to

suggest it is interested in litigating the '669 patent.[3]

II.     INOVIS'S REQUEST FOR JURISDICTIONAL DISCOVERY IS UNNECESSARY
        AND APPEARS TO BE CALCULATED TO RUN UP CLASSIFIED'S LEGAL FEES

        In its Answering Brief, Inovis argues that Classified's covenant not to sue is insufficient

because "[t]here is reason to doubt that Classified owns the patent in suit." (DI 19 at 1)  This

surprising argument—which is based entirely on Inovis's belief that "the dealings between

Classified and Distance Digital are suspicious" (Id.)—is nothing more than a straw man.

        If Classified did not own the patent, why would it not have relied upon that fact as the

principal ground on which to support of its motion to dismiss?  (Indeed, there can hardly be a

"substantial controversy" between Classified and Inovis as the "parties having adverse legal

interests" concerning the '669 patent if Classified does not own the patent).  Similarly, if

Distance Digital owned the patent, why would it "affirmatively allege[] that it has no rights

whatsoever in or to the 669 Patent?"  Defendant Distance Digital Co., LLC's Answer to First

Amended Complaint (DI 16 at ¶ 23)

        There is only one common sense answer to these questions: Classified owns the '669

patent.[4]  Accordingly, the Court should reject Inovis's request for jurisdictional discovery as

unwarranted and unnecessary.

---

[3]     For the same reason, Inovis's attempt to rely on the UCC indemnification provision, 6 *Del. Code* § 2-312(3), is unavailing and does not create an actual controversy.

[4]     Inovis's argument begs one more question:  Why would Inovis devote the entire Statement of Facts in its Answering Brief, and a significant portion of its Argument, to cast doubt about Classified's ownership of the '669 patent, when such discovery stands only to undermine the only basis on which its seeks declaratory relief—that Classified has threatened its customers with infringement litigation?  The answer to that question becomes apparent in Section III, below.

III.    CLASSIFIED'S MOTION TO DISMISS OR TRANSFER COUNTS II AND III OF
THE AMENDED COMPLAINT HAS BEEN MOOTED BY INOVIS'S DISMISSAL
OF ITS GEORGIA ACTION ON THE EVE OF FILING ITS ANSWERING BRIEF

Classified agrees that by voluntarily dismissing its action against Classified in the

Northern District of Georgia, Inovis has mooted Classified's motion to dismiss or transfer the

identical claims for unfair competition and tortuous interference it has now filed in this Court.  It

bears mentioning, however, that by filing and forcing Classified to defend that action, by seeking

and obtaining jurisdictional discovery in that action before voluntarily dismissing it to defeat the

transfer motion filed in this case, by rejecting Classified's covenant not to sue out-of-hand and

by refusing to respond to Classified's request that it explain its reasons for doing so until after

Classified had filed its motion to dismiss, by rejecting Classified's efforts to revise the covenant

not to sue to satisfy Inovis's concerns and demanding a "paid-up" license in addition to the

covenant, and by now again seeking jurisdictional discovery before the Court addresses this

motion, Inovis has persistently managed to run up Classified's litigation costs.

Inovis's unnecessary request for declaratory relief concerning the '669 patent seems

similarly calculated to turn a rather straightforward unfair competition case into a substantially

more complex—and therefore substantially more expensive—patent case.  Accordingly, should

the Court not agree with Classified that there is no basis for declaratory relief based on all the

circumstances in this case, the Court should exercise its discretion to decline declaratory

judgment jurisdiction to prevent Inovis from using litigation costs as a weapon against

Classified. *See EMC Corp. v. Norand Corp.,* 89 F. 3d 807, 813-14 (Fed. Cir. 1996) ("[A]s long

as the district court acts in accordance with the purposes of the declaratory Judgment Act and the

principles of sound judicial administration, the court has broad discretion to refuse to entertain a

declaratory judgment action").

IV.    CONCLUSION

Classified respectfully requests that the Court grant its motion to dismiss Count I of

Inovis's First Amended Complaint.


                                        ASHBY & GEDDES

                                        /s/ John G. Day
                                        _____
                                        Steven J. Balick (I.D. #2114)
                                        John G. Day (I.D. #2403)
                                        Tiffany Geyer Lydon (I.D. #3950)
                                        500 Delaware Avenue, 8th Floor
                                        P.O. Box 1150
                                        Wilmington, DE 19899
                                        302-654-1888
                                        sbalick@ashby-geddes.com
                                        jday@ashby-geddes.com
                                        tlydon@ashby-geddes.com

                                        *Attorneys for Defendant*
                                        *Classified Information, Inc.*

Dated: October 19, 2007
185070.1

# TAB A

## COVENANT NOT TO SUE

WHEREAS, Classified Information Inc. (Classified) owns all right, title and interest in and to United States Patent No. 5,812,669 ("the '669 Patent"); and

WHEREAS Inovis USA Inc. and Inovis International Inc. (together Inovis) filed in the United States District Court of Delaware a civil action against Classified, Civil Action No. 07-459-GMS, in which Inovis has sought a declaratory judgment that, *inter alia*, "has not directly infringed, contributed to the infringement of, or actively induced the infringement of any claim of the '669 Patent...."

NOW THEREFORE, Classified hereby states as follows:

1. Classified unconditionally agrees, promises and covenants that Classified will not sue or otherwise assert any claim of patent infringement against Inovis, Bumble Bee Foods, Morgan Foods, Inc. and Aspen Pet Products for any activities (including past, current, and future activities) of Inovis, Bumble Bee Foods, Morgan Foods, Inc. and Aspen Pet Products that would qualify as infringement of the '669 Patent under 35 U.S.C. § 271.

2. This covenant covers all claims in the '669 Patent as they currently read, and any claim in any reissued or reexamined version of the '669 Patent that is the same as, or substantially identical to, any claim of the '669 Patent as it currently reads. The term "substantially identical" as used herein is intended to have the same meaning as that term is used in 35 U.S.C. § 252.

3. This covenant does not extend to any claim in any reissued or reexamined version of the '669 Patent that is not the same as, or substantially identical to, any claim of the '669 Patent as it currently reads.

4. This covenant does not extend to any other patent. This covenant does not constitute an admission by Classified that the claims of the '669 Patent are invalid, unenforceable, or not infringed. To the contrary, Classified categorically rejects all such claims by Inovis.

5. The covenant shall inure to the benefit of Inovis, Bumble Bee Foods, Morgan Foods, Inc., and Aspen Pet Products, and shall be binding on Classified's assigns and successors. This covenant extends only to Inovis, Bumble Bee Foods, Morgan Foods, Inc, and Aspen Pet Products (including any successors-in-interest to all or substantially all of the assets of any such party) and does not extend to any other third parties acting in concert with Inovis or using products or services provided by Inovis.

CLASSIFIED INFORMATION INC.

By _____

Christian Putnam
President

183421.1

# TAB B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NESTOR, INC.,                    )
                                 )
          Plaintiff              )
                                 )
     v.                          )
                                 )    C.A. No. 98-569L
HNC SOFTWARE, INC.               )
                                 )
          Defendant              )

<u>MEMORANDUM AND ORDER</u>

Ronald R. Lagueux, District Judge

     Plaintiff Nestor, Inc. ("Nestor") filed suit against HNC
Software, Inc. ("HNC") seeking, *inter alia*, a declaratory
judgment of patent invalidity, unenforceability and non-
infringement of HNC's 5,819,226 patent ("the '226 patent").  In
response, HNC filed a compulsory counter-claim against Nestor for
infringement of the '226 patent.  HNC now moves to voluntarily
dismiss its counter-claim for infringement pursuant to Federal
Rule of Civil Procedure 41(a)(2).  In addition, HNC covenants not
to sue Nestor for infringement of the '226 patent, and therefore
moves to dismiss Nestor's declaratory judgment claims (Count IX
of the First Amended Complaint) pursuant to Federal Rule of Civil
Procedure 12(b)(1).  For the reasons stated below, HNC's motions
are granted.


I.  Discussion

          A.  HNC's Motion to Voluntarily Dismiss the Infringement
              Counter-Claim

Federal Rule of Civil Procedure 41(a)(2) provides that "an action shall not be dismissed at the [movant's] instance save upon order of the court and upon such terms and conditions as the court deems proper."  The purpose of the rule is to allow voluntarily dismissal of a claim as long as no other party will be prejudiced by the dismissal.  See Doe v. Urohealth Sys., Inc., 216 F.3d 157, 160 (1st Cir. 2000); Alamance Indus., Inc. v. Filene's, 291 F.2d 142, 146 (1st Cir. 1961).  Although the decision to grant a motion for voluntary dismissal is left to the discretion of the district court, "dismissal should be allowed unless clear legal prejudice to the objecting party is shown." M.A. Gammino Constr. Co. v. Great Am. Ins. Co., 52 F.R.D. 323, 325 (D.R.I. 1971).

Whether the non-movant will suffer plain legal prejudice by the granting of a Rule 41(a)(2) motion is typically determined by reference to the following factors: (1) the non-movant's effort and expense in preparation for trial, (2) whether the movant has demonstrated a lack of diligence or occasioned excessive delay in prosecuting the action, (3) the sufficiency of the reason for the need to take a dismissal, and (4) whether a motion for summary judgment has been filed by the non-movant.  See Urohealth, 216 F.3d at 160.  Dismissal may be granted even if all four factors are not resolved in favor of the movant, and the district court may also consider additional factors.  See id.

2

In the present case, all four factors dictate that the dismissal should be granted.  HNC's infringement claim was brought as a compulsory counter-claim to Nestor's claims for declaratory judgment of invalidity, unenforceability, and non-infringement of the '226 patent.  Although Nestor made expenditures in defending the infringement claim, this Court is mindful of the fact that it is Nestor who initiated this lawsuit and necessitated HNC's compulsory counter-claim.  Moreover, Nestor's efforts in defense of the infringement claim will be relevant to the issues of validity and unenforceability of the '226 patent, which must be resolved as part and parcel of the remaining anti-trust and tort claims.  Therefore, Nestor's expenditures were not needlessly increased as a result of HNC's counter-claim for infringement.

HNC has not caused excessive delay or demonstrated a lack of diligence in prosecuting its infringement action.  In fact, HNC is seeking this voluntary dismissal because it chose to settle its infringement claim against the distributor of Nestor's products.[1]  This demonstrates that HNC diligently prosecuted its infringement action.  In addition, the resolution of HNC's infringement claim against Nestor's distributor provides a sufficient reason for the need to seek a dismissal.  Finally, no

---

[1] <u>HNC Software, Inc. v. Transactional Systems Architects Inc.</u>, Case No. 99CV 1232 TW(NLS), S. Dist. Cal.

3

motion for summary judgment has been filed in this case. Therefore, application of the Urohealth factors leads to the conclusion that the dismissal should be granted.

Nestor argues that it will suffer plain legal prejudice if HNC's voluntary dismissal is granted without the imposition of two conditions. It asks this Court to dismiss the counter-claim with prejudice, and to condition the dismissal on a promise from HNC that it will not bring future infringement claims against Nestor, Nestor's customers, or Nestor's distributors based on the '226 patent, any patents derived from the '226 patent, or any substantially similar foreign patents.

This request confuses the legal standard the Court must apply in deciding HNC's motion to dismiss Nestor's declaratory judgment claims, specifically, whether the covenant not to sue precludes the existence of an actual controversy, with the inquiry this Court must perform before granting a voluntary dismissal. Although reasonable apprehension of an infringement suit would preclude HNC's motion to dismiss Nestor's claims for declaratory relief pursuant to Rule 12(b)(1), "the mere prospect of a second lawsuit" is insufficient to establish plain legal prejudice. Urohealth, 216 F.3d at 160-61 (quoting Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 217 (1947)). For this reason, Nestor's objection fails to demonstrate that Nestor will suffer plain legal prejudice if the voluntary dismissal is

4

granted.  Accordingly, the Court declines to attach any terms or
conditions to the granting of HNC's motion for voluntary
dismissal of its infringement counter-claim.

     B.   HNC's Motion to Dismiss Nestor's Claims for Declaratory
          Relief

     Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a)
(1994), a district court has subject matter jurisdiction over an
action for declaratory relief only where there is an actual
controversy at all stages of review.  See Amana Refrigeration,
Inc. v. Quadlux, Inc., 172 F.3d 852, 855 (Fed. Cir. 1999)(citing
Preiser v. Newkirk, 422 U.S. 395, 401 (1975)).  An actual
controversy exists where there is (1) a threat or action by the
patentee creating reasonable apprehension of an infringement suit
on behalf of the declaratory judgment plaintiff, and (2) present
activity by the plaintiff exposing it to liability for patent
infringement.  See BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d
975, 978 (Fed. Cir. 1993).

     A patentee can moot the existence of an actual controversy,
thereby divesting the district court of jurisdiction over the
action, by promising not to sue the declaratory judgment
plaintiff for patent infringement.  The Federal Circuit has held
that a covenant not to sue for any infringing acts involving
products "made, sold, or used" on or before the filing date is
sufficient to divest the district court of jurisdiction.  See
Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054,

5

1060 (Fed. Cir. 1995). A promise not to sue with respect to any product "previously or currently advertised, manufactured, marketed, or sold" under the patent "as it presently reads" is also sufficient to divest the district court of jurisdiction. See Amana, 172 F.3d at 855.

In the present case, HNC has promised that it will not assert any claims against Nestor for infringement of the '226 patent "in connection with any current or past product, service or method practiced, offered for sale, sold, or manufactured by Nestor." Decl. of John Mutch, ¶ 4. At the hearing on this motion, HNC also represented to the Court that there is no distinction between the sale of software and the licensing of software.[2] As a result of this representation, HNC is estopped from asserting that the covenant not to sue does not embrace current or past products, services, or methods licensed by Nestor. Consequently, the covenant not to sue removes the existence of an actual controversy, and this Court is thereby divested of jurisdiction over Nestor's claims for declaratory relief.

Notwithstanding HNC's broad covenant not to sue, Nestor claims to have a reasonable apprehension of an infringement suit because (1) the covenant does not cover future products manufactured or sold by Nestor, (2) the covenant does not cover

---

[2] See Mot. Hr'g Tr., September 26, 2000, p. 13.

6

foreign patents that may have issued or might be issued in the future, and (3) the covenant does not extend to some of Nestor's customers and distributors, to whom Nestor owes a duty of indemnity.  All three of these arguments must fail because they are too speculative to provide a basis for jurisdiction under the Declaratory Judgment Act.

"[A]n actual controversy cannot be based on a fear of litigation over future products." Amana, 172 F.3d at 855. Similarly, the existence of foreign patents held by HNC is speculative at the present time.  Although Nestor claims that HNC received a European patent based on the '226 patent, no proof of this patent was presented to the Court.  Furthermore, Nestor concedes that no patent has been issued in Japan, where HNC is allegedly prosecuting its '226 patent.  The Federal Circuit has held that the future existence of a reissue patent is too speculative to provide the basis for jurisdiction over a declaratory judgment action for non-infringement.  This Court concludes that the future existence of a foreign patent is equally speculative and cannot provide the basis for jurisdiction under the Declaratory Judgment Act.  In addition, the possibility that HNC might file suit in the future against a customer or distributor of HNC to whom HNC may owe a duty of indemnity is also speculative, and cannot provide a basis for opposing dismissal of the declaratory judgment claims.

As a final matter, Nestor urges this Court to confirm its order dated August 31, 1999 staying discovery and severing the antitrust claims while allowing discovery and a separate trial on the patent issues.  Because the absence of an actual controversy divests the Court of jurisdiction over all aspects of Nestor's declaratory relief claim under the Declaratory Judgment Act, the patent issues can only be resolved by proceeding with the antitrust and tort claims.  Accordingly, Nestor should address the issue of discovery and a separate trial on the issues of validity and unenforceability of the '226 patent in connection with a motion to lift the stay or other appropriate motion.

II. Conclusion

For the preceding reasons, HNC's motion to voluntarily dismiss its infringement counter-claim is granted without prejudice.  HNC's motion to dismiss Count IX of Nestor's First Amended Complaint is also granted for lack of jurisdiction over the subject matter.

It is so ordered.

_____
Ronald R. Lagueux
U.S. District Judge
January      , 2001

8