IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INOVIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-459 (GMS) |
| | ) | |
| DISTANCE DIGITAL CO., LLC and | ) | **EXHIBITS C-J FILED SEPARATELY** |
| CLASSIFIED INFORMATION, INC., | ) | **UNDER SEAL** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF INOVIS' OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS DEFENDANT CLASSIFIED'S
<u>COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff Inovis, Inc.*

OF COUNSEL:

David J. Wolfsohn
Lynn B. Morreale
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

March 10, 2008

i.

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

II.   SUMMARY OF THE ARGUMENT .............................................................................. 2

III.  STATEMENT OF FACTS............................................................................................... 3

IV.   ARGUMENT.................................................................................................................... 5

V.    CONCLUSION................................................................................................................. 8

ii.

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Arachnid, Inc. v. Merit Indus., Inc,*
    939 F.2d 1574 (Fed. Cir. 1991) ................................................................. 6-7

*Gaia Techs., Inc. v. Reconversion Techs., Inc.,*
    93 F.3d 774 (Fed. Cir. 1996), *amended*, 104 F.3d 1296 (Fed. Cir. 1996) ........... 6-8

*Paradise Creations, Inc. v. U V Sales, Inc.,*
    315 F.3d 1304 (Fed. Cir. 2003) ................................................................. 5-6

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.,*
    917 F. Supp. 305 (D. Del. 1995) ................................................................. 5

*Speedplay, Inc. v. Bebop, Inc.,*
    211 F.3d 1245 (Fed. Cir. 2000) ................................................................. 8

*UD Tech. Corp. v. Phenomenex, Inc.,*
    C.A. No. 05-842-GMS, 2007 U.S. Dist. LEXIS 642 (D. Del. Jan. 4, 2007) ........... 7

*United States v. Montana,*
    199 F.3d 947 (7th Cir. 1999) (Posner, J.) ................................................. 6

**STATUTES**

35 U.S.C. ................................................................................................. 2-3, 6-7

Federal Rules of Civil Procedure 12(b)(1) ................................................. 2, 8

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Inovis USA, Inc. ("Inovis") filed its First Amended Complaint against Classified Information, Inc. ("Classified") and Distance Digital Co., LLC ("Distance Digital") on August 17, 2007, seeking a declaratory judgment of non-infringement, invalidity, and/or unenforceability of U.S. Patent No. 5,812,669 ("the 669 Patent") and asserting claims of unfair competition under the Lanham Act and tortious interference with business relationships against Classified.[1]  (D.I. 12).  Classified responded by moving to dismiss the First Amended Complaint for lack of subject-matter jurisdiction on September 7, 2007.  (D.I. 15).  Among other things, in the briefing on its motion, Classified claimed that the fact that it had offered Inovis a covenant not to sue those customers of Inovis' to whom Classified had sent letters threatening infringement lawsuits defeated subject matter jurisdiction over Inovis' declaratory judgment count.  (D.I. 25 at 5).  Inovis pointed out that Classified appeared to be reserving the right to sue other customers of Inovis and that Inovis had indemnification agreements and obligations to those customers--facts that, based on the case law, meant that the Court still had subject matter jurisdiction.  (D.I. 19 at 10-14).  At the oral argument on Classified's motion, Classified's counsel claimed to have "some questions about what exactly, whether there is an indemnification that's as broad as was stated in [Inovis'] brief and what exactly that indemnification involves, because we haven't seen it."  (Ex. A, Tr. of Oct. 29, 2007 Conference at 11:3-7.)  Noting that the issue of Inovis' indemnification obligations was "where, as we say, the rubber meets the road," the Court granted the parties leave to conduct limited discovery on issues relating to subject matter jurisdiction and then to serve supplemental briefs.  (*Id.* at 11:9-11, 11:18-23, 13:24-15:1.)

---

[1]     Distance Digital was voluntarily dismissed from the lawsuit on December 26, 2007. (D.I. 43).

On December 7, 2007, Inovis produced to Classified indemnification agreements with its customers indisputably showing that Inovis not only had written indemnification agreements, but that it had honored them specifically with respect to the three customers whom Classified had threatened with infringement suits under the 669 Patent.  Notwithstanding this indisputable evidence, Classified failed to withdraw its motion.

On December 21, 2007, Inovis served its supplemental brief in opposition to Classified's motion to dismiss for lack of subject matter jurisdiction, which pointed out the uncontroverted evidence of Inovis' indemnity obligations and practices.  (D.I. 42).  Classified never disputed Inovis' position and, in fact, failed even to file a supplemental brief in support of its motion to dismiss.  But Classified nonetheless did not withdraw its motion.

Finally, on January 28, 2008, nearly five months after it had filed its motion and wasted the Court's time and Inovis' time and money, Classified withdrew it.  (D.I. 45).  On February 19, 2008, seven months after Inovis filed its First Amended Complaint, Classified filed its Answer to the First Amended Complaint along with a Counterclaim against Inovis for patent infringement.  (D.I. 48).

In fact, as explained further below, Classified does not have standing to assert the 669 Patent against Inovis.  Accordingly, Inovis is hereby moving to dismiss Classified's Counterclaim in its entirety pursuant to F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction.

## II.    SUMMARY OF THE ARGUMENT

It is axiomatic that, to have standing to assert a claim for patent infringement, a putative patentee must prove that it holds enforceable title to the patent at the time it files its claim.  Under section 261 of the Patent Act, Classified must produce a written assignment from an owner of the patent to Classified, conveying ownership of the 669 Patent such that it would have standing to sue, on its own, for infringement of that patent.  Yet Classified's own filings

with the Patent and Trademark Office show that there is no such document. Indeed, the document that Classified falsely characterized to the PTO as an "assignment" is in fact a letter that refers vaguely to some earlier "transfer" of certain vaguely described assets. This letter, which is inadmissible hearsay, does not even state the date of the purported transfer, does not say whether the transfer was in writing, does not state what interests were transferred, and does not mention the 669 Patent. Remarkably, even Classified's attorneys concede that this letter is not an assignment, thereby failing to meet the requirements of section 261. Because Classified cannot produce an "instrument in writing" that in fact assigned the 669 Patent to Classified prior to the date Classified filed its Counterclaim, Classified lacks standing to bring its Counterclaim for patent infringement and this Court lacks subject matter jurisdiction over Classified's Counterclaim. Accordingly, the Counterclaim should be dismissed.

## III.    STATEMENT OF FACTS

Classified alleges that it "is the assignee and sole owner of all right, title and interest in and to the '669 patent." (D.I. 48 at Counterclaim ¶ 7). Based on what Classified has recorded with the Patent and Trademark Office ("PTO"), Classified appears to base its claim of assignee status upon a purported transaction between an entity called CI (Software Solutions) Limited located in San Marcos, California and Classified. (Ex. B, Recordation Form Cover Sheet, 000009). The only purported evidence of this supposed transaction is an April 10, 2003 letter from one Martin Pickard addressed to the "Directors" of Classified Information Inc. [sic] that states as follows:

> I confirm that, in so far [sic] as CI Solutions Ltd right and title [sic], the name 'Templar', all source code relating to the Templar product, intellectual property rights, Patent and associated trademarks, these were transferred to Classified Information Inc in respect of the consideration agreed and paid.

(Ex. B, Pickard to Directors of Classified, 000010).   Under Mr. Pickard's name are the words

"Creditors Voluntary Liquidator."  (*Id.*).   The letter appears on the stationery of an entity called

"Mazars."  (*Id.*).   Mr. Pickard's letter does not state when the described assets were transferred,

does not say whether or not any instrument effectuated the transfer, does not state whether the

assets were transferred via a writing as opposed to orally, does not state what the nature of the

interest was that purportedly was transferred, does not state what consideration was agreed upon

or paid, and does not mention the 669 Patent.

Despite the fact that Mr. Pickard's letter refers to a "transfer" in the past tense

from an entity called CI Solutions Ltd and that he fails to mention the 669 Patent at all,

Classified's counsel represented to the PTO that the letter was somehow a "conveyance" and

"assignment" of the 669 Patent from an entity called "CI (Software Solutions) Limited" of San

Marcos, California, to Classified, located at the same address, which supposedly took place on

April 10, 2003—the same date of Mr. Pickard's letter.[2]  (Ex. B, Recordation Form Cover Sheet,

000009).

Tellingly, even Classified's own attorneys have noted the fact that Mr. Pickard's

letter is "not an assignment"—notwithstanding the position taken by Classified before the PTO.

Compare "Patent Ownership Timeline" prepared by Baker Botts noting that the Pickard Letter is

"not an assignment" (Ex. C, Patent Ownership Timeline at n.2; Ex. D, Putnam Dep. at 45:17-

47:11), with "Recordation Form Cover Sheet" signed by Lisel M. Ferguson, Esq. (Ex. B,

000009).   Indeed, the timeline prepared by Classified's attorneys at Baker Botts purporting to

show all the transactions involving title to the 669 Patent noticeably fails to contain any notation

---

[2]     The 669 Patent appears to have gone through several purported changes of ownership
        since title initially vested in the inventors.   This motion challenges only the purported
        "transfer" of certain ostensible rights to Classified, and does not address any issues there
        may be with the other purported assignments of title higher up the chain of title.

or date for the putative "transfer" referred to in Mr. Pickard's letter.  (Ex. C, Patent Ownership Timeline).

Indeed, the gap in the chain of title between CI Solutions Ltd and Classified was the reason Classified's attempted sale of a patent it does not own fell apart.  In its negotiations with Distance Digital, which was named as a defendant in this case because Mr. Putnam had falsely told Inovis that he had already sold the 669 Patent to that entity, Distance Digital eventually realized that Classified was never assigned the 669 Patent.  (Ex. D, Putnam Dep. at 44:1-45:5, 50:20-51:2, 59:3-62:7, 92:22-97:17; Ex. E-I, Emails between Putnam and Distance Digital).  Moreover, Distance Digital was skeptical that Classified would ever be able to resolve its "UK issue," i.e., the lack of any assignment from the UK company CI Solutions Ltd to Classified.  (Ex. E, H, I, Emails between Putnam and Distance Digital).  Accordingly, notwithstanding Mr. Putnam's false representation to Inovis that, as of July 12, he had "assigned 100% of the title" of the 669 Patent (Ex. J, Email from Putnam to Bates), the deal as of that date was going nowhere because Distance Digital realized that Classified had never owned any interest in the 669 Patent, much less the interest necessary to have standing to sue for infringement.

## IV.    ARGUMENT

A party must establish that it has standing at the time it filed suit.  *Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995).  "The Patent Act provides that only '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Paradise Creations*, 315 F.3d at 1308 (quoting 35 U.S.C. § 281).  The "patentee" includes the successors in title to the patent.  *Id.* (citing 35 U.S.C. § 100(d)).  "[I]n order to assert standing for

patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit.*" *Id.* at 1309 (emphasis in original).

> A patent assignment must be by an instrument in writing:
>
> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

35 U.S.C. § 261; *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 777 (Fed. Cir. 1996), *amended*, 104 F.3d 1296 (Fed. Cir. 1996).

The April 10, 2003 letter signed by one "Martin Pickard" is not an "instrument in writing," much less one that assigned any rights to Classified. The Patent Act requires that, to constitute a patent assignment, a written instrument must express the patent owner's ***present*** intention to transfer title. *See Arachnid, Inc. v. Merit Indus., Inc,* 939 F.2d 1574, 1580-1581 (Fed. Cir. 1991) (agreement stating that rights "will be assigned" does "not rise to the level of a present assignment" transferring title under federal law). The April 10, 2003 letter does not express a present intention to do anything, but rather refers to some vague past "transfer" of an unspecified interest in some vaguely described assets that do not include the 669 Patent. Mr. Pickard's letter is not an instrument at all, but rather a hearsay statement by someone containing his vague characterization of some other purported event.[3] To satisfy the "instrument in writing"

---

[3]    The letter is hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted—that there was a transfer of certain assets at some unspecified point in time. F.R.E. 801. A true assignment, like other instruments, is not hearsay because it is a "verbal act." *United States v. Montana*, 199 F.3d 947, 950 (7th Cir. 1999) (Posner, J.) ("Performative utterances are not within the scope of the hearsay rule, because they do not make any truth claims. Had the marshal overheard Dodd tell Montana, 'your father has promised me $ 10,000,' Dodd's overheard statement would have been hearsay, because its value as evidence would have depended on its being truthful, that is, on such a

requirement of section 261, there must be a document to which both assignor and assignee are parties that contains present-tense language of conveyance.  *See Arachnid*, 939 F.2d at 1580 (agreement did not "rise to the level of a present assignment of an existing invention, effective to transfer all legal and equitable rights therein to [plaintiff] and extinguish any rights of [third party]" where it contained merely a promise to convey in the future); *Gaia Techs.*, 93 F.3d at 778-79 (board of directors' minutes describing agreement to sell assets could not constitute an "assignment" but rather were "at most, [] a memorialization of an agreement to sell all assets... .").

Here, notwithstanding Classified's false characterization to the PTO of the April 10, 2003 letter as an assignment,[4] it contains no language purporting to convey anything, but instead refers to some other purported transaction that took place at an unspecified time in the past, whereby certain vaguely described assets were supposedly transferred to Classified.  (Ex. B, Pickard to Directors of Classified, 000010).  As admitted by Classified's own attorneys (Ex. C, Patent Ownership Timeline; Ex. D, Putnam Dep. at 45:17-47:11), and acknowledged by Distance Digital, the letter "is not an assignment."

Classified has the burden to prove it has standing.  *UD Tech. Corp. v. Phenomenex, Inc.*, C.A. No. 05-842-GMS, 2007 U.S. Dist. LEXIS 642, at *13 (D. Del. Jan. 4, 2007) ("The party asserting the existence of subject matter jurisdiction bears the burden of proof

---

promise having actually been made. But what in fact was overheard was merely a demand--in effect, 'give me $ 10,000'--and so the only issue of credibility was whether the marshal was reporting the demand correctly, and *his* testimony was not hearsay.").

[4]    Of course, Classified's false characterization of the letter as an "assignment" as of the date of the letter is not dispositive.  37 C.F.R. § 3.54 ("The recording of a document pursuant to § 3.11 is not a determination by the Office of the validity of the document or the effect that document has on the title to an application, a patent, or a registration."); *Gaia Techs*, 93 F.3d at 778 n.3  ("[T]he mere fact that an assignment was recorded in the PTO does not, without more, prove that a valid assignment actually took place.").

when contesting a Rule 12(b)(1) motion."); *see also Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (putative patentee "must produce a written instrument documenting the transfer of proprietary rights in the patents" in order to have standing).  Because the letter signed by one Martin Pickard is not an "instrument in writing," and because there appears to be no such document  that in fact assigned the 669 Patent to Classified, Classified lacks standing to bring its Counterclaim and it should therefore be dismissed.  *Gaia Techs.*, 93 F.3d at 780 (held: plaintiff lacked standing to bring patent claims against defendants because plaintiff "failed to come forward with the requisite evidence necessary to establish that an assignment, in writing, of the Intellectual Property took place before the lawsuit was filed").

## V.    CONCLUSION

For the reasons stated above, Classified lacks standing to assert its Counterclaim for patent infringement.  Pursuant to F.R.C.P. 12(b)(1), Classified's Counterclaim should be dismissed it its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*

_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
    *Attorneys for Plaintiff Inovis, Inc.*

OF COUNSEL:

David J. Wolfsohn
Lynn B. Morreale
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

March 10, 2008
1856254

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on March 10, 2008, I electronically filed the

foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing

to the following:

> Steven J. Balick
> John G. Day
> Tiffany Geyer Lydon
> ASHBY & GEDDES

and that copies were caused to be served upon the following individuals in the manner indicated:

### BY ELECTRONIC MAIL

Steven J. Balick
John G. Day
Tiffany Geyer Lydon
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899

Michael A. Lee
Vineet Bhatia
Stephen F. Schlather
SUSMAN GODFREY LLP
1000 Louisiana, Suit 5100
Houston, TX  77002-5096


*/s/ Julia Heaney (#3052)*
_____
Julia Heaney (#3052)
jheaney@mnat.com

EXHIBIT A

1

```
1              IN THE UNITED STATES DISTRICT COURT

2           IN AND FOR THE DISTRICT OF DELAWARE

3                    -  -  -

4    INOVIS, INC.,            :    Civil Action

5          Plaintiff,         :

6       v.                    :

7    DISTANCE DIGITAL CO., LLC and:
     CLASSIFIED INFORMATION, INC.,:
8          Defendants.        :    No. 07-459(GMS)

9                    -  -  -

10               Wilmington, Delaware
11             Monday, October 29, 2007
                    2:00 p.m.
12                 In Chambers

13                   -  -  -

14   BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge

15

16   APPEARANCES:

17        JULIA HEANEY, ESQ.
          Morris, Nichols, Arsht & Tunnell LLP
18             -and-
          DAVID J. WOLFSOHN, ESQ., and
19        JORDAN L. JONAS, ESQ.
          Woodcock Washburn LLP
20        (Philadelphia, PA)

21                          Counsel for Plaintiff

22        JOHN G. DAY, ESQ.
          Ashby & Geddes
23
                            Counsel for Defendant
24                          Classified Information, Inc.

25
```

2

```
1    APPEARANCES CONTINUED:

2        ARTHUR G. CONNOLLY, III, ESQ.
         Connolly Bove Lodge & Hutz LLP

3
                      Counsel for Defendant
4                      Distance Digital

5             -  -  -

6        THE COURT:  Good afternoon, counsel.  My law

7    clerk, Gates Hurland.

8        All right.  Let's start with a round of

9    introductions.  Plaintiff is where?

10       MR. WOLFSOHN:  David Wolfsohn for plaintiff.

11   And Julie Heaney from Morris Nichols.

12       THE COURT:  I know Ms. Heaney well.

13       MS. JONAS:  And Jordan Jonas for Inovis.

14       MR. DAY:  John Day from Ashby & Geddes, flying

15   solo at the moment.  Although if this is in fact a patent

16   case, that will change.

17       THE COURT:  I see.

18       MR. CONNOLLY:  Your Honor, Arthur Connolly for

19   Distance Digital, from Connolly Bove.

20       THE COURT:  Thanks for the joint status report.

21   Let's talk about the issue that Mr. Day just

22   alluded to, regarding the status of things, and this whole

23   issue of the motion to dismiss Count One of the first

24   amended complaint, subject matter motion, covenant not to

25   sue motion.
```

3

```
1        Let's find out if there have been any

2    developments since the joint status report and where the

3    parties' thoughts are.

4        MR. WOLFSOHN:  I think where we are at, Your

5    Honor, if I may, is that the defendant patentee has agreed

6    to covenant not to sue the plaintiff Inovis, as well as the

7    three customers who got letters.  But they are unwilling to

8    go any further than that.

9        In other words, we have asked to covenant not to

10   sue customers generically as opposed to just A, B and C, to

11   whom they have written letters, because we are concerned

12   that, having written to customer A, customer B and customer

13   C and intimated that they would be sued for patent

14   infringement if they didn't take a license, inevitably, if

15   we don't get the covenant not to sue to cover D, E, F and G,

16   as soon as the case is dismissed, if it were dismissed, that

17   is exactly what would happen.

18       That right now is the sticking point.  As I read

19   the law, there is no, especially post-MedImmune, but even

20   pre-MedImmune, there is no requirement -- well, there is no

21   case law that supports the notion that after you have

22   written to A, B and C, if you say, okay, I won't go after A,

23   B and C, then that defeats jurisdiction.  And I think that's

24   just common sense.

25       In fact, the W.S. Packaging case, which is from
```

4

```
1    the District of Wisconsin, which we cited, said that

2    specifically, in this kind of situation, where the defendant

3    patentee is saying, I am not going to give you a covenant

4    not to sue your customers generically, I will only give you

5    a covenant not to sue the ones that I wrote letters to, that

6    that is really saying, I am planning on reserving my right

7    to do exactly what you are fearing that I will do.

8        The Court there said, you know, that's not good

9    enough.  You have to have a covenant not to sue that really

10   ameliorates, under the old test, the apprehension of being

11   sued.

12       So here, we would contend that, a fortiori,

13   MedImmune, where the test is, is there a dispute between the

14   parties that is real and defined, the fact that they have

15   said, we won't go after A, B, and C doesn't make the dispute

16   any less real or defined.  In fact, it actually sharpens the

17   issue of being that they are intending to do exactly what we

18   fear they will do.

19       MR. DAY:  Your Honor, in response, I won't sort

20   of rehash what we have already told you in our briefs.

21   Rather, I guess, responding to Mr. Wolfsohn's last point,

22   since MedImmune, the standard is that you look at all the

23   circumstances and see if there is an imminent substantial

24   dispute between the parties.  Our contention is you take a

25   look at the facts here, and there simply isn't one.
```

**9**

1 discovery in connection with the pending motion to dismiss
2 for lack of subject matter, so we could get to the bottom of
3 this.
4        The briefing on the part of Classified, in
5 connection with their motion, does not answer any of the
6 questions about why this happened, what went on, who owns
7 it, what was this agreement that's never been produced,
8 pursuant to which supposedly the patent was going to be
9 assigned but wasn't assigned, and so forth.
10       THE COURT: Mr. Day, you mentioned that your
11 client wasn't prepared to give the type of covenant, that is
12 the scope of coverage that would satisfy Inovis. Does in
13 fact Classified have the power?
14       MR. DAY: Yes, it does, Your Honor.
15       THE COURT: So it hasn't sold its right, title
16 and interest.
17       MR. DAY: It had an agreement to sell with a
18 right on behalf of the buyer to terminate, a right which the
19 buyer exercised, after, as I said, this lawsuit was filed.
20 I don't think there is any secret about that.
21       In fact, Distance Digital pled in its answer
22 that that had happened and it no longer had any right or
23 interest in the patent. We have never denied, other than
24 the conversation he talked about when Mr. Putnam did say he
25 sold it because he thought he had, but there is really no

**10**

1 mystery about it. Classified owns it and has offered a
2 covenant not to sue Inovis and the three customers who
3 purportedly were threatened.
4        THE COURT: Essentially, Mr. Putnam misspoke
5 when making the assertion that he apparently made?
6        MR. DAY: I don't know what was said. There had
7 been an agreement reached at that point, we had a right to
8 terminate. He thought it was a done deal. They exercised
9 their right to terminate subsequent to that.
10       THE COURT: Let's assume Classified does have
11 the legal entitlement to give that which Inovis seeks. You
12 indicated in your first set of remarks to me that Classified
13 is not prepared to grant any coverage beyond, to covenant
14 beyond the three customers.
15       MR. DAY: What it has offered, that's correct.
16       THE COURT: So my question to you is, wouldn't,
17 if you were in counsel's shoes over here, wouldn't you view
18 that as problematic?
19       MR. DAY: Yes and no, Your Honor. Again, I
20 don't think --
21       THE COURT: Wouldn't you want to consider
22 dialing up your malpractice carrier if you advised your
23 client to sign off on something like that when you know
24 there are customers out there in the land whom you have
25 agreed to indemnify?

**11**

1        No, I don't want to put you on the spot.
2        MR. DAY: I would like to respond to that.
3        This is one thing we said in our brief. We have
4 some questions about what exactly, whether there is an
5 indemnification that's as broad as was stated in their brief
6 and what exactly that indemnification involves, because we
7 haven't seen it. There is an affidavit that says we
8 indemnify our customers, and that's about it.
9        THE COURT: Well, that's sort of where, as we
10 say, the rubber meets the road.
11       MR. DAY: I think that's right, Your Honor.
12       THE COURT: Indemnification, from your point of
13 view, that is going to inform their view as to what they are
14 willing to enter as far as scope. Clearly, you are wise --
15 I don't mean to tell you how to practice law -- but it seems
16 to me prudent to be careful in accepting just A, B and C not
17 knowing whether D, E and F are out there.
18       It may be we just need to do some discovery. I
19 was hoping maybe there was some agreement, there was some
20 factual basis upon which the lawyers could agree here today,
21 the parties could agree here today and save you all some
22 money, your clients some money. But it doesn't appear that
23 is the case.
24       MR. DAY: I think that's fair, Your Honor.
25       THE COURT: So, then --

**12**

1        MR. WOLFSOHN: Unfortunately, not.
2        THE COURT: Sometimes things have to be fleshed
3 out a little more before the light of day shines on things.
4        Let's talk about the schedule. I have looked at
5 Attachment A. Basically, I am in agreement. I am going to
6 ask you to have an additional meet-and-confer. You can do
7 it today and/or at some later time, and compress this
8 schedule, because I want to bring this case to trial, and it
9 is kind of long in the tooth already -- and I am not
10 assigning blame to anybody -- March 23rd of '09, with a
11 pretrial order due date of January 26, '09, and a pretrial
12 conference date of February 24, '09, beginning at 9:30.
13       I am going to task plaintiff with preparing
14 this.
15       MR. WOLFSOHN: Form of order.
16       THE COURT: Yes. There is guidance on the
17 website, on my website. Ms. Heaney certainly has that.
18       MR. DAY: Could I ask you to repeat that, Your
19 Honor?
20       THE COURT: February 24th, 9:30.
21       I think if you compress the number of months for
22 fact discovery, you can easily come -- this is a one-patent
23 case. I don't know why it should take 11 months to complete
24 fact discovery in this case. If you compress it by about
25 three months and propose dates that are consistent with the

**13**

1 timelines which you obviously, Delaware counsel obviously
2 know are consistent with my practice, the one thing we will
3 leave a blank, you didn't contemplate a meeting by telephone
4 to discuss your letter exchange. You need to provide for a
5 letter exchange. You should provide the dates for that
6 exchange of letters requesting permission to file summary
7 judgment motions, leading up to that discussion that we will
8 likely have on the telephone.
9          I need a date for that. You can continue to
10 leave the proposed Markman hearing date blank. Given how
11 far out things are, I am probably going to be able to
12 accommodate the timelines that you are proposing, I think.
13          Beyond that, let me just say a few words about a
14 couple of things that I normally talk about in scheduling
15 conferences.
16          The first and foremost matter that I like to
17 talk about is discovery disputes. I am going to treat this
18 as a patent case. We will talk about length of trial in a
19 moment.
20          I am going to assume, just for purposes of our
21 discussion, that the matter is not going to be dismissed and
22 is going to be handled as a patent matter, for planning
23 purposes.
24          The other thing we should also, it occurs to me,
25 provide for is the supplementation, should it be necessary,

**14**

1 of your briefs, based on the discovery you are going to do,
2 which will cut off on December 21. You can propose a cutoff
3 for that supplementation and exchange of supplemental briefs
4 in the scheduling order.
5          MR. CONNOLLY: Your Honor, would that include
6 Distance Digital? We had taken the position in the first
7 instance that it wasn't necessary. But if there were to be
8 supplementation, it would just be with respect to the
9 ownership right, if any, of Distance Digital.
10          THE COURT: I am comfortable with that.
11          MR. CONNOLLY: We have already offered to
12 provide whatever information is necessary to prove we do not
13 have an ownership interest. But if for purposes of our
14 client we could narrow it to that topic...
15          THE COURT: Are the parties comfortable with
16 that?
17          MR. DAY: Yes, Your Honor.
18          MR. WOLFSOHN: Yes, Your Honor.
19          THE COURT: I am. I should have mentioned that.
20 I saw that in the joint status report. So you need to talk
21 about that.
22          I would encourage, I think what I would like to
23 do is place some page limitation on those supplemental
24 briefs. I think five pages a side is enough. Just the
25 movant gets to supplement five pages and the respondent gets

**15**

1 to supplement five pages. That's enough.
2          If you need relief from that, you will talk
3 about it, and like with any other stipulation at which you
4 arrive, you will submit it to me with an explanation as to
5 why you are asking me to do whatever it is you are asking me
6 to do.
7          Please don't submit a stipulation with no
8 explanation, because it creates an administrative burden for
9 my staff, because they have a standing order to reject
10 those. They add up, they do add up.
11          So as far as discovery of any kind is concerned,
12 should you arrive at an impasse, you make a true impasse,
13 when I say impasse, I mean -- and I do require counsel to
14 discuss their requests and objections thereto and not just
15 e-mail and write one another about it. I have found over
16 the course of time I have been doing this that conversation
17 can oftentimes ameliorate situations that otherwise seem
18 intractable. So you need to do that. Unless you can report
19 to my staff that you have done that, I am not going to
20 schedule you for a teleconference.
21          Once you have a true impasse, you call up
22 chambers. And one of my staff will give you a date for a
23 teleconference, and tell you no less than 48 hours in
24 advance of that teleconference we need an agenda letter, a
25 nonargumentative, jointly submitted agenda letter, which

**16**

1 basically bullets for me what the issues are.
2          Keep in mind, counsel, that while every case is
3 unique, there is not a whole lot new under the sun when it
4 comes to discovery disputes. I am sure there is something
5 lurking out there that is going to find its way up to the
6 Supreme Court or something, but there is not a lot.
7          So that is why I have evolved to the point where
8 I no longer feel it's helpful and time-efficient for me to
9 have briefing, either letter or regular briefs.
10          If something happens during the teleconference
11 where it becomes obvious to me that I would benefit in terms
12 of decision-making from additional supplementation, I will
13 give you a chance to do that. We will talk about that, and
14 I will say can you do this in however many pages or do you
15 need full-blown briefing. I usually don't give you full
16 briefing, because it bogs the process down.
17          I give you three times to do that with me.
18 After that there is a good-cause standard that applies that
19 lets you in with me. After that there is a presumption, it
20 is rebuttable but pretty strong, I will send you to the
21 private discovery masters that our court uses, but now that
22 we have the luxury of a second Judge, to whoever is assigned
23 to me on this case. I don't know whether it is Judge Stark
24 or Judge Thynge.
25          MR. DAY: It is an odd number, so it would be

# EXHIBIT B

OPR/ASSIGNMENTS    12/15/03 9:05  PAGE  2/3    RightFAX





**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

DECEMBER 12, 2003

PERKIN & MILTNER, LLP                    PTAS          *700056476A*
LISEL M. FERGUSON, ESQ.
750 B STREET STE. 2800
SAN DIEGO, CA 92101

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT DIVISION OF
THE U.S. PATENT AND TRADEMARK OFFICE.  A COMPLETE MICROFILM COPY IS
AVAILABLE AT THE ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER
REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE.  THE
INFORMATION CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA
PRESENT IN THE PATENT AND TRADEMARK ASSIGNMENT SYSTEM.  IF YOU SHOULD
FIND ANY ERRORS OR HAVE QUESTIONS CONCERNING THIS NOTICE, YOU MAY
CONTACT THE EMPLOYEE WHOSE NAME APPEARS ON THIS NOTICE AT 703-308-9723.
PLEASE SEND REQUEST FOR CORRECTION TO:  U.S. PATENT AND TRADEMARK OFFICE,
ASSIGNMENT DIVISION, BOX ASSIGNMENTS, CG-4, 1213 JEFFERSON DAVIS HWY,
SUITE 320, WASHINGTON, D.C. 20231.

RECORDATION DATE: 12/11/2003          REEL/FRAME: 014186/0649
                                      NUMBER OF PAGES: 2

BRIEF:  ASSIGNMENT OF ASSIGNOR'S INTEREST (SEE DOCUMENT FOR DETAILS).

ASSIGNOR:
   CI (SOFTWARE SOLUTIONS) LIMITED     DOC DATE: 04/10/2003

ASSIGNEE:
   CLASSIFIELD INFORMATION, INC.
   810 LOS VALLECITOS BLVD., STE. 211
   SAN MARCOS, CALIFORNIA 92069

SERIAL NUMBER: 08503984               FILING DATE: 07/19/1995
PATENT NUMBER: 5812669                ISSUE DATE: 09/22/1998

TARA WASHINGTON, EXAMINER
ASSIGNMENT DIVISION
OFFICE OF PUBLIC RECORDS

*Plaintiff*
EXHIBIT NO. 4

**RECORDATION FORM COVER SHEET**
**PATENTS**

TO THE HONORABLE COMMISSIONER OF PATENTS AND TRADMARKS
P.O. Box 1450, Alexandria, VA 22313-1450

Please record the attached documents or copies thereof.

1.    Name of conveying party:
      **CI (Software Solutions) Limited**
      **810 Los Vallecitos Blvd. Ste. 211**
      **San Marcos, CA 92069**

2.    Name and address of receiving party(ies):
      **Classified Information, Inc.**
      **810 Los Vallecitos Blvd. Ste. 211**
      **San Marcos, CA 92069**

3     Nature of conveyances:
      **Assignment on April 10, 2003**

4.    Patent number(s) and issue date(s):
      A.   Patent No.        B.      Patent Date
           **5,812,669**              **September 22, 1998**

5.    Name and address of party to whom correspondence concerning this
      document should be mailed:

                  Lisel M. Ferguson, Esq.
                  Perkins & Miltner, LLP
                  750 B Street Ste. 2800
                  San Diego, CA 92101

6.    Total No. of applications and patents involved: _____ 1 _____

7.    Total Fee $40.00 for recordation and assignment.
      **XX**   Credit Card Authorization Enclosed.

If additional fees are required applicant will pay these upon notification. A duplicate
copy of this Form is enclosed.

To the best of my knowledge and belief, the forgoing information is true and correct and
any attached copy is a true copy of the original document.

**Lisel M. Ferguson**                                            12/11/03
Name of Person Signing              Signature              Date
Total number of pages including cover sheet, attachments and document:_____

G:\2129\002\Docs\PA4CI.wpd

PATENT
700056476                                    REEL: 014186 FRAME: 0649

000009

 MAZARS

The Directors
Classified Information Inc
810 Los Vallecitos Blvd
Suite 211
San Marcos
CA 92069

Direct line    01582 700722
Email    Martin.pickard@mazars.co.uk

10 April 2003

Dear Sirs

**CI Solutions Limited – In Liquidation**

I confirm that, in so far as CI Solutions Ltd right and title, the name 'Templar', all source code relating to the Templar product, intellectual property rights, Patent and associated trademarks, these were transferred to Classified Information Inc in respect of the consideration agreed and paid.

Yours faithfully

**Martin Pickard**
**Creditors Voluntary Liquidator**

**PATENT**
**REEL: 014186 FRAME: 0650**

000010

# EXHIBIT C

FILED SEPARATELY
UNDER SEAL

# EXHIBIT D

FILED SEPARATELY
UNDER SEAL

# EXHIBIT E

FILED SEPARATELY
UNDER SEAL

EXHIBIT F

FILED SEPARATELY
UNDER SEAL

# EXHIBIT G

FILED SEPARATELY
UNDER SEAL

# EXHIBIT H

FILED SEPARATELY
UNDER SEAL

EXHIBIT I

FILED SEPARATELY
UNDER SEAL

# EXHIBIT J

FILED SEPARATELY
UNDER SEAL