# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **INOVIS USA, INC.** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 07-459-GMS |
| | ) | |
| **CLASSIFIED INFORMATION, INC.,** | ) | |
| Defendant. | ) | |

## CLASSIFIED'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

OF COUNSEL:

Michael A. Lee
Vineet Bhatia
Stephen F. Schlather
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
(713) 651-9366

DATED: April 2, 2008

M. Duncan Grant (Del. Bar No. 2994)
Pepper Hamilton LLP
1313 North Market Street, Suite 5100
Wilmington, DE 19899-1709
(302) 777-6500

Attorneys for Defendant Classified
Information, Inc.

# TABLE OF CONTENTS

Page

Cover Page ........................................................................................................1

Table of Contents ............................................................................................2

I. Nature of the Proceedings ..........................................................................4

II.  Summary of the Argument .......................................................................5

III.  Statement of Facts .............................................................................. 5-8

IV.  Argument ............................................................................................ 9-12

V.  Conclusion ...............................................................................................12

Certificate of Service ......................................................................................14

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Affymetrix, Inc. v. Illumina, Inc.*, 446 F. Supp. 2d 292 (D. Del. 2006)...........................................12

*Arachnid, Inc. v.  Merit Industrial, Inc.*, 939 F.2d 1574 (Fed. Cir. 1991) ..............................11, 12

*McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493 (3d Cir. 1943).....................10, 11

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) ..........................................9, 10, 11

*UD Technology Corp. v. Phenomenex, Inc.*, 2007 WL. 28295 (D. Del 2007) ...............................9

## I.    NATURE OF THE PROCEEDINGS

Inovis invoked the jurisdiction of this Court by filing a declaratory judgment action seeking to invalidate Classified's '669 patent. Even though it initiated the lawsuit, Inovis now asks the Court to dismiss Classified's infringement counterclaims. Inovis clearly wants to have its cake and eat it too. On the one hand, Inovis seeks to avail itself of the declaratory judgment powers of this Court to invalidate Classified's patent. While on the other hand, Inovis wants to have Classified's counterclaims dismissed because of the remarkable, although, demonstrably incorrect, assertion that Classified does not own United States Patent No. 5,812,669 (the "'669 Patent"). Inovis simply cannot have it both ways.

Inovis filed its declaratory judgment claims in this Court on July 23, 2007 seeking to invalidate Classified's U.S. Patent No. 5,812,669. *See*, Inovis' Complaint (D.I. 1) at ¶6. Inovis did not challenge Classified's ownership of the '669 Patent in its Complaint or its First Amended Complaint (D.I. 12). Inovis failed to raise the ownership issue for more than 7 months since filing its Delaware suit.

Tellingly, Inovis did challenge Classified's ownership of the '669 Patent in a suit it filed in Georgia on February 20, 2007. Inovis voluntarily dismissed the Georgia suit and refiled its case in Delaware – dropping any challenge to Classified's ownership of the '669 Patent. In addition, during the pendency of both its Georgia suit and the present case and up until the filing of its motion to dismiss, Inovis has failed to produce any evidence supporting its allegation that Classified does not own the '669 Patent, despite conducting discovery on this subject.

Only now, after Classified asserted counterclaims for patent infringement, does Inovis raise for the first time the alleged ownership issue.

4

## II.    SUMMARY OF THE ARGUMENT

Classified is the sole owner of all right, title and interest in and to the '669 Patent. Contrary to Plaintiff's incorrect assumptions, Classified purchased the '669 Patent from Classified (Software Solutions) Limited ("CSS"), a UK company, as part of a transaction involving all the rights and assets associated with the CSS's Templar® software product (which is also known as "T5").

Despite its rhetoric, Inovis admits that all Classified must do to show it has standing to bring infringement counterclaims is "produce a written assignment from an owner of the patent to Classified." Inovis Opening Brief at 2. To establish standing and show a valid assignment exists, the Federal Circuit requires only "a written instrument documenting the transfer." There is no dispute that CSS owned the '669 Patent prior to transferring it to Classified. In addition to the documents Classified filed with the Patent and Trademark Office evidencing the transfer of rights in the '669 Patent from CSS to Classified, Classified has also produced records that document the entire transaction between Classified and CSS related to the transfer of all intellectual property assets related to the Templar® software product, including the '669 Patent, to Classified. The Patent Act, Federal Circuit law and Inovis own briefing clearly show that nothing more is required to establish an effective assignment and establish that Classified is the owner of the '669 Patent.

## III.    STATEMENT OF FACTS

The relevant facts here are very simple. While CSS was in the process of being liquidated in the UK, Classified's president contacted CSS and made an offer to purchase the assets associated with CSS's Templar® software product. The Templar product was known to both Classified and CSS as "T5." CSS coordinated with the UK liquidator, Martin Pickard of the

Mazars firm, to transfer all of the T5 assets, including the '669 Patent, to Classified. The liquidator provided Classified with an invoice confirming the sale of the intellectual property associated with the T5 product. Ultimately, CSS prepared a letter for the UK liquidator to sign confirming that all of the intellectual property assets of T5 were in fact transferred to Classified. This transfer specifically confirms that the T5 patents were part of the asset transfer. The specific details of the transaction which resulted in the assignment of the '669 Patent to Classified are described below.

On September 3, 2002, Classified's President Matt Lechowicz sent an e-mail to one of CSS's directors, Mark Webb, asking him to forward to the UK liquidator an offer to purchase the intellectual property rights associated with T5. The term "T5" was understood by Classified and CSS to mean version 5 of the Templar® software product. Exhibit 1 at ¶5; Exhibit 2 at ¶5. The offer provided that Classified would pay £10,000 for the T5 assets. Exhibit 3. Specifically, the e-mail stated:

> Classified Information, Inc. would like to make an offer of 10,000 pounds for the intellectual property rights of T 5. We would like to make our first payment of $5,000 U.S. dollars on the 15th of September 2002 and the remainder to be paid over two payments on October 15 and November 15 2002. Please contact me to arrange a wire transfer for the funds.

*Id.* Mr. Webb forwarded Classified's offer to the liquidator on September 3, 2002. Exhibit 1 at ¶6.

On September 11, 2002, Lindsey Nicholson, an associate assisting Mr. Pickard with the liquidation of CSS's assets, responded to Mr. Lechowicz accepting his offer and setting forth certain terms of the sale. Exhibit 4. Ms. Nicholson's e-mail stated:

> I can confirm that, subject to the terms and conditions detailed below, I am happy to accept of [sic] your offer of  £10,000 payable in three installments as detailed in your letter.

The e-mail also described certain additional conditions associated with the transaction.

On October 1, 2002, Ms. Nicholson provided Classified with a written invoice memorializing the terms of the sale. Exhibit 5. The invoice sets forth the previously agreed terms of the parties:

**C I Solutions Limited – In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America                                   Invoice No:CRI/02

1 October 2002

| | £ |
|---|---|
| To Sale of | |
| Intellectual Property to the product known as T5. | 10,000.00 |

Notes

1.  All goods sold without any warranty whatsoever.
2.  Liquidator only sell those goods to which he has title.
3.  All goods remain the property of the Liquidator until paid for in full by cleared funds.

*Id.* The invoice sets forth the scope of the assets to be transferred, the purchase price and the date. In addition, the invoice set forth the additional terms and conditions of the transfer which were set forth in Ms. Nicholson's acceptance e-mail (Exhibit 4).

After both Classified and the UK liquidator agreed to the terms of the sale of the T5 intellectual property rights, Classified made payments to the liquidator totaling £10,000. Exhibits 6, 7, and 8. As shown in Exhibit 6, on September 17, 2002, Cheryl Lapoint, a Classified employee, made the first installment payment of $5,000 by wire transfer in accordance with the

instructions provided by Ms. Nicholson. On October 15, 2002, Ms. Lapoint made a second installment payment of $5,000. Exhibit 7. Finally, on November 26, 2002, Ms. Lapoint made the final installment payment of $5909.44. Exhibit 8.

Following payment of the third and last installment, Classified requested a final bill of sale from the UK liquidator. Exhibit 2 at ¶9. After attempting several times to reach Mr. Pickard and Ms. Nicholson, Mr. Lechowicz again contacted Mr. Webb for assistance. Exhibit 9. Mr. Lechowicz also sought assistance in obtaining a final bill of sale from another CSS director, Gary McDonald. Exhibit 10. Ultimately, Mr. Webb prepared a letter detailing the transfer of all intellectual property rights associated with the T5 product to Classified. Exhibit 1 at ¶9. Mr. Webb further confirmed that the "Patent" in his letter referred to the '669 Patent. *Id.* This letter was executed by Mr. Pickard on April 10, 2003 confirming that, in accordance with the invoice of October 1, 2002, he had transferred the listed assets to Classified. Exhibit 11.

Inovis has only challenged the validity of the transfer from CSS to Classified. Nonetheless, Classified provides here a brief history of the chain of title of the '669 Patent to preclude any further grounds for additional motion practice.

On July 11, 1995, the inventors of the '669 Patent, Lew Jenkins and Emmanuel Pasetes, assigned their rights to Premenos Corporation. Exhibit 12. On July 10, 1998, Premenos assigned the '669 Patent to Harbinger Corp. Exhibit 13. Subsequently, on June 16, 2000, Harbinger changed its name to Peregrine Connectivity, Inc. Exhibit 14. Then, on December 9, 2003, Peregrine assigned the '669 Patent to CSS. Exhibit 15. All of these assignments were filed with the PTO and are not in dispute.

## IV.    ARGUMENT

Standard of Review

A motion to dismiss under Rule 12(b)(1) can attack the complaint on its face or, as here, can attack the existence of subject matter jurisdiction in fact.    *UD Technology Corp. v. Phenomenex, Inc.*, 2007 WL 28295 (D. Del 2007).    When considering a factual attack, the court must evaluate the factual issue in order to satisfy itself that subject matter jurisdiction does exist. *Id* at *2.

Here, Classified bears the burden of proving that subject matter jurisdiction exists; however, Classified's burden "is relatively light."    *Id.* at *2.    Classified more than meets this light burden by clearly establishing that the assets associated with the Templar® software, including the '669 Patent, were validly transferred and assigned to Classified thereby giving Classified standing to bring its infringement counterclaims.

The '669 Patent Was Validly Assigned

Contrary to the convoluted standard Inovis attempts to craft, the Federal Circuit, in *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000), has held that to establish standing, a patent owner must only "produce a written instrument documenting the transfer of proprietary rights in the patent[]."    211 F.3d at 1250 (emphasis added); *see also* Inovis Opening Brief at 8.    Both the Patent Act and the Federal Circuit make it very clear that nothing more than a written instrument documenting the transfer of rights is required.    Here, both the April 10, 2003 letter from Mr. Pickard and the October 1, 2002 invoice from the liquidator meet this requirement.    The invoice clearly states that the "Intellectual Property to the product known as T5" is sold to Classified for the sum of £10,000.  Exhibit 5.  Mark Webb, a director of the CSS at the time of this transaction, confirmed that the intellectual property rights associated with the T5

product (*i.e.*, the product specifically described in the invoice) included the '669 Patent. Exhibit 1 at ¶9. While he was a director of CSS, Mr. Webb prepared a draft letter that Mr. Pickard ultimately signed confirming that the "intellectual property rights" related to the Templar® product were transferred to Classified. *Id.* In his letter, Mr. Pickard described the intellectual property rights that were transferred as including both the "Patent and associated trademarks." *Id.* There is no doubt here that (1) Mr. Pickard intended to and did transfer the intellectual property rights associated with the T5 or Templar® product to Classified and (2) that Mr. Pickard, as well as Classified and the directors of CSS, understood and intended those intellectual property rights to include the '669 Patent. In addition, Mr. Lechowicz, the President of Classified at the time of the transfer of the '669 Patent to Classified, has also confirmed that Classified's offer to purchase "the intellectual property rights of T5" included the purchase of the '669 Patent. Exhibit 2 at ¶5.

It is well established that no particular form of words is required to constitute a valid patent assignment. *McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493, 499 (3d Cir. 1943). Nonetheless, the "instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent." *Id.* The *McClaskey* court determined that a bill of sale is sufficient to evidence an unmistakable intent to convey a patent:

> The bill of sale for the patent executed by the sheriff to the plaintiff shows an unmistakable intention to convey to the plaintiff everything which the sheriff had to sell.

*Id.* The Court further noted that "[t]he important thing is the authority of [the sheriff] to make the transfer or assignment. Id. It is undisputed that the UK liquidator had the authority to sell, assign and transfer the assets of CSS to Classified.

In determining the intent of the parties to convey the patent, the Court should consider the entirety of the transaction in determining the scope of the assignment. In *Speedplay*, the Federal Circuit considered whether an assignment which recited the transfer of an "unrelated patent on unrelated technology" could be construed to cover the patent which the assignor and assignee actually intended to transfer. 211 F.3d at 1250. The Court looked not only at specific assignment clause in the contract, but also considered other portions of the contract in reaching a determination that the parties clearly intended to transfer the patent-in-suit. *Id.* at 1250-1.

Classified, CSS and the UK liquidator all understood that the intellectual property rights to T5 included the '669 Patent. Exhibit 1 at ¶¶5, 8; Exhibit 2 at ¶5. In addition, CSS, Classified and the liquidator all clearly and unmistakably intended to transfer the '669 Patent as part of the transfer of the intellectual property rights related to the T5 product. Exhibit 1 at ¶10; Exhibit 2 at ¶5. Here, the October 1, 2002 invoice from the UK liquidator as well as the April 10, 2003 letter from Mr. Pickard, either taken together or separately, are the equivalent of the *McClaskey* bill of sale. As in *McClaskey*, both the invoice and the Pickard letter "show[] an unmistakable intention to convey … everything which [CSS] had to sell." *Id.* at 499. In addition, all the parties to the transfer – Classified, CSS and the liquidator – clearly understood that the '669 Patent was included as part of the assets purchased by Classified. Exhibit 1 at ¶¶5, 8; Exhibit 2 at ¶5.

Inovis incorrectly suggests that a "written instrument must express the patent owner's *present* intention to transfer title." Inovis' Opening Brief at 6, *referencing Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1581-1581 (Fed. Cir. 1991). *Arachnid* dealt very specifically with an agreement to assign a patent at some time in the future and the court unremarkably recognized that a promise to assign was not an assignment. *Id.* This Court has distinguished

*Arachnid* where, as is the case here, the conveying document does not contain "an agreement to assign.". In *Affymetrix, Inc. v. Illumina, Inc.*, 446 F.Supp.2d 292 (D. Del. 2006), this Court held that the "present intention" language relied upon by Inovis applies only where the agreement contains "will assign" language. *Id.* at 296. In this case, there is no promise or agreement to assign. The October 2, 2002 invoice from the UK liquidator, as well as the additional materials detailing the transaction between Classified and CSS clearly establish that CSS was not offering a future assignment, but rather documenting that the T5 intellectual property assets, including the '669 Patent, were transferred to Classified.

Classified has produced the entire history of the transaction between itself and the UK liquidators responsible for the sale of CSS' liquidation assets. In addition, Matt Lechowicz, the President of Classified and CSS's former director Mark Webb both confirm that the parties understood and intended that the '669 Patent was transferred with the other intellectual property assets of T5. Had Inovis conducted any significant discovery in this area, it would have known that Classified was the owner of the '669 Patent and this issue would not now be before the Court.

## V.    CONCLUSION

For the reasons set forth above, Classified respectfully requests that Plaintiff's Motion to Dismiss be denied.


OF COUNSEL:                                        Respectfully submitted,

Michael A. Lee
Vineet Bhatia                                      /s/ M. Duncan Grant
Stephen F. Schlather                               M. Duncan Grant (Del. Bar No. 2994)
SUSMAN GODFREY L.L.P.                              Pepper Hamilton LLP
1000 Louisiana, Suite 5100                         1313 North Market Street, Suite 5100
Houston, Texas  77002                              Wilmington, DE  19899-1709
(713) 651-9366                                     (302) 777-6500

                                                   Attorneys for Defendant Classified
DATED:  April 2, 2008                              Information, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of April, 2008, the foregoing Classified's Answering Brief in Opposition to Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction  was served upon the below-named counsel of record at the addresses and in the manner indicated:

Jack B. Blumenfeld, Esq.                              *Via EM / ECF* and *Via Electronic Mail*
Julia Heaney, Esq.
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

David J. Wolfsohn, Esq.                               *Via Electronic Mail*
Woodstock Washburn LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA  19104


                                        /s/ M. Duncan Grant
                                        M. Duncan Grant (Del. Bar No. 2994)

# Exhibit 1



## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **INOVIS USA, INC.** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 07-459-GMS |
| | ) | |
| **CLASSIFIED INFORMATION, INC.,** | ) | |
| Defendant. | ) | |

### AFFIDAVIT OF MARK WEBB

I, **MARK DANIEL WEBB**, upon my oath, make this affidavit and state the following:

1.      My name is Mark Daniel Webb.  I am over the age of twenty-one (21) years, am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this affidavit, and each of the facts and statements is true and correct.

2.      I served as a director of CI Software Solutions Limited ("CI Solutions") in the United Kingdom, from prior to September 30, 2000 until August 3, 2004.  *See*, Exhibit A. Subsequent to that I became a shareholder of Classified Information, Inc., a Delaware corporation.

3.      While acting as a director of CI Solutions, CI Solutions purchased U.S. Patent No. 5,812,669 entitled "Method And System For Providing Secure EDI Over An Open Network" from Peregrine Connectivity, Inc. on or about September 30, 2000.  I took part in and witnessed this transaction and have personal knowledge that this transfer did take place.  A true and correct copy of the corporate assignment and bill of sale are attached as Exhibits B and C.

4.      On or about May 4, 2002, CI Solutions filed for dissolution in the United Kingdom in accordance with the UK's Insolvency Act.  Dissolution in the United Kingdom is similar to bankruptcy in the United States.  However, instead of a bankruptcy trustee liquidating

a bankrupt's assets, in the United Kingdom a "liquidator" oversees the distribution, sale and liquidation of an insolvent firm's assets. The Liquidator appointed to dispose of CI Solutions assets was Martin Pickard of Mazars, a United Kingdom firm specializing in audit, tax and advisory services, including assisting businesses in winding down their operations. Lindsey Nicholson assisted Mr. Pickard with the sale of CI Solution's assets.

5.    At the time of CI Solutions dissolution, I was a shareholder of Classified Information, Inc. The president of Classified Information, Inc. was Matt Lechowicz. I assisted Mr. Lechowicz in the acquisition of certain intellectual property rights from CI Solutions. In particular I was asked to assist Classified Information, Inc. in purchasing the intellectual property rights associated with CI Solution's Templar® or T5 product, including, among other things, U.S. Patent No. 5,812,669, out of liquidation.

6.    On September 3, 2002, I forwarded an email from Mr. Lechowicz to Lindsey Nicholson, an administrator in Mr. Pickard's office, offering to purchase the intellectual property rights of T5 for £10,000. A true and correct copy of that email is attached to this affidavit as Exhibit D.

7.    On September 11, 2002, Ms. Nicholson responded to Mr. Lechowicz by e-mail accepting his offer to purchase the intellectual property rights of T5. Mr. Pickard and I were copied on Ms. Nicholson's e-mail. A true and correct copy of that email is included in the e-mail attached to this affidavit as Exhibit E.

8.    Prior to the dissolution of CI Solutions by Mr. Martin, he was aware and acknowledged that CI Solutions owned all intellectual property rights associated with T5 including Patent No. 5,812,669. Mr. Martin was aware that CI Solutions obtained those rights from Peregrine Connectivity. From my discussions with Mr. Martin it was clear to me that he knew that the intellectual property rights associated with T5 were the same assets specified in the Peregrine/CI Solution assignment documents mentioned in Paragraph 3 above, which included U.S. Patent No. 5,812,669.

9.     On or about March 1, 2003, I was asked by Matt Lechowicz to procure written confirmation of the intellectual property rights associated with T5 or Templar Software. In response, I prepared a draft of a letter for Mr. Pickard to sign that confirmed that CI Solutions had in fact transferred its ownership interests in all intellectual property rights associated with T5 to Classified Information, Inc. I did not include the patent number to the '669 patent in my draft letter because both CI Solutions, Classified Information, Inc., and Mr. Martin all understood and acknowledged that U.S. Patent No. 5,812,669 had been previously purchased in accordance with correspondence and invoice attached to this affidavit as Exhibits D, E, and F. A copy of the letter I drafted, as signed by Mr. Pickard, is attached as Exhibit G.

10.     I confirm that the intent of the agreement between CI Solutions and Classified Information, Inc. was to sell, assign and transfer all the intellectual property rights associated with the T5 product, including U.S. Patent 5,812,669, to Classified Information, Inc. and that Classified Information, Inc. did purchase this patent legally and according to UK law.

**FURTHER, AFFIANT SAITH NOT.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 1, 2008.

_____
**MARK DANIEL WEBB**

EP Farry

EMMA PATRICIA FARRY
SHULMANS SOLICITORS
120 WELLINGTON STREET
LEEDS
LS1 4CT

**SHULMANS**
SOLICITORS

120 Wellington Street
Leeds
LS1 4CT
Tel: 0113 245 2833
www.shulmans.co.uk

# Exhibit A

N/m                    AMENDED.

## Companies House
*for the record*

Company Name
**CI SOLUTIONS LTD.**

# 363s Annual Return

> Please check the details printed in blue on this statement.
> If any details are wrong, strike them through and write the correct details in the "Amended details" column.
> Please use black pen and write in ca

Company Type
**Private Company Limited By Shares**
Company Number
**3556809**
Information extracted from
Companies House records on
30th May 2001

## Section 1: Company details



A17
COMPANIES HOUSE    D492
14/06/01

Ref: 3556809/03/10

| | Current details | Amended details |
|---|---|---|
| > **Registered Office Address** *If any of the details are wrong, strike them through and fill in the correct details in the "Amended details" column.* | C/O Bsg Valentine Lynton House 7-12 Tavistock Square London WC1H 9BQ | Address _____ _____ _____ _____ UK Postcode ⌐_⌐_⌐_⌐ _⌐_⌐ |
| > **Register of Members** *If any of the details are wrong, strike them through and fill in the correct details in the "Amended details" column.* | Address where the Register is held At Registered Office | Address _____ _____ _____ _____ UK Postcode ⌐_⌐_⌐_⌐ _⌐_⌐ |
| > **Register of Debenture Holders** *If any of the details are wrong, strike them through and fill in the correct details in the "Amended details" column.* | Not Applicable | Address _____ _____ _____ _____ UK Postcode ⌐_⌐_⌐_⌐ _⌐_⌐ |

| | SIC Code | Description | SIC CODE | Description |
|---|---|---|---|---|
| > **Principal Business Activities** *If any of the details are wrong, strike them through and fill in the correct details in the "Amended details" column.* | 7220 | Software consultancy and supply | ⌐_⌐_⌐ | _____ |
| | 7260 | Other computer related activities | ⌐_⌐_⌐ | _____ |
| | | | ⌐_⌐_⌐ | _____ |
| | | | ⌐_⌐_⌐ | _____ |
| > *Please enter additional principal activity code(s) in "Amended details" column. See notes for guidance for list of activity codes.* | | | | |

1

CI 002969
CONFIDENTIAL

**Company Number · 3556809**

## Section 2: Details of Officers of the Company

| Current details | Amended details |
|---|---|

> **Company Secretary**
*If any of the details for this person are wrong, strike them through and fill in the correct details in the "Amended details" column.*

**Name**
 Michael MILNER

**Address**
2 Blackberry Field
Prestbury
Cheltenham
Gloucestershire
GL52 5LT

*Particulars of a new Company Secretary must be notified on form 288.*

**Name**
_____

Address
_____
_____
_____
_____

UK Postcode  ⎵ ⎵ ⎵ ⎵   ⎵ ⎵ ⎵
Date of change ⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵
Date Michael MILNER
ceased to be secretary (if applicable)
⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵

---

> **Director**
*If any of the details for this person are wrong, strike them through and fill in the correct details in the "Amended details" column.*

**Name**
 Jeremy Reeve CROOK

**Address**
Pippins
Woodland Avenue
Cranleigh
Surrey
GU6 7HZ

**Date of birth**  01/04/1953

**Nationality**    British

**Occupation**    Consultant

*Particulars of a new Director must be notified on form 288.*

**Name**
_____

Address
_____
_____
_____
_____

UK Postcode  ⎵ ⎵ ⎵ ⎵   ⎵ ⎵ ⎵
Date of birth  ⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵
Nationality  _____
Occupation  _____
Date of change ⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵
Date Jeremy Reeve CROOK ceased to be director (if applicable)
⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵

---

> **Director**
*If any of the details for this person are wrong, strike them through and fill in the correct details in the "Amended details" column.*

**Name**
 Michael MILNER

**Address**
2 Blackberry Field
Prestbury
Cheltenham
Gloucestershire
GL52 5LT

**Date of birth**  08/02/1941

**Nationality**    British

**Occupation**    Accountant

*Particulars of a new Director must be notified on form 288.*

**Name**
_____

Address
_____
_____
_____
_____

UK Postcode  ⎵ ⎵ ⎵ ⎵   ⎵ ⎵ ⎵
Date of birth  ⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵
Nationality  _____
Occupation  _____
Date of change ⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵
Date  Michael MILNER  ceased to be director (if applicable)
⎵ ⎵ / ⎵ ⎵ / ⎵ ⎵ ⎵ ⎵

CI 002970
CONFIDENTIAL

Company Number - 3556809 | Section 2: Details of Officers of the Company (continued)

| | Current details | Amended details |
|---|---|---|
| **> Director .**<br>If any of the details for this person are wrong, strike them through and fill in the correct details in the "Amended details" column. | **Name**<br>Jonathan Hamish PALMER<br><br>**Address**<br>17 Castle Road<br>Isleworth<br>Middlesex<br>TW7 6QR<br><br>**Date of birth** 26/06/1969<br><br>**Nationality** British | **Name**<br>_____<br><br>**Address**<br>_____<br>_____<br>_____<br>_____<br><br>UK Postcode ⎕⎕⎕⎕ ⎕⎕⎕<br>Date of birth ⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕<br>Nationality _____<br>Occupation _____<br>Date of change ⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕ |
| _Particulars of a new Director must be notified on form 288._ | **Occupation** National Account Manager | Date Jonathan Hamish PALMER ceased to be director (if applicable)<br>⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕ |
| **> Director**<br>If any of the details for this person are wrong, strike them through and fill in the correct details in the "Amended details" column. | **Name**<br>Sean Jeremiah Allen SCULLY<br><br>**Address**<br>29 Ruston Mews<br>London<br>W11 1RB<br><br>**Date of birth** 09/08/1964<br><br>**Nationality** British | **Name**<br>_____<br><br>**Address**<br>_____<br>_____<br>_____<br>_____<br><br>UK Postcode ⎕⎕⎕⎕ ⎕⎕⎕<br>Date of birth ⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕<br>Nationality _____<br>Occupation _____<br>Date of change ⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕ |
| _Particulars of a new Director must be notified on form 288._ | **Occupation** Sales Executive | Date Sean Jeremiah Allen SCULLY ceased to be director (if applicable)<br>⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕ |
| **> Director**<br>If any of the details for this person are wrong, strike them through and fill in the correct details in the "Amended details" column. | **Name**<br>Mark Daniel WEBB<br><br>**Address**<br>22 Lawns Mount<br>New Farnley<br>Leeds<br>West Yorkshire<br>LS12 5RG<br><br>**Date of birth** 01/11/1967<br><br>**Nationality** British | **Name**<br>_____<br><br>**Address**<br>_____<br>_____<br>_____<br>_____<br><br>UK Postcode ⎕⎕⎕⎕ ⎕⎕⎕<br>Date of birth ⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕<br>Nationality _____<br>Occupation _____<br>Date of change ⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕ |
| _Particulars of a new Director must be notified on form 288._ | **Occupation** Director | Date Mark Daniel WEBB ceased to be director (if applicable)<br>⎕⎕ / ⎕⎕ / ⎕⎕⎕⎕ |

CI 002971
CONFIDENTIAL

Company Number - 3556809

## Section 3: Share Capital

| | Current details | Amended details |
|---|---|---|
| > **Issued Share Capital** *This table shows the total number of shares that have been issued by your company and their Nominal Value. If any of the details are wrong, please fill in the correct details.* | **Class of share** Ordinary | Class of share _____ |
| | **Nominal value of each share** £1.00 | Nominal value of each share _____ |
| | **Number of shares issued** 225 | Number of shares issued 106,833 |
| | **Aggregate Nominal Value of issued shares** £225.00 | Aggregate Nominal Value of issued shares 106,833 |
| > **Total shares issued and value** *If any of the details are wrong, strike them through and fill in the correct details in the "Amended details" column.* | **Total number of shares issued** 225 | Total number of shares issued 106,833 |
| | **Total Nominal value of shares issued** £225.00 | Total Nominal value of shares issued 106,833 |

> At the date of this Annual Return, if the company has altered or changed its share capital in any way or allotted new shares, please refer to the guidance notes for details of the appropriate form that should be sent with this Annual Return. Annual return guidance notes are available on the Companies House web site at www.companieshouse.gov.uk or by ringing 0870 3333636.

4

CI 002972
CONFIDENTIAL

Company Number - 3556809

## Section 4: Details of Shareholders

> The details we hold on your company's shareholders and their shareholdings are printed below. These are based on your last Annual Return.

> If any details have changed, or if any shares have been transferred, please fill in the details in the *"Amended details"* or *"Shares transferred"* column.

> Please give details of any other shareholders in Section 5.

| Current details | Amended details | Shares transferred |
|---|---|---|
| > Shareholder Name **Albert MACKEY** | Name _____ | |
| Address **77 Melrose Avenue Wimbledon Park London SW19 8BY** | Address _____ _____ _____ UK Postcode _ _ _ _ _ _ | Shares transferred by **Albert MACKEY** |
| Shares held Class **Ordinary** Number **72** | Shares held Class _____ Number **30,000** _____ | Class Number Date of transfer ___ ___ __/__/____ ___ ___ __/__/____ |
| > Shareholder Name **Jonathan Hamish PALMER** | Name _____ | |
| Address **17 Castle Road Isleworth Middlesex TW7 6QR** | Address _____ _____ _____ UK Postcode _ _ _ _ _ _ | Shares transferred by **Jonathan Hamish PALMER** |
| Shares held Class **Ordinary** Number **44** | Shares held Class _____ Number **5833** _____ | Class Number Date of transfer ___ ___ __/__/____ ___ ___ __/__/____ |
| > Shareholder Name **Sean Jeremiah Allen SCULLY** | Name _____ | |
| Address **29 Ruston Mews London W11 1RB** | Address _____ _____ _____ UK Postcode _ _ _ _ _ _ | Shares transferred by **Sean Jeremiah Allen SCULLY** |
| Shares held Class **Ordinary** Number **72** | Shares held Class _____ Number **30000** _____ | Class Number Date of transfer ___ ___ __/__/____ ___ ___ __/__/____ |

5

CI 002973
CONFIDENTIAL

Company Number - 3556809    Section 4: Details of Shareholders (continued)

| Current details | Amended details | Shares transferred |
|---|---|---|

> **Shareholder**
**Name**
  SHEFFIELD INVESTMENTS
TRADING LTD

Name
_____
_____

**Address**
East India
Chambers Road Town Tortola
Bvi
British Virgin Islands

Address
_____
_____
_____
_____

UK Postcode  _ _ _ _  _ _ _

**Shares transferred by**
  SHEFFIELD INVESTMENTS
TRADING LTD

**Shares held**
*Class*              *Number*
Ordinary              -67-

**Shares held**
*Class*                *Number*
_____  22167

*Class*    *Number*  Date of transfer
_____  ____  _ _ /_ _ /_ _ _ _
_____  ____  _ _ /_ _ /_ _ _ _

6

CI 002974
CONFIDENTIAL

Company Number - 3556809

## Section 5: Details of Other Shareholders

> Please fill in details of any persons or corporate bodies who are shareholders of the company at the date of this return, but whose details are not printed in Section 4.

> Also, provide the details of any persons who became but have ceased to be shareholders of the company since the date of the last annual return.

> For jointly held shares please list those joint shareholders consecutively on the form. If a joint shareholder also holds shares in their own right, list that holding separately.

> Please copy this page if there is not enough space to enter all the company's other shareholders.

| Shareholders details | Class and number of shares or amount of stock held | Class and number of shares or amount of stock transferred (if appropriate) | Date of registration of transfer (if appropriate) |
|---|---|---|---|
| Name PEREGRINE SYSTEMS INC<br>Address 3611 VALLEY CENTRE DRIVE SAN DIEGO CALIFORNIA 92130<br>UK Postcode USA _ _ _ | ORDINARY 6833 | | |
| Name M MILNER & J. BANNISTER<br>Address AS TRUSTEES OF C18ESOP GLOBE HOUSE 1 CHERTSEY ROAD ST MARGARETS, TWICKENHAM, MIDDLESEX<br>UK Postcode TW1 1LB _ | | 12.000 | |
| Name<br>Address<br>UK Postcode _ _ _ _ _ _ _ | | | |
| Name<br>Address<br>UK Postcode _ _ _ _ _ _ _ | | | |

7

CI 002975
CONFIDENTIAL

Company Number - 3556809



*Companies House*
— *for the record* —

# 363s Annual Return Declaration

> When you have checked all the sections of this form, please complete this page and sign the declaration below.

> If you want to change the made up date of this annual return, please complete 2 below.

## 1. Declaration

☐ I confirm that the details in this annual return are correct as at the made-up-date (shown at 2 below). I enclose the filing fee of £15.

Signature _____
(Director / Secretary)

Date JL , O6 , 2OO1

*This date must not be earlier than the return date at 2 below*

**What to do now**
*Complete this page then send the whole of the Annual Return and the declaration to the address shown at 4 below.*

## 2. Date of this return

☐ This AR is made up to **1/5/2001**

If you are making this return up to an earlier date, please give the date here

└ └ / └ └ / └ └ └ └

*Note: The form must be delivered to CH within 28 days of this date*

## 3. Date of next return

☐ If you wish to change your next return to a date earlier than **1st May 2002** please give the new date here:

└ └ / └ └ / └ └ └ └

## 4. Where to send this form

☐ Please return this form to:
Registrar of Companies
Companies House          OR
Crown Way
Cardiff CF14 3UZ

For members of the Hays Document Exchange service
DX 33050 Cardiff

**Have you enclosed the filing fee with the company number written on the reverse of the cheque?**

Cheque ☐   Postal Order ☐   Cheque / Postal Order Number _____

*(Please complete as appropriate)*

## Contact Address

Please give the name and address of the person who should be contacted if there are any queries about this form.

Contact Name _____

Telephone number *inc code*
└ └ └ └  └ └ └ └ └ └

Address _____

DX number *if applicable*
└ └ └ └ └

_____

DX exchange _____

Postcode └ └ └ └  └ └ └

8

CI 002976
CONFIDENTIAL

# Exhibit B

## CORPORATE TO CORPORATE ASSIGNMENT

WHEREAS, Peregrine Connectivity, Inc. (formerly Harbinger Corporation), a Georgia corporation, having its principal place of business situated at 3611 Valley Center Drive, San Diego, California 92130 (hereinafter termed "Assignor"), owns the entire right, title, and interest in the inventions described herein below (hereinafter "Said Inventions,") entitled:

### METHOD AND SYSTEM FOR PROVIDING SECURE EDI OVER AN OPEN NETWORK

___X___ for which a United States Patent was issued on September 22, 1998, as Patent No. 5,812,669

and including but not limited to the following foreign patents and published applications:

| Patent/Pub. App. # | Issued/Published | Filed | Country |
|---|---|---|---|
| NL1003644C | January 11, 2000 | July 19, 1996 | Netherlands |
| JP9162860A2 | June 20, 1997 | July 19, 1996 | Japan |
| IT1283473B1 | April 21, 1998 | July 19, 1996 | Italy |
| GB2303525A | February 19, 1997 | July 16, 1996 | Great Britain |
| FR2737067A1 | January 24, 1997 | July 19, 1996 | France |
| DE19629192A1 | January 23, 1997 | July 19, 1996 | Germany |
| CA2181597AA | January 20, 1997 | July 18, 1996 | Canada |
| AU6058696A1 | January 23, 1997 | July 18, 1996 | Australia |

WHEREAS, CI (Software Solutions) Limited, a company registered in England and Wales with company number 03556809, having its registered office situated at Lynton House, 7-12 Tavistock Square, London WC1H 9BQ, England (hereinafter termed "Assignee"), is desirous of acquiring the Assignor's entire right, title and interest in and to Said Inventions, and in and to any and all patent applications, patents, inventor's certificates and other forms of protection (hereinafter termed "patents") thereon granted in the United States and foreign countries.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Assignor to have been received in full from said Assignee:

1.     Said Assignor does hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to Said Inventions; (b) in and to all rights to apply for foreign patents on Said Inventions pursuant to the International Convention for the Protection of Industrial Property or otherwise; (c) in and to any and all applications filed and any and all patents granted on Said Inventions in the United States or any foreign country, including each and every application filed and each and every patent granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said applications; and (d) in and to each and every reissue or extensions of any of said patents.

2.     Said Assignor hereby covenants and agrees to cooperate with said Assignee to enable said Assignee, to enjoy to the fullest extent the right, title and interest herein conveyed in the United States and any foreign countries. Such cooperation by the Assignor shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by the parties (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any of said applications; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering Said Inventions; (d) for filing and prosecuting applications for reissuance of any said patents; (e) for interference or other priority proceedings involving Said Inventions; and (f) for legal proceedings involving Said Inventions and any applications therefor and any patents granted thereon, including without limitation reissues and

**PATENT**
REEL: 014178 FRAME: 0734

000016

reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions.

3.    The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon the Assignor, its successors, assigns and other legal representatives.

4.    Said Assignor hereby warrants and represents that the Assignor has not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

IN WITNESS WHEREOF, said Assignor has executed and delivered this instrument to said Assignee as of the date written below.

Assignor: **PEREGRINE CONNECTIVITY, INC.**

By: _____

Printed Name: __David A. Farley_____

Title:_Vice President & CFO_____

**PATENT**
~~REEL: 014178 FRAME: 0735~~

000017

# Exhibit C

## BILL OF SALE AND CONVEYANCE

BILL OF SALE AND CONVEYANCE, made, executed and delivered on September 30, 2000 (the "Effective Date"), by and among Peregrine Systems, Inc., a Delaware corporation, having its principal place of business situated at 3611 Valley Centre Drive, San Diego, California 92130 ("Peregrine"); Peregrine Connectivity, Inc., a Georgia corporation and indirect wholly owned subsidiary of Peregrine, having its principal place of business is situated at 3611 Valley Centre Drive, San Diego, California 92130 U.S.A. ("Seller"); and CI (Software Solutions) Limited, a company registered in England and Wales with company number 03556802, having its registered office situated at Lynton House, 7-12 Tavistock Square, London WC1H 9BQ, England. Peregrine and Seller are sometimes referred to individually herein as a "Selling Party" and collectively as the "Selling Parties." All capitalized terms not otherwise defined herein shall, unless the context otherwise requires, have the meaning ascribed to them in the Purchase Agreement (as defined in the recital below).

### WITNESSETH:

WHEREAS, the Buyer and each of the Selling Parties is party to the Asset Purchase Agreement of even date herewith (the "Purchase Agreement") pursuant to which each Selling Party has agreed to sell, and the Buyer has agreed to purchase, all of such Selling Party's right, title, and interest in the Acquired Assets;

WHEREAS, pursuant to the Purchase Agreement, the Buyer has agreed to assume the Assumed Liabilities;

WHEREAS, the Buyer and each of the Selling Parties now desire to carry out the intent and purpose of the Purchase Agreement by the execution and delivery to the Buyer of this instrument evidencing the sale, conveyance, assignment, transfer and delivery to the Buyer of the Acquired Assets, subject to the Assumed Liabilities;

WHEREAS, it is the intention of the Buyer and each of the Selling Parties to reflect the transfer of the title over the Acquired Assets owned by Peregrine and/or Seller, as the case may require, by the execution and delivery of the following documents at the Effective Date (unless otherwise specified in the Purchase Agreement): (i) this Bill of Sale and Conveyance by the Selling Parties to the Buyer; (ii) the Assignment and Assumption Agreement among the Selling Parties and the Buyer; (iii) the deeds, if any, relating to any of the Acquired Assets, properly endorsed; (iv) assignments of the contracts, agreements, plans, or arrangements contemplated by Section 1.2(b) of the Purchase Agreement; (v) the Assignment of Trademarks between the Seller and the Buyer; (vi) the Assignment of Copyrights between the Seller and the Buyer; (vii) the Assignment of Patents of even date herewith between the Seller and the Buyer; and (viii) such other instruments of sale, transfer, conveyance, and assignment as the Buyer may reasonably request.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each of the Selling Parties does hereby, effective from and after the Effective Date, sell, convey, transfer, assign

C:\WINDOWS\TEMP\Bill of Sale and Conveyance.DOC

**PATENT**
**REEL: 014178 FRAME: 0738**

and deliver unto the Buyer and its successors and assigns, forever, all of such Selling Party's respective rights, title and interest in, to and under the Acquired Assets, subject to the Assumed Liabilities.

TO HAVE AND TO HOLD the Acquired Assets unto the Buyer, its successors and assigns, FOREVER.

The Selling Parties hereby constitute and appoint the Buyer and its successors and assigns as their true and lawful attorneys-in-fact in connection with the transactions contemplated by this instrument, with full power of substitution, in the name and stead of the Selling Parties but on behalf of and for the benefit of the Buyer and its successors and assigns, to demand and receive any and all of the assets, properties, rights, and businesses hereby conveyed, assigned, and transferred or intended so to be, and to give receipt and release for and in respect of the same and any part thereof, and from time to time to institute and prosecute, in the name of the Selling Parties or otherwise, for the benefit of the Buyer or its successors and assigns, proceedings at law, in equity, or otherwise, which the Buyer or its successors or assigns reasonably deem proper in order to collect or reduce to possession or endorse any of such assets, properties, rights and businesses, and to do all acts and things in relation to the Acquired Assets which the Buyer or its successors or assigns reasonably deem desirable.

In the event that any provision of this Bill of Sale and Conveyance is constructed to conflict with, or be in addition to or in derogation of a provision in the Purchase Agreement, the provision in the Purchase Agreement shall be deemed to be controlling.

This instrument shall be binding upon and shall inure to the benefit of the respective parties and their successors and assigns.

This Bill of Sale and Conveyance shall be construed and enforced in accordance with the laws of the State of California, U.S.A., regardless of the laws that might otherwise govern under applicable principles of conflicts laws thereof.

This Bill of Sale and Conveyance may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

*[Remainder of Page Intentionally Left Blank]*

PATENT
REEL: 014178 FRAME: 0737

000019

IN WITNESS WHEREOF, this Bill of Sale and Conveyance has been duly executed and delivered by a duly authorized representative of the Selling Parties and the Buyer on the date first above written.

"PEREGRINE"

PEREGRINE SYSTEMS, INC.

By: _X ___PC Farley_____

Name:  David A. Farley

Title:  Senior Vice President & CFO


"SELLER"

PEREGRINE CONNECTIVITY, INC.

By: _A P O Farley_____

Name:  David A. Farley

Title:  Vice President & CFO


"BUYER"

CI (Software Solutions) LIMITED

By: _____

Name: _____

Title: _____


C:\WINDOWS\TEMP\Bill of Sale and Conveyance.DOC (4860)

PATENT

# Exhibit D

**From:**   Matt Lechowicz [IMCEAEX-
      _O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com]
**Sent:**   Tuesday, September 03, 2002 3:16 PM
**To:**   pronet@btinternet.com
**Cc:**   Cheryl Lapoint
**Subject:** T 5

Hi Mark,
Could you please forward this on the liquidators in the UK.

Classified Information Inc. would like to make an offer of 10,000 pounds for the intellectual property rights of T 5.  We would like to make our first payment of $5,000 U.S. dollars on the 15th of September 2002 and the remainder to be paid over two payments on October 15th and November 15th 2002.  Please contact me immediately to arrange a wire transfer for the funds.

Thank you,


Matt Lechowicz
President
Classified Information Inc.

CI 000870

# Exhibit E

**From:**   Matt Lechowicz [IMCEAEX-
_O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com]
**Sent:**   Thursday, September 12, 2002 12:01 PM
**To:**   Cheryl Lapoint
**Subject:** FW: C I Solutions Limited - In Liquidaiton

More liquidation info

-----Original Message-----
From: Lindsey.Nicholson@mazars.co.uk
To: Matt Lechowicz
Cc: Mark Webb; Martin.Pickard@mazars.co.uk
Sent: 9/11/02 9:41 AM
Subject: C I Solutions Limited - In Liquidaiton

Mark has forwarded to me your e-mail of 3 September in connection with
the purchase of the intellectual property rights to T5.

I can confirm that, subject to the terms and conditions detailed below,
I am happy to accept of your offer of £10,000 payable in three
instalments as detailed in your letter.  I will sent you a e-mail
tomorrow confirming my bank account details, in the meantime, for
invoicing purposes perhaps you could let me have a business address and
fax number.

Please note that the Intellectual Property is sold subject to the
following conditions:

1.    All goods are sold without any warranty whatsoever

2.    The Liquidator only sells those goods to which he has title

3.    All goods remain the property of the liquidator until paid for
in full with cleared funds.

Should you have any queries concerning the above please do not hesitate
to contact me either my e-mail or by telephone on 01582 700723.

Kind regards

Lindsey Nicholson

CI 000872

# Exhibit F

**C I Solutions Limited -- In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America

Invoice No:CRI/02

1 October 2002

To Sale of

£

Intellectual Property to the product known
as T5.

10,000.00

Notes

1.  All goods sold without any warranty whatsoever.
2.  Liquidator only sell those goods to which he has title.
3.  All goods remain the property of the Liquidator until paid for
    in full by cleared funds.

Registered Address:  1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

CI 000876

# Exhibit G

 MAZARS

The Directors
Classified Information Inc
810 Los Vallecitos Blvd
Suite 211
San Marcos
CA 92069

Direct line    01582 700722

Email          Martin.pickard@mazars.co.uk

10 April 2003

Dear Sirs

**CI Solutions Limited – in Liquidation**

I confirm that, in so far as CI Solutions Ltd right and title, the name 'Templar', all source code relating to the Templar product, intellectual property rights, Patent and associated trademarks, these were transferred to Classified Information Inc in respect of the consideration agreed and paid.

Yours faithfully

**Martin Pickard**
**Creditors Voluntary Liquidator**

**RECORDED: 12/11/2003**

**PATENT**
**REEL: 014186 FRAME: 0650**

000010

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INOVIS USA, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 07-459-GMS |
| | ) | |
| CLASSIFIED INFORMATION, INC., | ) | |
| Defendant. | ) | |

<u>**AFFIDAVIT OF MATTHEW J. LECHOWICZ**</u>

I, **MATTHEW J. LECHOWICZ**, upon my oath, make this affidavit and state the following:

1. My name is Matthew J. Lechowicz.  I am over the age of twenty-one (21) years, am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this affidavit, and each of the facts and statements is true and correct.

2. I was the President of Classified Information, Inc. ("Classified"), a Delaware corporation from its inception until  May 18, 2005.  Currently, I am Classified's Director of Sales and Operations.

3. On or about June 15, 2002, I became aware that Classified (Software Solutions), Limited ("CSS") was being liquidated in the United Kingdom.

4. On or about September 3, 2002 I sent an e-mail to Mr. Mark Webb, a director of CSS in the UK, asking him to forward to the UK liquidators an offer to purchase certain assets of CSS.  More specifically, I requested that Mr. Webb forward an offer to purchase the intellectual property rights associated with CSS's T5 product.  A true and correct copy of the e-mail I sent to Mr. Webb is attached hereto as Exhibit A.

5.  At the time I sent the offer to the UK liquidators, I understood the term "T5" to refer to version 5 of CSS's Templar® software product. I further understood and intended my September 3, 2002 offer to include U.S. Patent No. 5,812,669 among the intellectual property rights described in my email.

6.  On September 11, 2002, I received an e-mail from Lindsey Nicholson of the Mazars firm accepting my September 3, 2002 offer to purchase the intellectual property rights of T5. Ms. Nicholson and Mr. Martin Pickard (both of the firm Mazars) were serving as the UK liquidators of CSS's assets. Both Mr. Pickard and Mr. Webb were copied on this e-mail. A true and correct copy of the September 11, 2002 e-mail from Ms. Nicholson is attached hereto as Exhibit B.

7.  On October 2, 2002, Ms. Nicholson sent Classified an invoice memorializing the agreed terms related to the purchase of the T5 assets. This invoice describes that the "Intellectual Property to the product known as T5" was sold to Classified Information, Inc. for the sum of £10,000. A true and correct copy of this invoice is attached hereto as Exhibit C.

8.  In accordance with the payment terms set forth, in my September 3, 2002 e-mail and as confirmed in Ms. Nicholson's September 11, 2002 e-mail, I directed Cheryl Lapoint, a Classified employee, to make three installment payments to the Mazars firm via wire transfer:

    1.  September 17, 2002      $5,000
    2.  October 15, 2002        $5,000
    3.  November 11, 2002       $5,909.

    Ms. Lapoint recorded the details of these payments as shown in the attached Exhibits D, E and F.

9. After making the last installment payment on November 11, 2002, I attempted to contact Mr. Pickard and Ms. Nicholson to obtain a final bill of sale for the T5 intellectual property assets. After many unsuccessful attempts to contact the liquidators, I contacted Mr. Webb and Gary McDonald (another CSS director) to solicit their help in obtaining a final bill of sale from the liquidators. Attached hereto as Exhibits G and H are true and correct copies of my January, 2003 emails to Mr. Webb and Mr. McDonald.

10. On or about March 10, 2003, I received a letter from Mr. Pickard confirming that the CSS's T5 assets were transferred to Classified as set forth in the invoice provided to Classified on October 2, 2002. Mr. Pickard's letter specifically described the intellectual property rights that were transferred as including the Patent and associated trademarks of the Templar® product. A true and correct copy of Mr. Pickard's letter is attached hereto as Exhibit I.

11. From my initial September 3, 2002 offer to buy the intellectual property rights associated with T5, including U.S. Patent No. 5,812,669, until Ms. Nicholson's acceptance and agreement to sell, transfer and assign those rights previously held by CSS to Classified on September 11, 2002, I confirm that all parties to the transaction intended and understood the intellectual property rights associated with T5 did in fact include U.S. Patent No. 5,812,669. Upon the completion of the payment schedule agreed to between the parties, those assets, including U.S. Patent No. 5,812,669 became the sole property of Classified.

**FURTHER, AFFIANT SAITH NOT.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 2, 2008.

**See Attached California
All-Purpose Acknowledgment**

MATTHEW J. LECHOWICZ



# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

```
HTA
581280
California
COUNTY
May 22, 2009
ES11
```

State of California

County of ___San Diego___

On _2 April 2008_ before me, ___B. R. Mehta, Notary public___
<span style="font-size:small">(Here insert name and title of the officer)</span>

personally appeared ___Matthew Joseph Lechowicz___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

___B. R. Mehta___
Signature of Notary Public

```
B. R. MEHTA
COMM. #1581280
Notary Public-California
SAN DIEGO COUNTY
My Comm. Exp. May 22, 2009
ES11
```
(Notary Seal)

---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

**DESCRIPTION OF THE ATTACHED DOCUMENT**

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional information)

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they; is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
    - Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
    - Indicate title or type of attached document, number of pages and date.
    - Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary)
- Securely attach this document to the signed document

**CAPACITY CLAIMED BY THE SIGNER**

☐ Individual (s)
☐ Corporate Officer
     _____
      (Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

# Exhibit A

From:    Matt Lechowicz [IMCEAEX-
         _O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com]
Sent:    Tuesday, September 03, 2002 3:16 PM
To:      pronet@btinternet.com
Cc:      Cheryl Lapoint
Subject: T 5

Hi Mark,
Could you please forward this on the liquidators in the UK.

Classified Information Inc. would like to make an offer of 10,000 pounds for the intellectual property rights of T 5.  We would like to
make our first payment of $5,000 U.S. dollars on the 15th of September 2002 and the remainder to be paid over two payments on
October 15th and November 15th 2002.  Please contact me immediately to arrange a wire transfer for the funds.

Thank you,


Matt Lechowicz
President
Classified Information Inc.

CI 000870

# Exhibit B

**From:** Matt Lechowicz [IMCEAEX-
_O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com]
**Sent:** Thursday, September 12, 2002 12:01 PM
**To:** Cheryl Lepoint
**Subject:** FW: C I Solutions Limited - In Liquidaiton

More liquidation info

-----Original Message-----
From: Lindsey.Nicholson@mazars.co.uk
To: Matt Lechowicz
Cc: Mark Webb; Martin.Pickard@mazars.co.uk
Sent: 9/11/02 9:41 AM
Subject: C I Solutions Limited - In Liquidaiton


Mark has forwarded to me your e-mail of 3 September in connection with
the purchase of the intellectual property rights to T5.

I can confirm that, subject to the terms and conditions detailed below,
I am happy to accept of your offer of £10,000 payable in three
instalments as detailed in your letter. I will sent you a e-mail
tomorrow confirming my bank account details, in the meantime, for
invoicing purposes perhaps you could let me have a business address and
fax number.

Please note that the Intellectual Property is sold subject to the
following conditions:

1.      All goods are sold without any warranty whatsoever

2.      The Liquidator only sells those goods to which he has title

3.      All goods remain the property of the liquidator until paid for
in full with cleared funds.

Should you have any queries concerning the above please do not hesitate
to contact me either my e-mail or by telephone on 01582 700723.

Kind regards

Lindsey Nicholson

CI 000872

# Exhibit C

**C I Solutions Limited – In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America

Invoice No:CRI/02

1 October 2002

| To Sale of | £ |
| --- | --- |
| Intellectual Property to the product known as T5. | 10,000.00 |

Notes

1. All goods sold without any warranty whatsoever.
2. Liquidator only sell those goods to which he has title.
3. All goods remain the property of the Liquidator until paid for in full by cleared funds.

Registered Address: 1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

CI 000876

# Exhibit D

**C I Solutions Limited – In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America                                    Invoice No:CRI/02

1 October 2002

To Sale of                                                                £

Intellectual Property to the product known                          10,000.00
as TS.

Notes

1.  All goods sold without any warranty whatsoever.

2.  Liquidator only sell those goods to which he has title.

3.  All goods remain the property of the Liquidator until paid for
    in full by cleared funds.

**PAID**
9/17/02    1st Installment    wire
           $5000              transfer
Cheryl Dupont    See Bank Rec
                 Sept

Registered Address:  1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

000011

# Exhibit E

**C I Solutions Limited – In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America                                    Invoice No:CRI/02

1 October 2002


To Sale of                                                                £

Intellectual Property to the product known                          10,000.00
as TS.


Notes

1.  All goods sold without any warranty whatsoever.

2.  Liquidator only sell those goods to which he has title.

3.  All goods remain the property of the Liquidator until paid for
    in full by cleared funds.


**PAID**
10/15/02     2nd Installment
             $5,000          wire
                             transfer
Cheryl Japoint              See Bank Rec
                                 Oct


Registered Address:  1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

000012

# Exhibit F

**C I Solutions Limited -- In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America

Invoice No:CRI/02

1 October 2002

To Sale of                                                                          £

Intellectual Property to the product known                              10,000.00
as TS.

Notes

1. All goods sold without any warranty whatsoever.
2. Liquidator only sell those goods to which he has title.
3. All goods remain the property of the Liquidator until paid for
   in full by cleared funds.

**PAID**
11/26/02    3rd Installment
            $5,909.44        wire
                             transfer
Cheryl Dupont        See Bank Rec
                     November

Registered Address: 1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

000013

# Exhibit G

**From:**      Matt Lechowicz [IMCEAEX-
                _O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com]
**Sent:**      Monday, January 06, 2003 3:56 PM
**To:**        Mark Webb
**Cc:**        Cheryl Lapoint
**Subject:**   Liquidator
**Importance:** High

Mark,
We are having a very hard time getting a hold of the liquidator to get a final bill of sale of T5 and anything else that they owe us.  Could you please help.  We have paid them and they have ignored our requests.

Thank you,
Matt & Cheryl

CONFIDENTIAL

CI 000888

# Exhibit H

| | |
|---|---|
| **From:** | Matt Lechowicz [IMCEAEX-_O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com] |
| **Sent:** | Tuesday, January 07, 2003 3:38 PM |
| **To:** | Gary McDonald |
| **Cc:** | Cheryl Lapoint |
| **Subject:** | RE: CI Proposed Expenditures |
| **Importance:** | High |

Hi Gary,
We are having a hard time getting a hold of the liquidators over in the UK. We gave them 10K pounds for t5 and they never gave us a bill of sale. We have requested this many times with no response, can you help?

Thank you,
Cheryl & Matt

-----Original Message-----
From: Gary McDonald
To: Matt Lechowicz
Sent: 1/7/03 9:27 AM
Subject: RE: CI Proposed Expenditures

Matt,
just to let you know Albert is not going to have time to see Mark this week,
and on sunday he is off to the Carribean for 2 weeks. He has been really busy, this is the only reason for the meeting not taking place.
just keeping you informed
Gary

-----Original Message-----
From: Matt Lechowicz [mailto:matt.lechowicz@templarsoftware.com]
Sent: 20 December 2002 17:53
To: 'gary.mcdonald@fntele.com'
Cc: Cheryl Lapoint
Subject: CI Proposed Expenditures

Gary,
Here is the list of needs that we discussed last Friday at the airport.
These are all of the expenses you had put an "X" next to, indicating an immediate need. If you would like to go over this with Cheryl and myself,
please let me know!
Thank you,
Matt

CONFIDENTIAL

CI 000889

# Exhibit I

 M A Z A R S

The Directors
Classified Information Inc
810 Los Vallecitos Blvd
Suite 211
San Marcos
CA 92069

Direct line    01582 700722
Email          Martin.pickard@mazars.co.uk

10 April 2003

Dear Sirs

CI Solutions Limited – in Liquidation

I confirm that, in so far as CI Solutions Ltd right and title, the name "Templar", all source code relating to the Templar product, intellectual property rights, Patent and associated trademarks, these were transferred to Classified Information Inc in respect of the consideration agreed and paid.

Yours faithfully

Martin Pickard
Creditors Voluntary Liquidator

RECORDED: 12/11/2003

PATENT
REEL: 014186 FRAME: 0650

000010

# Exhibit 3

**From:** Matt Lechowicz [IMCEAEX-
_O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com]
**Sent:** Tuesday, September 03, 2002 3:16 PM
**To:** pronet@btinternet.com
**Cc:** Cheryl Lapoint
**Subject:** T 5

Hi Mark,
Could you please forward this on the liquidators in the UK.

Classified Information Inc. would like to make an offer of 10,000 pounds for the intellectual property rights of T 5. We would like to make our first payment of $5,000 U.S. dollars on the 15th of September 2002 and the remainder to be paid over two payments on October 15th and November 15th 2002. Please contact me immediately to arrange a wire transfer for the funds.

Thank you,

Matt Lechowicz
President
Classified Information Inc.

CI 000870

# Exhibit 4

| From: | Matt Lechowicz [IMCEAEX-_O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com] |
|---|---|
| Sent: | Thursday, September 12, 2002 12:01 PM |
| To: | Cheryl Lapoint |
| Subject: | FW: C I Solutions Limited - In Liquidaiton |

More liquidation info

-----Original Message-----
From: Lindsey.Nicholson@mazars.co.uk
To: Matt Lechowicz
Cc: Mark Webb; Martin.Pickard@mazars.co.uk
Sent: 9/11/02 9:41 AM
Subject: C I Solutions Limited - In Liquidaiton

Mark has forwarded to me your e-mail of 3 September in connection with the purchase of the intellectual property rights to T5.

I can confirm that, subject to the terms and conditions detailed below, I am happy to accept of your offer of £10,000 payable in three instalments as detailed in your letter. I will sent you a e-mail tomorrow confirming my bank account details, in the meantime, for invoicing purposes perhaps you could let me have a business address and fax number.

Please note that the Intellectual Property is sold subject to the following conditions:

1.    All goods are sold without any warranty whatsoever

2.    The Liquidator only sells those goods to which he has title

3.    All goods remain the property of the liquidator until paid for in full with cleared funds.

Should you have any queries concerning the above please do not hesitate to contact me either my e-mail or by telephone on 01582 700723.

Kind regards

Lindsey Nicholson

CI 000872

# Exhibit 5

**C I Solutions Limited – In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America

Invoice No:CRI/02

1 October 2002

To Sale of                                                                £

Intellectual Property to the product known                    10,000.00
as T5.

Notes

1. All goods sold without any warranty whatsoever.

2. Liquidator only sell those goods to which he has title.

3. All goods remain the property of the Liquidator until paid for
   in full by cleared funds.

Registered Address:  1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

CI 000876

# Exhibit 6

**C I Solutions Limited – In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America                                    Invoice No:CRI/02

1 October 2002

| To Sale of | £ |
|---|---|
| Intellectual Property to the product known as T5. | 10,000.00 |

Notes

1.  All goods sold without any warranty whatsoever.
2.  Liquidator only sell those goods to which he has title.
3.  All goods remain the property of the Liquidator until paid for in full by cleared funds.

**PAID**
9/17/02

1st Installment $5000 wire transfer

Cheryl Japoint    See Bank Rec Sept

Registered Address:  1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

000011

# Exhibit 7

**C I Solutions Limited – In Liquidation**

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America                                      Invoice No:CRI/02

1 October 2002

To Sale of                                                                £

Intellectual Property to the product known                      10,000.00
as TS.

Notes

1. All goods sold without any warranty whatsoever.
2. Liquidator only sell those goods to which he has title.
3. All goods remain the property of the Liquidator until paid for
   in full by cleared funds.

**PAID** 10/15/02   2nd Installment
                    $5,000              wire
                                        transfer
Cheryl Japont                    See Bank Rec
                                    Oct

Registered Address:  1 Telford Way, Luton, Bedfordshire, LUI 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

000012

# Exhibit 8

C I Solutions Limited – In Liquidation

Classified Information Inc.
810 Los Vallecitos Boulevard
Suite 211
San Marcos
CA92069
United States of America

Invoice No:CRI/02

1 October 2002

| | £ |
|---|---|
| To Sale of | |
| Intellectual Property to the product known as TS. | 10,000.00 |

Notes

1. All goods sold without any warranty whatsoever.
2. Liquidator only sell those goods to which he has title.
3. All goods remain the property of the Liquidator until paid for in full by cleared funds.

**PAID**
11/26/02    3rd Installment
$5,909.44    wire
transfer
*Cheryl Japont*    See Bank Rec
November

Registered Address:  1 Telford Way, Luton, Bedfordshire, LU1 1HT
Registered in England and Wales. Company No: 3556809  VAT no: 729 1205 47

000013

# Exhibit 9

| | |
|---|---|
| **From:** | Matt Lechowicz [IMCEAEX-_O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com] |
| **Sent:** | Monday, January 06, 2003 3:56 PM |
| **To:** | Mark Webb |
| **Cc:** | Cheryl Lapoint |
| **Subject:** | Liquidator |
| **Importance:** | High |

Mark,
We are having a very hard time getting a hold of the liquidator to get a final bill of sale of T5 and anything else that they owe us. Could you please help. We have paid them and they have ignored our requests.

Thank you,
Matt & Cheryl

CONFIDENTIAL

CI 000888

# Exhibit 10

| | |
|---|---|
| **From:** | Matt Lechowicz [IMCEAEX-_O=CIUS_OU=CIUSVR1_CN=RECIPIENTS_CN=MATT+2ELECHOWICZ@templarsoftware.com] |
| **Sent:** | Tuesday, January 07, 2003 3:38 PM |
| **To:** | Gary McDonald |
| **Cc:** | Cheryl Lapoint |
| **Subject:** | RE: CI Proposed Expenditures |
| **Importance:** | High |

Hi Gary,
We are having a hard time getting a hold of the liquidators over in the UK. We gave them 10K pounds for t5 and they never gave us a bill of sale. We have requested this many times with no response, can you help?

Thank you,
Cheryl & Matt

-----Original Message-----
From: Gary McDonald
To: Matt Lechowicz
Sent: 1/7/03 9:27 AM
Subject: RE: CI Proposed Expenditures

Matt,
just to let you know Albert is not going to have time to see Mark this week,
and on sunday he is off to the Carribean for 2 weeks. He has been really busy, this is the only reason for the meeting not taking place.
just keeping you informed
Gary

-----Original Message-----
From: Matt Lechowicz [mailto:matt.lechowicz@templarsoftware.com]
Sent: 20 December 2002 17:53
To: 'gary.mcdonald@fntele.com'
Cc: Cheryl Lapoint
Subject: CI Proposed Expenditures


Gary,
Here is the list of needs that we discussed last Friday at the airport.
These are all of the expenses you had put an "X" next to, indicating an immediate need. If you would like to go over this with Cheryl and myself,
please let me know!
Thank you,
Matt

CONFIDENTIAL

CI 000889

# Exhibit 11

 **MAZARS**

The Directors
Classified Information Inc
810 Los Vallecitos Blvd
Suite 211
San Marcos
CA 92069

Direct line    01582 702722
Email    Martin.pickard@mazars.co.uk

10 April 2003

Dear Sirs

**CI Solutions Limited – in Liquidation**

I confirm that, in so far as CI Solutions Ltd right and title, the name "Templar", all source code relating to the Templar product, intellectual property rights, Patent and associated trademarks, these were transferred to Classified Information Inc in respect of the consideration agreed and paid.

Yours faithfully

Martin Pickard
Creditors Voluntary Liquidator

**RECORDED: 12/11/2003**

**PATENT
REEL: 014186 FRAME: 0650**

000010

# Exhibit 12

08 503984

Docket No. 20014/64129

### ASSIGNMENT

In consideration of the sum of One Dollar ($1.00), and of other good and valuable consideration paid to the undersigned by the Assignee, PHEMENOS CORP., a corporation organized under the laws of the State of Delaware, having an office at 1000 Burnett Avenue, 2nd Floor, Concord, California 94520, the receipt whereof is hereby acknowledged, the undersigned by these presents hereby sells, assigns, transfers, and sets over unto the said Assignee the entire right, title, and interest in and to the invention or improvement in METHOD AND SYSTEM FOR PROVIDING SECURE EDI OVER AN OPEN NETWORK, said invention being fully described and/or claimed in the application for Letters Patent of the United States of America, executed concurrently herewith, in and for the United States and all foreign countries, including all treaty and convention rights and the right to sue for present, past, and future infringement, the same to be held and enjoyed by said Assignee, its successors, assigns, or other legal representatives, to the full ends of the terms for which all Letters Patents therefor may be granted, as fully and entirely as the same would have been held and enjoyed by the undersigned if this assignment and sale had not been made.

And said Assignee is hereby authorized to make application for and to receive Letters Patent for said invention in any of said countries at its election.

And by this covenant the undersigned will execute or procure any further necessary assurance of title to said invention and Letters Patent; and at any time, upon the request and at the expense of said Assignee, will execute and deliver any and all papers that may be necessary or desirable to perfect the title to said invention or any Letters Patents which may be granted therefor in said Assignee, its successors, assigns or other legal representatives, and, upon the request and at the expense of said Assignee, will execute any additional or divisional applications for patents for said invention, or any part or parts thereof, and for the reissue of any Letters Patents to be granted therefor, and will make all rightful oaths and do all lawful acts requisite for procuring the same or for aiding therein, without further compensation, but at the expense of said Assignee, its successors, assigns, or other legal representatives.

And the Commissioner of Patents and Trademarks is hereby authorized and requested to issue any and all Letters Patent of the United States for said invention to said Assignee.

PATENT
REEL: 7591 FRAME: 0453

000036

INVENTOR NO. 1

Dated: 7/11/95

Name: Lew Jenkins

819 Slater Avenue
Pleasant Hill, California 94523
Address

State of California        )
                           )  ss    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
County of Contra Costa     )

Before me this 11th day of July    1995, personally
appeared Lew Jenkins to me personally known to be the person
described in and who executed the above instrument, and
acknowledged to me that he/she executed the same of his own free
will for the purposes therein set forth.

Notary Public

AFFIX SEAL

JANICE E. SIERRAS
COMM. #954199
Notary Public-California
CONTRA COSTA COUNTY
My comm. expires JAN 26,1996

INVENTOR NO. 2

Dated: 7/11/95

Name: Emmanuel K. Pasetes, Jr.

55 Woodranch Circle
Danville, California 94525
Address

State of California        )
                           )  ss    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
County of Contra Costa     )

Before me this 11th day of July    1995, personally
appeared Emmanuel K. Pasetes, Jr. to me personally known to be
the person described in and who executed the above instrument,
and acknowledged to me that he/she executed the same of his own
free will for the purposes therein set forth.

Notary Public

AFFIX SEAL

JANICE E. SIERRAS
COMM. #954199
Notary Public-California
CONTRA COSTA COUNTY
My comm. expires JAN 26,1996

PATENT
RECORDED: 07/19/1995                REEL 7591 FRAME 0454

000037

# Exhibit 13

Docket No. C20014/064129

## ASSIGNMENT

In consideration of good and valuable consideration paid to the undersigned Assignor, a corporation organized under the laws of the state of California, having an office at 1000 Burnett Avenue, 2nd Floor, Concord, California 94520. by the Assignee, HARBINGER, a corporation organized under the laws of the State of Georgia, having an office at 1055 Lenox Park Boulevard, Atlanta, Georgia 30319. the receipt whereof is hereby acknowledged, the undersigned Assignor by these presents hereby sells, assigns, transfers, and sets over unto the said Assignee the entire right, title, and interest in and to the invention or improvement in **METHOD AND SYSTEM FOR PROVIDING SECURE EDI OVER AN OPEN NETWORK**, said invention being fully described and/or claimed in the application for Letters Patent of the United States of America, Serial No. 08/503,984, filed July 19, 1995, in and for the United States, and the entire right, title and interest in and to the [application/patent], including all treaty and convention rights and the right to sue for present, past, and future infringement, the same to be held and enjoyed by said Assignee, its successors, assigns, or other legal representatives, to the full ends of the terms for which all Letters Patents therefor may be granted, as fully and entirely as the same would have been held and enjoyed by the undersigned if this assignment and sale had not been made.

And by this covenant the undersigned will execute or procure any further necessary assurance of title to said invention and Letters Patent; and at any time, upon the request and at the expense of said Assignee, will execute and deliver any and all papers that may be necessary or desirable to perfect the title to said invention or any Letters Patents which may be granted therefor in said Assignee, its successors, assigns or other legal representatives, and, upon the request and at the expense of said Assignee, will execute any additional or divisional applications for patents for said invention, or any part or parts thereof, and for the reissue of any Letters Patents to be granted therefor, and will make all rightful oaths and do all lawful acts requisite for procuring the same or for aiding therein, without further compensation, but at the expense of said Assignee, its successors, assigns, or other legal representatives.

GYO1DXCS/11021301

**PATENT**
**REEL: 9355 FRAME: 0687**

000033

And the Commissioner of Patents and Trademarks is hereby authorized and requested to issue any and all Letters Patent of the United States for said invention to said Assignee.

PREMENOS CORP.

By _____

Name _____

Title _____

State of _____ )

                    ) ss

County of _____ )

Before me this _____ day of _____ 1998, personally appeared _____ to me personally known to be the person described in and who executed the above instrument, and acknowledged to me that he executed the same of his own free will for the purposes therein set forth.

_____
Notary Public

Notary Public, Gwinnett County, Georgia
My Commission Expires July 4, 1998

AFFIX SEAL.

NY01DOCS 11098301                                    2

PATENT
REEL: 9355 FRAME: 0688

000034

# Exhibit 14

# Secretary of State
## Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

DOCKET NUMBER  :
CONTROL NUMBER :
EFFECTIVE DATE :
REFERENCE      :
PRINT DATE     :
FORM NUMBER    : 411

CT CORPORATION SYSTEM
LAURA CONNOR
1201 PEACHTREE STREET, N.E.
ATLANTA GA 30361

## CERTIFICATE OF MERGER AND NAME CHANGE

I, Cathy Cox, the Secretary of State of the Georgia, do hereby issue this
certificate pursuant to Title 14 of the Official Code of Georgia annotated
certifying that articles of a certificate of merger and forms has been filed
regarding the merger of the below entities, effective as of the date shown above.
Attached is a true and correct copy of the said filing.

Surviving Entity:
HARBINGER CORPORATION, A GEORGIA CORPORATION

Changing its Name to:
PEREGRINE CONNECTIVITY, INC.

Nonsurviving Entity/Entities:
SODA ACQUISITION CORPORATION, A DELAWARE CORPORATION





CATHY COX
SECRETARY OF STATE

CONFIDENTIAL

CI 000934

# CERTIFICATE OF MERGER
## MERGING
### SODA ACQUISITION CORPORATION,
### A DELAWARE CORPORATION
### INTO
### HARBINGER CORPORATION
### A GEORGIA CORPORATION

**FIRST:** The names of the merging corporations are Harbinger Corporation, a Georgia corporation ("Harbinger"), the surviving corporation, and Soda Acquisition Corporation, a Delaware corporation ("Acquisition Subsidiary"), the merged corporation (hereinafter referred to collectively as the "Constituent Corporations").

**SECOND:** Acquisition Subsidiary is a corporation organized and existing under the laws of the State of Delaware.

**THIRD:** Harbinger is a corporation organized and existing under the laws of the State of Georgia, the provisions of which permit the merger of a corporation organized and existing under the laws of Delaware into a corporation organized and existing under the laws of Georgia.

**FOURTH:** The Agreement and Plan of Merger and Reorganization dated as of April 6, 2000, among Peregrine Systems, Inc. and the Constituent Corporations (the "Plan of Merger") has been approved, adopted, certified, executed and acknowledged by each of the Constituent Corporations in accordance with the requirements of O.C.G.A. § 14-2-1107 as to the merger of Acquisition Subsidiary with and into Harbinger (the "Merger") was duly approved by the shareholders of each of the Acquisition Subsidiary and Harbinger.

**FIFTH:** The name of the surviving corporation of the merger is currently Harbinger Corporation and shall, upon completion of the Merger, be changed to "Peregrine Connectivity Inc." (which in its capacity as surviving corporation is hereinafter sometimes referred to as the "Surviving Corporation").

**SIXTH:** The executed Plan of Merger is on file at the principal place of business of the Surviving Corporation, the address of which is 1277 Lenox Park Boulevard, Atlanta, Georgia 30319.

**SEVENTH:** The executed Plan of Merger will be furnished by the Surviving Corporation, on request and without cost, to any shareholder of either Constituent Corporation.

**EIGHTH:** The Articles of Incorporation of Harbinger shall be the Articles of Incorporation of the Surviving Corporation.

**NINTH:** Pursuant to the Plan of Merger, the merger of Acquisition Subsidiary with and into Harbinger shall be effective as of 5:00 p.m., local time in Atlanta, Georgia on June 16, 2000.

**TENTH:** A request for publication of a notice of filing this Certificate of Merger and payment therefor will be made as required by O.C.G.A. § 14-2-1105.1(b).

CONFIDENTIAL                                    CI 000935

25-APR-03 10:31                                01132795708                    P.27

01-15-01   02:18pm   From-PEREGRINE LEGAL           8567945057         T-864  P.007  F-884   Case 1:07-cv-00459-GMS   Document 57-5   Filed 04/02/2008   Page 7 of 14

**IN WITNESS WHEREOF**, the Constituent Corporations have each caused this Certificate to be signed by a duly authorized officer this 16ᵗʰ day of June, 2000.

ACQUISITION SUBSIDIARY:

Attest:                                   Soda Acquisition Corporation,
                                          a Delaware corporation

By: _____              By: _____
    Eric P. Deller, Secretary                 Richard T. Nelson, President

                                          HARBINGER:

Attest:                                   Harbinger Corporation,
                                          a Georgia corporation

By: _____              By: _____
    Loren Wimpfheimer, Secretary              James M. Travers, President
                                              and Chief Executive Officer

-2-

                                                                    1524533.Doc

CONFIDENTIAL                                        CI 000936

**IN WITNESS WHEREOF**, the Constituent Corporations have each caused this Certificate to be signed by a duly authorized officer this _16th_ day of June, 2000.

ACQUISITION SUBSIDIARY:

Soda Acquisition Corporation,
a Delaware corporation

Attest:

By: _____          By: _____
Eric P. Deller, Secretary                Richard T. Nelson, President


HARBINGER:

Harbinger Corporation,
a Georgia corporation

Attest:

By: _____          By: _____
Loren Wimpfheimer, Secretary             James M. Travers, President
                                          and Chief Executive Officer

-2-

# Exhibit 15

lec 09 2003 9:02AM    HP LASERJET 3330

## CORPORATE TO CORPORATE ASSIGNMENT

WHEREAS, Peregrine Connectivity, Inc. (formerly Harbinger Corporation), a Georgia corporation, having its principal place of business situated at 3611 Valley Center Drive, San Diego, California 92130 (hereinafter termed "Assignor"), owns the entire right, title, and interest in the inventions described herein below (hereinafter "Said Inventions,") entitled:

## METHOD AND SYSTEM FOR PROVIDING SECURE EDI OVER AN OPEN NETWORK

___X___ for which a United States Patent was issued on September 22, 1998, as Patent No. 5,812,669

and including but not limited to the following foreign patents and published applications:

| Patent/Pub. App. # | Issued/Published | Filed | Country |
|---|---|---|---|
| NL1003644C | January 11, 2000 | July 19, 1996 | Netherlands |
| JP9162860A2 | June 20, 1997 | July 19, 1996 | Japan |
| IT1283473B1 | April 21, 1998 | July 19, 1996 | Italy |
| GB2303525A | February 19, 1997 | July 16, 1996 | Great Britain |
| FR2737067A1 | January 24, 1997 | July 19, 1996 | France |
| DE19629192A1 | January 23, 1997 | July 19, 1996 | Germany |
| CA2181597AA | January 20, 1997 | July 18, 1996 | Canada |
| AU6058696A1 | January 23, 1997 | July 18, 1996 | Australia |

WHEREAS, CI (Software Solutions) Limited, a company registered in England and Wales with company number 03556809, having its registered office situated at Lynton House, 7-12 Tavistock Square, London WC1H 9BQ, England (hereinafter termed "Assignee"), is desirous of acquiring the Assignor's entire right, title and interest in and to Said Inventions, and in and to any and all patent applications, patents, inventor's certificates and other forms of protection (hereinafter termed "patents") thereon granted in the United States and foreign countries.

NOW, THEREFORE, in consideration of good and valuable consideration acknowledged by said Assignor to have been received in full from said Assignee:

1.    Said Assignor does hereby sell, assign, transfer and convey unto said Assignee the entire right, title and interest (a) in and to Said Inventions; (b) in and to all rights to apply for foreign patents on Said Inventions pursuant to the International Convention for the Protection of Industrial Property or otherwise; (c) in and to any and all applications filed and any and all patents granted on Said Inventions in the United States or any foreign country, including each and every application filed and each and every patent granted on any application which is a divisional, substitution, continuation, or continuation-in-part of any of said applications; and (d) in and to each and every reissue or extensions of any of said patents.

2.    Said Assignor hereby covenants and agrees to cooperate with said Assignee to enable said Assignee, to enjoy to the fullest extent the right, title and interest herein conveyed in the United States and any foreign countries. Such cooperation by the Assignor shall include prompt production of pertinent facts and documents, giving of testimony, execution of petitions, oaths, specifications, declarations or other papers, and other assistance all to the extent deemed necessary or desirable by the parties (a) for perfecting in said Assignee the right, title and interest herein conveyed; (b) for prosecuting any of said applications; (c) for filing and prosecuting substitute, divisional, continuing or additional applications covering Said Inventions; (d) for filing and prosecuting applications for reissuance of any said patents; (e) for interference or other priority proceedings involving Said Inventions; and (f) for legal proceedings involving Said Inventions and any applications therefor and any patents granted thereon, including without limitation reissues and

F:\DUNN\...\HARPERGRINE TRAIN AP ASSIGNMENT 1.DOC        -1-

**PATENT**
**REEL: 014178 FRAME: 0734**

000016

reexaminations, opposition proceedings, cancellation proceedings, priority contests, public use proceedings, infringement actions and court actions.

3.    The terms and covenants of this assignment shall inure to the benefit of said Assignee, its successors, assigns and other legal representatives, and shall be binding upon the Assignor, its successors, assigns and other legal representatives.

4.    Said Assignor hereby warrants and represents that the Assignor has not entered and will not enter into any assignment, contract, or understanding in conflict herewith.

IN WITNESS WHEREOF, said Assignor has executed and delivered this instrument to said Assignee as of the date written below.

Assignor: **PEREGRINE CONNECTIVITY, INC.**

By: _____

Printed Name: __David A. Farley_____

Title: _Vice President & CFO_____

CIWR:DOWN\TEMP\PEREGRINE:TEMPLAR ASSIGNMENT.DOC    2

**PATENT**
~~REEL: 014178 FRAME: 0735~~

000017

## BILL OF SALE AND CONVEYANCE

BILL OF SALE AND CONVEYANCE, made, executed and delivered on September 30, 2000 (the "Effective Date"), by and among Peregrine Systems, Inc., a Delaware corporation, having its principal place of business situated at 3611 Valley Centre Drive, San Diego, California 92130 ("Peregrine"); Peregrine Connectivity, Inc., a Georgia corporation and indirect wholly owned subsidiary of Peregrine, having its principal place of business is situated at 3611 Valley Centre Drive, San Diego, California 92130 U.S.A. ("Seller"); and CI (Software Solutions) Limited, a company registered in England and Wales with company number 03556802, having its registered office situated at Lynton House, 7-12 Tavistock Square, London WC1H 9BQ, England. Peregrine and Seller are sometimes referred to individually herein as a "Selling Party" and collectively as the "Selling Parties." All capitalized terms not otherwise defined herein shall, unless the context otherwise requires, have the meaning ascribed to them in the Purchase Agreement (as defined in the recital below).

## WITNESSETH:

WHEREAS, the Buyer and each of the Selling Parties is party to the Asset Purchase Agreement of even date herewith (the "Purchase Agreement") pursuant to which each Selling Party has agreed to sell, and the Buyer has agreed to purchase, all of such Selling Party's right, title, and interest in the Acquired Assets;

WHEREAS, pursuant to the Purchase Agreement, the Buyer has agreed to assume the Assumed Liabilities;

WHEREAS, the Buyer and each of the Selling Parties now desire to carry out the intent and purpose of the Purchase Agreement by the execution and delivery to the Buyer of this instrument evidencing the sale, conveyance, assignment, transfer and delivery to the Buyer of the Acquired Assets, subject to the Assumed Liabilities;

WHEREAS, it is the intention of the Buyer and each of the Selling Parties to reflect the transfer over the Acquired Assets owned by Peregrine and/or Seller, as the case may require, by the execution and delivery of the following documents at the Effective Date (unless otherwise specified in the Purchase Agreement): (i) this Bill of Sale and Conveyance by the Selling Parties to the Buyer; (ii) the Assignment and Assumption Agreement among the Selling Parties and the Buyer; (iii) the deeds, if any, relating to any of the Acquired Assets, properly endorsed; (iv) assignments of the contracts, agreements, plans, or arrangements contemplated by Section 1.2(b) of the Purchase Agreement; (v) the Assignment of Trademarks between the Seller and the Buyer; (vi) the Assignment of Copyrights between the Seller and the Buyer; (vii) the Assignment of Patents of even date herewith between the Seller and the Buyer; and (viii) such other instruments of sale, transfer, conveyance, and assignment as the Buyer may reasonably request.

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each of the Selling Parties does hereby, effective from and after the Effective Date, sell, convey, transfer, assign

C:\WINDOWS\TEMP\Bill of Sale and Conveyance.DOC

PATENT
REEL: 014178 FRAME: 0736 (e)

000018

and deliver unto the Buyer and its successors and assigns, forever, all of such Selling Party's respective rights, title and interest in, to and under the Acquired Assets, subject to the Assumed Liabilities.

TO HAVE AND TO HOLD the Acquired Assets unto the Buyer, its successors and assigns, FOREVER.

The Selling Parties hereby constitute and appoint the Buyer and its successors and assigns as their true and lawful attorneys-in-fact in connection with the transactions contemplated by this instrument, with full power of substitution, in the name and stead of the Selling Parties but on behalf of and for the benefit of the Buyer and its successors and assigns, to demand and receive any and all of the assets, properties, rights, and businesses hereby conveyed, assigned, and transferred or intended so to be, and to give receipt and release for and in respect of the same and any part thereof, and from time to time to institute and prosecute, in the name of the Selling Parties or otherwise, for the benefit of the Buyer or its successors and assigns, proceedings at law, in equity, or otherwise, which the Buyer or its successors or assigns reasonably deem proper in order to collect or reduce to possession or endorse any of such assets, properties, rights and businesses, and to do all acts and things in relation to the Acquired Assets which the Buyer or its successors or assigns reasonably deem desirable.

In the event that any provision of this Bill of Sale and Conveyance is constructed to conflict with, or be in addition to or in derogation of a provision in the Purchase Agreement, the provision in the Purchase Agreement shall be deemed to be controlling.

This instrument shall be binding upon and shall inure to the benefit of the respective parties and their successors and assigns.

This Bill of Sale and Conveyance shall be construed and enforced in accordance with the laws of the State of California, U.S.A., regardless of the laws that might otherwise govern under applicable principles of conflicts laws thereof.

This Bill of Sale and Conveyance may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

*[Remainder of Page Intentionally Left Blank]*

C:\WINDOWS\TEMP\Bill of Sale and Conveyance.DOC                    -2-

**PATENT**
REEL: 014178 FRAME: 0737

000019

IN WITNESS WHEREOF, this Bill of Sale and Conveyance has been duly executed and delivered by a duly authorized representative of the Selling Parties and the Buyer on the date first above written.

"PEREGRINE"

PEREGRINE SYSTEMS, INC.

By: _____

Name:  David A. Farley

Title:  Senior Vice President & CFO

"SELLER"

PEREGRINE CONNECTIVITY, INC.

By: _____

Name:  David A. Farley

Title:  Vice President & CFO

"BUYER"

CI (Software Solutions) LIMITED

By: _____

Name: _____

Title: _____

C:\WINDOWS\TEMP\Bill of Sale and Conveyance.DOC (4864)

**PATENT**

REEL: 011570 FRAME: 0950