IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INOVIS USA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 07-459 (GMS) |
| CLASSIFIED INFORMATION, INC. and | ) |
| DISTANCE DIGITAL CO., LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF INOVIS' REPLY BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS DEFENDANT CLASSIFIED'S
<u>COUNTERCLAIM FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 302-658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Inovis USA, Inc.*

OF COUNSEL:

David J. Wolfsohn
Erich Falke
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor,
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

April 23, 2008

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF ARGUMENT ............................................................................................. 1

ARGUMENT ......................................................................................................................... 3

    I.    CLASSIFIED HAS UTTERLY FAILED TO PROVIDE ANY EVIDENCE OF AN "INSTRUMENT IN WRITING" .......................................... 3

    II.    CLASSIFIED HAS UTTERLY FAILED TO PROVE A CLEAR AND UNAMBIGUOUS INTENT ON THE PART OF MR. PICKARD TO PART WITH ALL RIGHT, TITLE, AND INTEREST TO THE 669 PATENT ............................................................... 5

        A.    The New Materials Submitted by Classified Make the Scope of any Transfer Less Clear and More Ambiguous .......................... 5

        B.    The Webb and Lechowicz Affidavits and Pickard Letter Are Inadmissible Under the Parol Evidence Rule ...................................... 12

CONCLUSION .................................................................................................................... 13

ii.

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Affymetrix, Inc. v. Illumina, Inc.*,
    446 F. Supp. 2d 292 (D. Del. 2006) ...................................................................................... 4

*Arachnid. Inc. v. Merit Indus., Inc.*,
    939 F.2d 1574 (Fed. Cir. 1991) ............................................................................................ 3

*Blackburn v. UPS, Inc.*,
    179 F.3d 81 (3d Cir. 1999) ................................................................................................. 11

*Brown v. Muhlenberg Twp.*,
    269 F.3d 205 (3d Cir. 2000) ............................................................................................... 11

*Chambers v. Doe*,
    453 F. Supp. 2d 858 (D. Del. 2006) ................................................................................... 11

*Institute for Disabilities Research & Training, Inc. v. Wal-Mart Stores, Inc.*,
    No. 05-176 (GMS), 2007 U.S. Dist. LEXIS 70932 (D. Del. Sept. 25, 2007) .................... 12

*McClaskey v. Harbison-Walker Refractories Co.*,
    138 F.2d 493 (3d Cir. 1943) ............................................................................................ 5-6

*Minerals Separation, Ltd. v. Miami Copper Co.*,
    275 F. 572 (D. Del. 1921) .......................................................................................... 1, 3, 5

*Owen v. Paramount Productions, Inc.*,
    41 F. Supp. 557 (S.D. Cal. 1941) ..................................................................................... 4-5

*Rhodes-Hochriem Mfg. Co. v. Int'l Ticket Scale Corp.*,
    57 F.2d 713 (D. Del. 1932) ....................................................................................... 1, 4-5, 8

*Universal Oil Prods. Co. v. Root Refining Co.*,
    16 F. Supp. 846 (D. Del. 1936) .................................................................................. 1, 4-5, 8

**STATUTES, RULES**

R.C.P. 12(b)(1) ......................................................................................................................... 13

## SUMMARY OF ARGUMENT

Classified admits, as it must, that for this Court to have jurisdiction over its counterclaim for patent infringement, Classified must prove that it somehow is the "sole owner of all right, title and interest in and to the '669 Patent." (D.I. 57, Classified's Br. at 5). Classified also admits that its only possible source of such "right, title and interest" would be from Martin Pickard, the liquidator for the putative seller, CI Software Solutions–In Liquidation ("Solutions In Liquidation"). To prove that Mr. Pickard assigned all "right title and interest" in the 669 Patent to Classified, Classified further admits that, under section 261 of the Patent Act, "the 'instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent.'" (D.I. 57, Classified's Br. at 10 (quoting *McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493, 499 (3d Cir. 1943))). As the court stated in *Minerals Separation, Ltd. v. Miami Copper Co.*, 275 F. 572, 575 (D. Del. 1921), while "no particular form of words is essential to effect an assignment of a patent . . . , yet to constitute an assignment the instrument must be substantially a transfer, actual or constructive, with the clear intent at the time to part with the legal interest, in whole or in part, in the thing transferred, and with the full knowledge of the rights so transferred. An instrument which does not purport to convey any present interest in an existing patent . . . is not an assignment within the contemplation of [the predecessor of section 261]." (citations omitted). *See also Rhodes-Hochriem Mfg. Co. v. Int'l Ticket Scale Corp.*, 57 F.2d 713, 714 (D. Del. 1932) ("To constitute an assignment, the instrument must be substantially a transfer with the clear intent at the time to part with the legal interest in the patent. An instrument which does not purport to convey a present interest in a patent is not an assignment within the statute."); *Universal Oil Prods. Co. v. Root Refining Co.*, 16 F. Supp. 846, 851 (D. Del. 1936) (same).

2.

Despite admitting that these standards apply, Classified's opposition fails to point to any document that could possibly qualify as an "instrument," much less to one that demonstrates a clear and unmistakable intent on the part of the seller—Mr. Pickard—to convey a present interest in the 669 Patent. As pointed out in Inovis' opening brief, Mr. Pickard's letter of April 10, 2003 is not such an "instrument" since (1) it is "not an assignment" (as Classified's attorneys have conceded) but rather a hearsay statement offered after-the-fact that does not purport to convey anything, and (2) it does not refer to the 669 Patent at all but rather to an unidentified "Patent," despite the fact that the liquidating estate owned at least nine different patents. Classified's brief does not address any of these arguments, but instead submits a hodge-podge of emails and invoices, plus self-serving affidavits from the buyer, not the seller, in an attempt to spackle over the gaping evidentiary holes in its position. But the emails and invoice are not "instruments" either since, again, they do not purport to convey anything, do not mention the 669 Patent—or any patent for that matter—are completely vague about the scope of the "intellectual property" at issue, and contain conditions on any transfer. Moreover, the emails and invoice do not comport with Mr. Pickard's letter, perhaps describing a different transaction entirely since Mr. Pickard's letter refers to a transfer of source code, which is not mentioned at all in the emails, and the intellectual property described in the emails is "to T5," a qualifier that is completely absent from Mr. Pickard's letter.

As for the affidavits from two of Classified's shareholders/officers, Classified has to show the *seller's* intent, not the *buyer's*. The affidavits, moreover, never explain the inconsistencies and gaps in the documents, and, in any event, contain inadmissible speculation and hidden hearsay. Tellingly, Classified has failed to provide an affidavit from the *seller*—Mr. Pickard—saying that it was indeed his intent to transfer all right, title, and interest in the 669

3.

Patent to Classified, despite the fact that Classified asked Mr. Pickard to supply such a document. The clear inference from this startling omission is that Mr. Pickard did *not* intend to transfer the 669 Patent to Classified. At bottom, Classified's brief only serves to underscore its failure to prove a "clear and unmistakable intent to part with" the 669 Patent, and Inovis' motion should therefore be granted.

## ARGUMENT

### I. CLASSIFIED HAS UTTERLY FAILED TO PROVIDE ANY EVIDENCE OF AN "INSTRUMENT IN WRITING"

Inovis' opening brief stated the universally accepted rule that, to be an "instrument" within the meaning of section 261 of the Patent Act, the document in question must contain present-tense language of conveyance from the seller to the buyer. (D.I. 51, Inovis' Opening Br. at 6-7). Inovis' opening brief also pointed out that the one document recorded by Classified with the Patent Office—the April 10, 2003 letter from Martin Pickard—did not meet the standard of *Arachnid. Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir. 1991) and the other pertinent case law. *See, e.g., Minerals Separation, Ltd. v. Miami Copper Co.*, 275 F. 572, 574 (D. Del. 1921) ("There must be some operative words, expressing at least an intention to assign, in order to constitute an assignment.").

Classified does not contest the fact that Mr. Pickard's after-the-fact April 10, 2003 letter is "not an assignment"—as Classified's own attorneys have admitted. (D.I. 51, Inovis' Opening Br. at 4-5 & Ex. C). Yet Classified contends, without explaining, that both Mr. Pickard's letter and the conditional invoice are somehow "a written instrument documenting the transfer of proprietary rights in the patent." (D.I. 57, Classified's Br. at 9). This position is unprecedented:

> An assignment of a patent may be made under the statute only by a written instrument. Although no particular form of words is essential, the written instrument must be substantially a transfer, actual or constructive, with the clear intent of the assignor, at the time, to part with his legal interest, in whole or in

4.

>part, and with full knowledge of the rights so transferred. An instrument which does not purport to convey a present interest in an existing patent, or in one for which an application is pending, is not an assignment within the statute.

*Owen v. Paramount Productions, Inc.*, 41 F. Supp. 557, 560 (S.D. Cal. 1941); *Rhodes-Hochriem,* 57 F.2d at 714 ("To constitute an assignment, the instrument must be substantially a transfer with the clear intent at the time to part with the legal interest in the patent. An instrument which does not purport to convey a present interest in a patent is not an assignment within the statute."); *Universal Oil Prods.*, 16 F. Supp. at 851 (same). Even Classified's own authorities stand for the proposition that the plaintiff must come forward with a document that contains a "present assignment." *Affymetrix, Inc. v. Illumina, Inc.*, 446 F. Supp. 2d 292, 297 (D. Del. 2006). Indeed, in *Affymetrix*, Judge Farnan concluded that a "present assignment of future interests" *was* contained in the phrase "[t]he Work Product . . . produced by Consultant under this Agreement and all proprietary rights therein shall be the exclusive property of ARI." 446 F. Supp. 2d at 296-97. Mr. Pickard's after-the-fact letter obviously is not a "present assignment," since Classified admits that it was not intended to convey anything but rather to "confirm" a supposed transfer that had taken place earlier. (D.I. 57, Ex. 1, Webb Aff. ¶ 9).

Nor do any of the emails or invoice contain present-tense language of conveyance from the seller (Mr. Pickard) to the buyer, as required by section 261. To the contrary, in response to the September 3, 2002 email from Mr. Lechowicz, Ms. Nicholson attaches three conditions to the transfer of anything, including that "[a]ll goods remain the property of the liquidator until paid for in full with cleared funds." (D.I. 57, Ex. 1, Webb Aff. at Ex. E). These conditions were then substantially repeated in the invoice. (*Id.*, Webb Aff. at Ex. F). Given the conditions, the email exchange and invoice do not convey anything, and therefore cannot be considered "an instrument in writing" for purposes of section 261. *Universal Oil Prods.*, 16 F. Supp. at 852 ("An instrument cannot be construed as an assignment of a patent which in terms . . . specifically

5.

provides for the transfer of the patents upon the happening of a contingency in the future."); *Owen*, 41 F. Supp. at 560 (because a will could be revoked, it did not contemplate an "immediate transfer" and therefore was not a "written instrument"). On this ground alone, the Court should dismiss Classified's Counterclaim.

> II. CLASSIFIED HAS UTTERLY FAILED TO PROVE A CLEAR AND UNAMBIGUOUS INTENT ON THE PART OF MR. PICKARD TO PART WITH ALL RIGHT, TITLE, AND INTEREST TO THE 669 PATENT
>
> A. The New Materials Submitted by Classified Make the Scope of any Transfer Less Clear and More Ambiguous

Classified admits that, to prove that Mr. Pickard, as liquidator for CI Software Solutions, assigned all "right title and interest" of the 669 Patent to Classified, Classified bears the burden of proving to this Court that "the 'instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent.'" (D.I. 57, Classified Br. at 10 (quoting *McClaskey,* 138 F.2d at 499); *Minerals Separation*, 275 F. at 575 (to constitute an "assignment," the "instrument" "must be substantially a transfer, actual or constructive, with the clear intent at the time to part with the legal interest, in whole or in part, in the thing transferred, and with full knowledge of the rights so transferred."); *Rhodes-Hochriem*, 57 F.2d at 714 ("To constitute an assignment, the instrument must be substantially a transfer with the clear intent at the time to part with the legal interest in the patent. An instrument which does not purport to convey a present interest in a patent is not an assignment within the statute."); *Universal Oil Prods.*, 16 F. Supp. at 851 (same).

Mr. Pickard's after-the-fact April 10, 2003 letter certainly does not meet that standard. First, Mr. Pickard's letter—unlike *McClaskey* or the other cases cited—does not refer to the 669 Patent. Instead, it refers to a single "Patent," without specifying a patent number. (D.I. 57, Ex. 1, Webb Aff. at Ex. G). Yet Classified's own declaration from one of its shareholders, Mark

6.

Webb, asserts that CI Software Solutions owned *no fewer than nine patents*. (*See id.*, Webb Aff. at Exs. B & C). There is nothing in Mr. Pickard's letter that indicates which of the nine patents he is referring to. Given that this was a UK transaction with a UK seller, it is quite likely that the referenced "Patent" was intended to be a UK patent, not the American one. On this ground alone, one cannot reasonably conclude that the 669 Patent was "clearly and unambiguously" transferred to Classified. *Compare McClaskey,* 138 F.2d at 499 n.8 (patent ownership established where bill of sale *specifically identified the patent by number).*

Classified's brief glosses this over, mischaracterizing Mr. Pickard's letter as if it referred to "the T5 patents" (plural) as being "part of the asset transfer." (D.I. 57, Classified's Br. at 6). But Mr. Pickard's letter neither refers to "T5," nor to "patents" in the plural. Classified's failure to explain why Mr. Pickard's letter refers to only one "Patent" given nine possible patents that could have been sold is fatal to its position that the letter can somehow constitute a clear and unambiguous transfer of something not mentioned at all in the letter—the 669 Patent.

Furthermore, Mr. Pickard's reference to "Templar" makes the purported transfer even more vague. It is unclear, first of all, whether the word "Patent" in Mr. Pickard's letter relates to "Templar." The word "relating" only appears in the phrase referring to source code ("all source code relating to the Templar product"), not to the word "Patent." But even if Mr. Pickard intended the word "relating" to refer not only to "source code" but also to the unspecified "Patent," it is unclear and Classified never explains why the 669 Patent should be deemed the only one "relating" to the Templar product.

7.

Moreover, while Classified uses the word "all" repeatedly in attempting to put a broad "spin" on the alleged transaction,[1] the word "all" is noticeably absent from Mr. Pickard's letter insofar as either "intellectual property rights" or "Patent" are concerned. The letter only refers vaguely to "intellectual property rights," and then to a single "Patent." (D.I. 57, Ex. 1, Webb Aff. at Ex. G). This contrasts markedly with Mr. Pickard's statement that "all source code" relating to the Templar product was being "transferred." Mr. Pickard also never explains in his letter (or elsewhere) what he means by "intellectual property rights"—do they relate to "the Templar product," as does the source code? If so, in what way and how do we know that Mr. Pickard was thinking about the 669 Patent as opposed to the others? Classified never explains how a reference to (some) "intellectual property rights" could be reasonably construed to mean "*all* right, title, and interest" in and to the '669 Patent, as opposed to the other eight patents. Finally, the fact that Mr. Pickard refused to contribute a declaration stating that his reference to "Patent" was intended to refer to the 669 Patent[2] makes it clear that it was never the seller's

---

[1] *See, e.g.*, D.I. 57, Classified's Br. at 6 ("to transfer *all* of the T5 assets"); *id.* ("*all* of the intellectual property assets of T5 were in fact transferred to Classified"); *id.* at 8 ("Ultimately, Mr. Webb prepared a letter detailing the transfer of *all* intellectual property rights associated with the T5 product to Classified."); *id.* at Ex. 1, Webb Aff. ¶ 9 ("I prepared a draft of a letter for Mr. Pickard to sign that confirmed that CI Solutions had in fact transferred its ownership interests in *all* intellectual property rights associated with T5 to Classified Information, Inc.") (emphasis supplied.)

[2] On July 23, 2007, Mr. Putnam, Classified's president, contacted Mr. Pickard in an attempt to obtain additional documentation from him that would support Classified's position that it had purchased the 669 Patent. (Ex. K, July 23, 2007 email from C. Putnam to Distance Digital, 000188). This was in the context of Mr. Putnam's attempt to convince Distance Digital that it owned the 669 Patent, which it hoped to do in order to sell it to Distance Digital. (*See* Ex. L, July 20, 2007 email from C. Putnam to Distance Digital, 000186-000187). To that end, Mr. Putnam apparently drafted "a letter and assignment document" for Mr. Pickard's signature. (*Id.*). Since no such letter or assignment document was ever obtained from Mr. Pickard, it can safely be assumed that he refused to sign them.

8.

"clear intent at the time to part with the legal interest in the patent." *Rhodes-Hochriem*, 57 F.2d at 714; *Universal Oil Prods.*, 16 F. Supp. at 852.

Consideration of the other materials submitted by Classified undermines its position even further. The September 3, 2002 email from Matt Lechowicz, who at the time apparently was the President of Classified Information, does not refer to the 669 Patent; indeed, it does not refer to any patents at all. (D.I. 57, Ex. 2, Lechowicz Aff. at Ex. A). Rather, it refers to "the intellectual property rights of T 5." The email does not explain which particular "intellectual property rights" were being sought; nor does it explain what the phrase "rights of T 5" might mean. No amount of mental gymnastics can divine an offer to purchase ownership of the 669 Patent from the phrase "rights of T 5."

The September 11, 2002 email from Lindsey Nicholson at Mazars to Matt Lechowicz states: "I am happy to accept your offer" for the "purchase of the intellectual property rights to T5." (D.I. 57, Ex. 1, Webb Aff. at Ex. E). Again, no patent number is listed. The email then attaches conditions to the sale, including that the "goods are sold without any warranty," the "Liquidator only sells those goods to which he has title," and "[a]ll goods remain the property of the liquidator until paid for in full with cleared funds." (*Id.*).

As with Mr. Lechowicz's September 3, 2002 email, Ms. Nicholson's sheds no light on which particular "intellectual property rights" were being sold, or what was meant by "rights to T5." Moreover, Ms. Nicholson did not have the power to "accept" Mr. Lechowicz's "offer," since Mr. Pickard, and not Ms. Nicholson, was the liquidator of Classified Solutions in liquidation. (D.I. 57, Ex. 1, Webb Aff. ¶ 4).

Classified has also submitted four copies of an invoice that mentions the sale of "Intellectual Property to the *product* known as T5." (D.I. 57, Ex. 2, Lechowicz Aff. at Exs. C, D,

9.

E, & F) (emphasis supplied). The invoice has substantially the same conditions of sale noted in Ms. Nicholson's September 11, 2002 email. Again, no patent number is mentioned in the invoice and no explanation is provided as to which particular "intellectual property" was "to the product known as T5."

Finally, the January 7, 2003 email from Mr. Lechowicz to one Gary McDonald, whom Mr. Lechowicz claims was a CI Software Solutions director at the time, does not refer to any transaction involving patents, or even involving intellectual property, but instead concerns the sale of "t5." (D.I. 57, Ex. 2, Lechowicz Aff. ¶ 9 & at Ex. H) ("We gave them 10K pounds for t5 and they never gave us a bill of sale."). .

Ironically, these documents conflict with what is described in Mr. Pickard's April 10, 2003 letter, calling into question whether the emails and invoice even relate to the same transaction as that described in Pickard's letter. First, the various documents describe the "rights" and "property" quite differently. As noted, Mr. Pickard's letter refers to the transfer of tangible items--"all source code relating to the Templar product." (D.I. 57, Ex. 1, Webb Aff. at Ex. G). Yet the September 3 and 11, 2002 emails between Mr. Lechowicz and Ms. Nicholson, and the invoice, make no mention whatsoever about any source code, referring instead only to intellectual—not tangible—property.

By contrast with Mr. Pickard's letter, the September 2002 emails and the invoice all refer to "T-5," with the invoice referring to "Intellectual Property to the product known as T5." Mr. Pickard's letter does not mention "T-5" at all, instead referring to a single "Patent" and to "all source code relating to the Templar product." None of the emails, the invoice, or even the affidavits explain specifically what "the product known as T-5 means," instead, Classified glosses over the different words used in Mr. Pickard's letter as compared to the other documents

10.

in the apparent hope that the discrepancies will go unnoticed. More importantly, Classified does not explain why "intellectual property" that is "to the product known as T5" would necessarily be understood by the seller to refer to and include the 669 Patent.[3] Instead, Mr. Pickard's letter refers simply to "Patent," and the emails and invoice refer to "intellectual property rights *of* T5." Classified's brief (but not its affidavits) describe "T5" as "version 5 of the Templar software product," but Classified provides no evidence from the seller (Mr. Pickard) that he understood "T5" to be version 5 of the Templar software product, and, more importantly, why "intellectual property rights of the Templar software product" would necessarily mean the 669 Patent to Mr. Pickard. To say that the phrase is unclear is an understatement.

Moreover, the emails and invoice refer to "rights," but never define which "rights" were being purchased. Were the "rights" in the nature of a license? If so, an exclusive or nonexclusive one? Certainly no "title" or "interest" in anything are mentioned in the emails, much less title to the 669 Patent.

Finally, the speculation contained in Mr. Webb's affidavit about what he thinks Mr. Pickard was thinking is plainly inadmissible. In paragraph 8 of Mr. Webb's affidavit he states: "From my discussion with Mr. Martin [sic] it was clear to me that he knew that the intellectual property rights associated with T5 were the same assets specified in the Peregrine/CI Solution [sic] assignment documents mentioned in Paragraph 3 above, which included U.S. Patent No. 5,812,669." (D.I. 57, Ex. 1, Webb Aff. ¶ 8). Mr. Webb does not mention what it was precisely

---

[3] The words "associated with" appear in Classified's brief and in its affidavits. D.I. 57, Classified's Br. at 5 ("Classified purchased the '669 Patent . . . as part of a transaction involving all the rights and assets *associated with* the CSS's Templar software product"); *id.*, Ex.1, Webb Aff. ¶ 9 ("intellectual property rights *associated with* CI Solutions' Templar or T5 product") (emphasis supplied). While even the words "associated with" are unclear, it is worth pointing out that those words do not appear in Mr. Pickard's letter, the emails, or the invoice.

11.

that Mr. Pickard had said that led him to this conclusion, so the statement lacks foundation. And if Mr. Webb had stated what Mr. Pickard had told him, that would be inadmissible hearsay. "A witness may not testify ... unless evidence is introduced sufficient to support a finding of personal knowledge." 3-602 Weinstein's Federal Evidence § 602.03(1)(a) (citing FRE 602); *Chambers v. Doe*, 453 F. Supp. 2d 858, 862 (D. Del. 2006) (affidavits not based on personal knowledge not considered); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 212 n.5 (3d Cir. 2000); *Blackburn v. UPS, Inc.*, 179 F.3d 81, 95 (3d Cir. 1999) ("[A] hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion."). This is particularly true in light of the failure of the seller himself, Mr. Pickard, to submit an affidavit articulating what Mr. Webb says was his "clear" intent: there is no document from the seller—Mr. Pickard—saying that he intended to transfer all "right, title and interest" to the 669 Patent to Classified.

> In paragraph 9 of Mr. Webb's affidavit, he states:
>
> I was asked by Matt Lechowicz to procure written confirmation of the intellectual property rights associated with T5 or Templar Software. In response, I prepared a draft of a letter for Mr. Pickard to sign that confirmed that CI Solutions had in fact transferred its ownership interests in all intellectual property rights associated with T5 to Classified Information, Inc. I did not include the patent number to the '669 patent in my draft letter because both CI Solutions, Classified Information, Inc., and Mr. Martin all understood and acknowledged that U.S. Patent No. 5,812,669 had been previously purchased in accordance with correspondence and invoice attached to this affidavit as Exhibits D, E, and F.

(D.I. 57, Ex. 1, Webb. Aff. ¶ 9). Again the statements about Mr. Pickard's state of mind lack foundation and contain hidden hearsay. But they are particularly suspect because, first, the notion that a patent number was left out of a letter that was written in the first place to "procure written confirmation of the intellectual property rights" sold is preposterous. Why write the letter and then omit the very thing that was to be "confirmed"? Second, as explained above, the "correspondence and invoice" referred to by Mr. Webb do not support the notion that the 669

12.

Patent "had been previously purchased." Finally, the absence of any affidavit from Mr. Pickard—especially since Mr. Putnam attempted to obtain one—suggests the affidavits are, simply, a sham. The affidavits should, accordingly, be given no weight by the Court.

      B.    The Webb and Lechowicz Affidavits and Pickard Letter
            Are Inadmissible Under the Parol Evidence Rule

Classified has not admitted, and apparently denies, that the terms of its agreement with Mr. Pickard are ambiguous. Yet only if such terms are ambiguous, can parol evidence—the affidavits and the after-the-fact letter from Mr. Pickard—be admissible. *Institute for Disabilities Research & Training, Inc. v. Wal-Mart Stores, Inc.*, No. 05-176 (GMS), 2007 U.S. Dist. LEXIS 70932, at *13-14 (D. Del. Sept. 25, 2007). "If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity." *Id.* at *13 (quoting *ThoughtWorks, Inc. v. SV Inv. Partners, LLC*, 902 A.2d 745, 752 (Del. Ch. 2006)). "A court may consider extrinsic or parol evidence 'to determine the true meaning of the parties' intent when they entered into the contract' when a contract is ambiguous. *Id.* (quoting *Eagle Indus.* v. *DeVilbiss Health Care*, 702 A.2d 1228 at 1232 (Del. 1997)). "A contract is ambiguous '[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings.'" *Id.* at *13-14 (quoting *Eagle Indus.*, 702 A.2d at 1232). Classified appears to argue that the terms of its contract with Solutions are clear and unambiguous. Accordingly, aside from the fact that the speculation and hearsay contained in the affidavits are inadmissible as lacking foundation and containing hidden hearsay, the Court should not consider the affidavits and Mr. Pickard's letter under the parol evidence rule.

13.

## CONCLUSION

Classified's brief only serves to highlight the absence of any "instrument" and its failure to establish a clear intent on the part of the seller to transfer all right, title, and interest in and to the 669 Patent. Accordingly, Classified lacks standing to assert its Counterclaim for patent infringement because it cannot prove that it owns the 669 patent. Pursuant to F.R.C.P. 12(b)(1), Classified's Counterclaim should be dismissed it its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com

*Attorneys for Plaintiff Inovis USA, Inc.*

OF COUNSEL:

David J. Wolfsohn
Erich Falke
Jordan L. Jonas
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

April 23, 2008
2304072

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on 23rd day of April, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> M. Duncan Grant, Esquire
> PEPPER HAMILTON LLP
>
> Arthur G. Connolly, III
> CONNOLLY BOVE LODGE & HUTZ LLP

and that copies were caused to be served upon the following individuals in the manner indicated:

**ELECTRONIC MAIL**

| | |
|---|---|
| M. Duncan Grant, Esquire<br>PEPPER HAMILTON LLP<br>1313 North Market Street<br>Suite 5100<br>P. O. Box 1790<br>Wilmington, DE 19899-1790 | Arthur G. Connolly, III<br>CONNOLLY BOVE LODGE & HUTZ LLP<br>1007 N. Orange Street<br>P.O. Box 2207<br>Wilmington, DE 19899 |

Vineet Bhatia, Esquire
Susman Godfrey LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096

*/s/ Julia Heaney*

Julia Heaney (#3052)
jheaney@mnat.com

FILED SEPARATELY
UNDER SEAL